# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ANN DARLENE WELLS, as Representative of the Estate of Donald L. Wells, Deceased, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 09 C 1198 |
| | ) | |
| CITY OF CHICAGO, a Municipal Corporation, and CHICAGO POLICE DEPARTMENT employees/servants/agents as follows: Detective Michael Deneen, Star No. 19012, Lt. Maureen McMahon, Star No. 19812, Captain John B. Farrell, Star No. 0006, Officer Arthur Carr, Jr., Star No. 17789, Sgt. Tracey Sanders, Star No. 1271, Officer Rachel Golubiak, Star No. 5453, Officer Joann Butkus, Star No. 7698, Detective Elliott Musial, Star No. 19416, Detective Galo Guiterrez, Star No. 10018, Sgt. Ronald Behling, Star No. 1886, Sgt. John P. Clifford, Star No. 855, Sgt. Richard E. Moravec, Star No. 933, Officer David Norman, Star No. 3719, Sgt. Steven R. Rowling, Star No. 933, Sgt. Jesse Terrazas, Star No. 1539, Lt. Arthur Block, Star No. 600, Officer Edgar Carlos, Star No. 6540, Detention Aide Torrance T. Davis, Sgt. Leonard Fitch, Star No. 2332, Detention Aide Lloyd Huddleston, Officer Philrick Hurns, Star No. 6866, Lt. William Kilroy, Jr. Star No. 280, Officer Fulton Knight, Star No. 4036, Officer Sylvester Mackey, Star No. 19053, and Officer Levi P. Roberts, Star No. 12313, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Judge Kennelly |
| | ) | |
| Defendants. | ) | |

## DEFENDANT OFFICERS' ANSWER TO PLAINTIFF'S
## THIRD AMENDED COMPLAINT AT LAW

Defendants, Michael Deneen, Maureen McMahon, John B. Farrell, Arthur Carr, Jr., Tracey Sanders, Rachel Golubiak, Joann Butkus, Elliott Musial, Galo Gutierrez (incorrectly named as "Guiterrez"), Ronald Behling, John P. Clifford, Richard Moravec, David Norman, Steven R. Rowling, Jesse Terrazas, Arthur Block, Edgar Carlos, Torrance T. Davis, Leonard Ficht (incorrectly named as "Fitch"), Lloyd Huddleston, Philrick Hurnes (incorrectly named as "Hurns"), William Kilroy, Fulton Knight, Sylvester Mackey and Levi Roberts (collectively "Defendant Officers"), by their attorney, answer Plaintiff's Third Amended Complaint as follows:

## INTRODUCTION

1.     This is a civil action seeking damages against the City of Chicago, and certain Chicago Police Officers, whom, while acting under the color of law, deprived DONALD L. WELLS of rights secured under the Constitution and laws of the United States, including the rights secured under the Fourth and Fourteenth Amendment to the United States Constitution. This action also includes related Illinois State-Law claims of wrongful death and survival.

**ANSWER:**     Defendant Officers admit this is a civil action seeking damages against the City of Chicago and certain Chicago Police Officers, that alleges while acting under the color of law, said defendants deprived Donald L. Wells of rights secured under the Constitution and laws of the United States, including the rights secured under the Fourth and Fourteenth Amendments to the United States Constitution, and that this action includes related Illinois state law claims, but deny any deprivation of Donald L. Wells' rights under the Constitution and laws of the United States or Illinois law.

## JURISDICTION

2.     This action is brought pursuant to 42 U.S.C. section 1983, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 28 U.S.C. sections 1331; 1341 (3) and (4); and 1343; and the aforementioned constitutional and statutory provisions. Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. section 1367 to hear and decide related claims arising out of state law.

**ANSWER:**     Defendant Officers admit this action is brought pursuant to 42 U.S.C. 1983, and the Fourth and Fourteenth Amendments to the United States Constitution, and that this court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§1331 and 1343(a)(3). Defendant Officers further admit this court has  supplemental jurisdiction pursuant to 28 U.S.C. 1367 to hear and decide plaintiff's claims arising under Illinois law.  Defendant Officers deny that any of their acts or omissions give rise to such claims, and further deny the remaining allegations in paragraph 2.

## PARTIES

3.     Plaintiff, ANN DARLENE WELLS ("Plaintiff"), is a citizen of the United States, who currently resides in and is a resident of Metamora, Michigan.  Plaintiff brings this action as the Representative of the Estate of her deceased husband, DONALD L. WELLS, who was a

citizen of the United States of America. Plaintiff is the Personal Representative of the Estate of DONALD L. WELLS, with Letters of Authority issued on September 24, 2008 by the Lapeer County Probate Court in Flint, Michigan.

**ANSWER:** Upon information and belief, Defendants Michael Deneen ("Deneen"),

Maureen McMahon ("McMahon"), Tracey Sanders ("Sanders"), Elliott Musial ("Musial") and

Galo Gutierrez ("Gutierrez") admit that Plaintiff Ann Darlene Wells is a citizen of the United

States and that Donald Wells was a citizen of the United States, but are without knowledge or

information sufficient to form a belief as to the remaining allegations in paragraph 3. Upon

information and belief, Defendants John B. Farrell ("Farrell"), Arthur Carr, Jr. ("Carr"), Rachel

Golubiak ("Golubiak"), Joann Butkus ("Butkus"), Ronald Behling, ("Behling"), John P. Clifford,

("Clifford"), Richard Moravec ("Moravec"), David Norman ("Norman"), Steven R. Rowling

("Rowling"), Jesse Terrazas ("Terrazas"), Arthur Block ("Block"), Edgar Carlos ("Carlos"),

Torrance T. Davis ("Davis"), Leonard Ficht ("Ficht"), Lloyd Huddleston ("Huddleston"),

Philrick Hurnes ("Hurnes"), William Kilroy ("Kilroy"), Fulton Knight ("Knight"), Sylvester

Mackey ("Mackey") and Levi Roberts ("Roberts") admit that Donald Wells was a citizen of the

United States, but are without knowledge or information sufficient to form a belief as to the truth

of the remaining allegations in paragraph 3.

4.     Defendant, CITY OF CHICAGO, is a municipal corporation in Cook County, Illinois. The CITY OF CHICAGO operates a police department in Chicago, Illinois.

**ANSWER:** Defendant Officers admit the allegations in paragraph 4.

5.     Defendants Detective Michael Deneen, Star No. 19012, Lt. Maureen McMahon, Star No. 19812, Captain John B. Farrell, Star No. 0006, Officer Arthur Carr, Jr., Star No. 17789, Sgt. Tracey Sanders, Star No. 1271, Officer Rachel Golubiak, Star No. 5453, Officer Joann Butkus, Star No. 7698, Detective Elliott Musial, Star No. 19416, Detective Galo Guiterrez, Star No; 10018, Sgt. Ronald Behling, Star No. 1886, Sgt. John P. Clifford, Star No. 855, Sgt. Richard E. Moravec, Star No. 933, Officer David Norman, Star No. 3719, Sgt. Steven R. Rowling, Star No. 933, Sgt. Jesse Terrazas, Star No. 1539,Lt. Arthur Block, Star No. 600, Officer Edgar Carlos, Star No. 6540, Detention Aide Torrance T. Davis, Sgt. Leonard Fitch, Star No. 2332, Detention Aide Lloyd Huddleston, Officer Philrick Hurns, Star No. 6866, Lt. William Kilroy, Jr. Star No. 280, Officer Fulton Knight, Star No. 4036, Officer Sylvester Mackey, Star No. 19053, and Officer Levi P. Roberts, Star No. 12313, are officers, agents and/or employees of the CITY OF CHICAGO Police Department.

**ANSWER:** Defendants Deneen, McMahon, Sanders, Golubiak, Butkus, Musial, Gutierrez, Behling, Clifford, Moravec, Norman, Rowling, Terrazas, Carlos, Davis, Ficht, Huddleston, Hurnes, Kilroy, Knight, Mackey and Roberts each admit the allegations in paragraph 5 as directed to them individually, and upon information and belief, admit the allegations in paragraph 5 as directed to the other named officers. Defendants Farrell, Carr and Block admit that they were officers of the Chicago Police Department at all times relevant hereto, and upon information and belief, the remaining Defendant Officers admit that Farrell, Carr and Block were officers of the Chicago Police Department at all times relevant hereto.

6. At all times relevant hereto, agents, servants and/or employees of the Chicago Police Department referred to in Paragraph 5 of this Third Amended Complaint were acting under color of law and pursuant to and in furtherance of statutes, ordinances, regulations, customs, policies and usages of the City of Chicago and the Chicago Police Department. At all times relevant hereto, these individuals were acting within the scope of their employment with the CITY OF CHICAGO.

**ANSWER:** Defendant Officers each admit the allegations in paragraph 6 as directed to them individually, and upon information and belief, admit the allegations in paragraph 6 as directed to the other named officers.

### FACTS

7. On April 25, 2008, DONALD L. WELLS ("Plaintiff's Decedent") was a sixty-four year old male truck driver employed by Whiteline Express, Ltd. Donald Wells died on June 13, 2008.

**ANSWER:** Defendants Deneen, McMahon, Musial and Gutierrez admit the allegations in paragraph 7. Defendants Farrell, Carr, Sanders, Golubiak and Butkus, admit that on April 25, 2008, Donald L. Wells ("Plaintiff's Decedent") was a sixty-four year old male truck driver who, upon information and belief, was employed by Whiteline Express, Ltd., and who, upon information and belief, died subsequent to April 25, 2008, but are without knowledge or information sufficient to form a belief as to truth of the remaining allegations in paragraph 7. Upon information and belief, Defendants Clifford, Moravec, Norman, Rowling, Terrazas, Block,

Carlos, Davis, Ficht, Huddleston, Hurnes, Kilroy, Knight, Mackey and Roberts admit that on April 25, 2008, Donald L. Wells ("Plaintiff's Decedent") was a sixty-four year old male truck driver who died subsequent to April 25, 2008, but are without knowledge or information sufficient to form a belief as to truth of the remaining allegations in paragraph 7. Defendant Behling admits that on April 25, 2008, Donald L. Wells ("Plaintiff's Decedent") was a male truck driver who died subsequent to April 25, 2008, but is without knowledge or information sufficient to form a belief as to truth of the remaining allegations in paragraph 7.

8.    Plaintiff's Decedent traveled to Chicago, Illinois on or about April 25, 2008.

**ANSWER:**    Defendants Deneen, McMahon, Farrell, Carr, Sanders, Golubiak, Butkus, Musial and Gutierrez admit the allegations in paragraph 8. Upon information and belief, Defendants Behling, Clifford, Moravec, Norman, Rowling, Terrazas, Block, Carlos, Davis, Ficht, Huddleston, Hurnes, Kilroy, Knight, Mackey and Roberts admit the allegations in paragraph 8.

9.    On said date, while driving a semi-tractor trailer for Whiteline Express, Ltd., Plaintiff's Decedent was involved in an accident wherein the truck he was driving collided with the Chicago Transit Authority station at the intersection of Cermak Road and 22nd Street, an area commonly known as Chinatown (hereinafter referred to as the "Accident").

**ANSWER:**    Defendants Deneen, McMahon, Musial and Gutierrez admit on April 25, 2008, while driving a semi-tractor trailer for Whiteline Express, Ltd., Plaintiff's Decedent was involved in an accident wherein the truck he was driving collided with the Chicago Transit Authority station located in an area commonly known as Chinatown on Cermak Road, but deny the remaining allegations in paragraph 9. Upon information and belief, Defendants Farrell, Carr, Sanders, Golubiak and Butkus admit on April 25, 2008, while driving a semi-tractor trailer for Whiteline Express, Ltd., Plaintiff's Decedent was involved in an accident wherein the truck he was driving collided with the Chicago Transit Authority station located in an area commonly known as Chinatown on Cermak Road, but deny the remaining allegations in paragraph 9. Upon information and belief, Defendants Behling, Clifford, Moravec, Norman, Rowling, Terrazas,

Block, Carlos, Davis, Ficht, Huddleston, Hurnes, Kilroy, Knight, Mackey and Roberts admit on April 25, 2008, while driving a semi-tractor trailer, Plaintiff's Decedent was involved in an accident wherein the truck he was driving collided with the Chicago Transit Authority station located in an area commonly known as Chinatown on Cermak Road, are without knowledge or information about the trucking company Plaintiff's Decedent worked for, and deny the remaining allegations in paragraph 9.

10.     Shortly after the Accident, Chicago Police Department took Plaintiff's Decedent into custody while he was being treated at Stroger Hospital.

        **ANSWER:**     Defendants Musial, Golubiak and Butkus admit that after the Accident, Plaintiff's Decedent was taken into the custody of the Chicago Police Department at Stroger Hospital, but deny the remaining allegations in paragraph 10.  Upon information and belief, Defendants Deneen, McMahon, Sanders and Gutierrez admit that after the Accident, Plaintiff's Decedent was taken into the custody of the Chicago Police Department at Stroger Hospital, but deny the remaining allegations in paragraph 10.  Upon information and belief, Defendants Farrell, Carr, Behling, Clifford, Moravec, Norman, Rowling, Terrazas, Block, Carlos, Davis, Ficht, Huddleston, Hurnes, Kilroy, Knight, Mackey and Roberts admit that after the Accident, Plaintiff's Decedent was taken into the custody of the Chicago Police Department, but are without knowledge or information sufficient to form a belief as to the truth of  the remaining allegations in paragraph 10.

11.     Plaintiff's Decedent was thereby detained by certain police officers, agents, servants and/or employees of the Chicago Police Department. Those involved with the detention of Plaintiff's Decedent at Stroger Hospital and his subsequent detention at the police facility located at 51st and Wentworth are among those listed in Paragraph 5 of this Third Amended Complaint and include: Detective Michael Deneen, Star No. 19012, Lt. Maureen McMahon, Star No. 19812, Sgt. Tracey Sanders, Star No. 1271, Officer Rachel Golubiak, Star No. 5453, Officer Joann Butkus, Star No. 7698, Detective Elliott Musial, Star No. 19416, Detective Galo Guiterrez, Star No. 10018, Sgt. Ronald Behling, Star No. 1886, Captain John B. Farrell, Star No. 0006, and Lt. Arthur Block, Star No. 600.

        **ANSWER:**     Defendant Officers admit that Plaintiff's Decedent was detained by certain police officers, agents, servants and/or employees of the Chicago Police Department.  Defendant

-6-

Musial admits he arrested Plaintiff's Decedent at Stroger Hospital and was involved in preparing Plaintiff's Decedent's arrest report and interviewing Plaintiff's Decedent at the Area 1 Detective Division, but denies he was involved in any subsequent detention of Plaintiff's Decedent. Defendant Musial is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 11. Defendants Deneen and Gutierrez admit they were involved in taking Plaintiff's Decedent from the Area 1 Detective Division downstairs to the 2nd District lock-up at the police facility located at 51st and Wentworth, Chicago, Illinois, but deny they were involved in any other detention of Plaintiff's Decedent. Defendants Deneen and Gutierrez are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 11. Defendants Farrell, Carr, Clifford, Moravec, Norman, Rowling, Terrazas, Block, Carlos, Davis, Ficht, Huddleston, Hurnes, Kilroy, Knight, Mackey and Roberts admit they were on duty during certain periods of time while Plaintiff's Decedent was detained at the 2nd District lock-up facility, deny they were involved in any other detention of Plaintiff's Decedent, and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 11. Defendants Golubiak and Butkus admit they were present with Plaintiff's Decedent at Stroger Hospital and involved in the transportation of Plaintiff's Decedent to the Area 1 Detective Division after his arrest at Stroger Hospital, deny any subsequent detention of plaintiff's decedent, and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 11. Defendants McMahon, Sanders and Behling deny they were involved in the detention of Plaintiff's Decedent, and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 11.

12.     At the time of Plaintiff's Decedent's arrest and subsequent detention, police officers, agents, servants and/or employees of the Chicago Police Department referred to in Paragraph 5 of this Third Amended Complaint were aware that Plaintiff's Decedent was involved in a severe traffic accident and suffered injuries as a result thereof.

      **ANSWER:**    Defendants Deneen, Musial, Golubiak and Butkus, admit at the time of Plaintiff's Decedent's arrest and subsequent detention they were aware Plaintiff's Decedent was involved in a severe traffic accident and that he suffered injuries as a result thereof for which he was taken to a hospital from the accident scene, but are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 12. Upon information and belief, Defendants Farrell, Carr and Huddleston admit at the time of Plaintiff's Decedent's arrest and subsequent detention they were aware Plaintiff's Decedent was involved in a severe traffic accident and that he suffered injuries as a result thereof for which he was taken to a hospital from the accident, but are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 12. Defendants McMahon, Sanders, Gutierrez, Behling, Moravec, Terrazas, Block, Carlos, Norman, Kilroy and Roberts admit at the time of Plaintiff's Decedent's arrest and subsequent detention they were aware Plaintiff's Decedent was involved in a severe traffic accident and was taken to a hospital from the accident scene, but they are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 12. Upon information and belief, Defendants Clifford, Rowling, Davis, Ficht, Hurnes, Knight and Mackey admit they were aware Plaintiff's Decedent was involved in a severe traffic accident, but they are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 12.

      13.    At the time of Plaintiff's Decedent's detention, certain agents, servants and/or employees of the City of Chicago, all of whom are among those listed in Paragraph 5 of this Third Amended Complaint, observed, or were informed, that Plaintiff's Decedent's was: (1) ill, weak, had substantial bruising; (2) had difficulty standing and walking; (3) moaned and groaned in pain; (4) was confused, disoriented, talking incoherently, and was unable to respond to questions; (5) defecated and urinated on the floor and himself; (6) repeatedly removed all or most of his clothes; (7) did not drink or eat; and (8) otherwise behaved abnormally. These certain agents, officers, and servants, all of whom are listed in paragraph 5 above, include the following: Defendants Detective Michael Deneen, Star No. 19012, Captain John B. Farrell, Star No. 0006, Officer Arthur Carr, Jr., Star No. 17789, Sgt. Tracey Sanders, Star No. 1271, Detective Elliott Musial, Star No. 19416, Detective Galo Guiterrez, Star No. 10018, Sgt. John P. Clifford, Star No. 855, Sgt. Richard E. Moravec, Star No. 933, Officer David Norman, Star No. 3719, Sgt. Steven R. Rowling, Star No. 933, Sgt. Jesse Terrazas, Star No. 1539, Lt. Arthur Block, Star No. 600, Officer Edgar Carlos, Star No. 6540, Detention Aide Torrance T. Davis, Sgt. Leonard Fitch,

Star No. 2332, Detention Aide Lloyd Huddleston, Officer Philrick Hurns, Star No. 6866, Lt. William Kilroy, Jr. Star No. 280, Officer Fulton Knight, Star No. 4036, Officer Sylvester Mackey, Star No. 19053, and Officer Levi P. Roberts, Star No. 12313.

**ANSWER:**     Defendants Golubiak, Butkus and Behling deny that at the time of Plaintiff's Decedent's detention they observed or were informed that Plaintiff's Decedent's was ill, weak, had substantial bruising; had difficulty standing and walking, moaned and groaned in pain, was confused, disoriented, talking incoherently, and was unable to respond to questions, defecated and urinated on the floor and himself, repeatedly removed all or most of his clothes, did not drink or eat, and otherwise behaved abnormally, and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 13.

Defendants McMahon and Sanders deny that at the time of Plaintiff's Decedent's detention they observed or were informed, that Plaintiff's Decedent's was ill, weak, had substantial bruising, had difficulty standing and walking, moaned and groaned in pain, was confused, disoriented, talking incoherently, and was unable to respond to questions, defecated and urinated on the floor and himself, repeatedly removed all or most of his clothes, did not drink or eat; and otherwise behaved abnormally, but admit they later learned Plaintiff's Decedent had difficulty walking on his own upon his release from the 2nd District police station on April 27, 2008.  Defendants McMahon and Sanders and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 13.

Defendant Deneen admits he observed urine on the floor of an interview room Plaintiff's Decedent was in at the Area 1 Detective Division on April 26, 2008, when he took Plaintiff's Decedent from that room and down to the 2nd District lock-up.  Defendant Deneen further admits that upon his release from the 2nd District lock-up on April 27, 2008, Plaintiff's Decedent was confused, not dressed in his clothes, had bruising on his upper body, and had difficulty walking. Defendant Deneen further admits he heard Plaintiff's Decedent had defecated and urinated on the cell floor in the lock-up near the time of his release from the 2nd District police station on April

27, 2008, but he did not observe this. Defendant Deneen is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 13.

Defendant Gutierrez admits he was informed of urine on the floor of an interview room Plaintiff's Decedent was in at the Area 1 Detective Division on April 26, 2008, when he escorted Plaintiff's Decedent from that room and down to the 2nd District lock-up. Defendant Gutierrez further admits that upon his release from the 2nd District lock-up on April 27, 2008, Plaintiff's Decedent was groggy, not dressed in his clothes, and had difficulty walking. Defendant Gutierrez further admits he heard Plaintiff's Decedent had defecated and urinated on the cell floor in the lock-up near the time of his release from the 2nd District police station on April 27, 2008, but he did not observe this. Defendant Gutierrez is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 13.

Defendant Musial admits upon information and belief that Plaintiff's Decedent urinated on the floor of the interview room he was in at the Area 1 Detective Division on April 26, 2008, but he did not observe this. Defendant Musial further admits he later heard Plaintiff's Decedent had urinated and/or defecated in the cell or on himself and had difficulty walking upon his release from the 2nd District police station on April 27, 2008, but he did not observe this. Defendant Musial is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 13.

Defendant Farrell admits he observed Plaintiff's Decedent had removed his clothing during the time of his detention, and had difficulty walking and defecation in his underwear at the time of his release, and upon information and belief, had urinated on the cell floor at the time of his release. Defendant Farrell denies he observed or was informed that Plaintiff's Decedent was ill, weak, had substantial bruising, moaned and groaned in pain, was confused, disoriented, talking incoherently, and was unable to respond to questions, defecated on the floor and himself, urinated on himself, did not drink or eat, and otherwise behaved abnormally during the time of

his detention. Defendant Farrell is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 13.

Defendant Carr admits that he heard sometime after Plaintiff's Decedent's release that he may have urinated and/or defecated on the cell floor, but he did not observe this. Defendant Carr denies he observed or was informed that Plaintiff's Decedent's was ill, weak, had substantial bruising; had difficulty standing and walking, moaned and groaned in pain, was confused, disoriented, talking incoherently, and was unable to respond to questions, repeatedly removed all or most of his clothes, did not drink or eat, and otherwise behaved abnormally at the time of Plaintiff's Decedent's detention. Defendant Carr is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 13.

Defendant Kilroy admits two attorneys who visited Plaintiff's Decedent's on April 26, 2008 asked him in passing whether Plaintiff's Decedent needed medical help, and that he checked on Plaintiff's Decedent and found him to be all right following the attorneys' inquiry. Defendant Kilroy denies he observed or was informed that Plaintiff's Decedent's was ill, weak, had substantial bruising; had difficulty standing and walking, moaned and groaned in pain, was confused, disoriented, talking incoherently, and was unable to respond to questions, defecated and urinated on the floor and himself, repeatedly removed all or most of his clothes, did not drink or eat, and otherwise behaved abnormally at the time of Plaintiff's Decedent's detention. Defendant Kilroy is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 13.

Defendant Terrazas admits  he observed Plaintiff's Decedent's having trouble moving and standing upon his release from the 2nd District lock-up. Defendant Terrazas denies he observed or was informed that Plaintiff's Decedent's was ill, weak, had substantial bruising; moaned and groaned in pain, was confused, disoriented, talking incoherently, and was unable to respond to questions, defecated and urinated on the floor and himself, repeatedly removed all or most of his clothes, did not drink or eat, and otherwise behaved abnormally at the time of

-11-

Plaintiff's Decedent's detention. Defendant Terrazas is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 13.

Defendant Norman admits that he heard sometime after Plaintiff's Decedent's release that he had urinated and/or defecated on himself and was taken to a hospital, but he did not observe this. Defendant Norman denies he observed or was informed that Plaintiff's Decedent's was ill, weak, had substantial bruising; had difficulty standing and walking, moaned and groaned in pain, was confused, disoriented, talking incoherently, and was unable to respond to questions, repeatedly removed all or most of his clothes, did not drink or eat, and otherwise behaved abnormally at the time of Plaintiff's Decedent's detention. Defendant Norman is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 13.

Defendants, Block, Carlos, Clifford, Davis, Ficht, Huddleston, Hurnes, Moravec, Rowling, Knight, Mackey and Roberts deny they observed or were informed that Plaintiff's Decedent's was ill, weak, had substantial bruising; had difficulty standing and walking; moaned and groaned in pain; was confused, disoriented, talking incoherently, and was unable to respond to questions; defecated and urinated on the floor and himself; repeatedly removed all or most of his clothes; did not drink or eat; and otherwise behaved abnormally at the time of Plaintiff's Decedent's detention, and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 13.

14.    At the time of Plaintiff's Decedent's arrest and detention, agents, servants and/or employees of the Chicago Police Department referred to in Paragraph 13 of this Third Amended Complaint knew or should have known that Plaintiff's Decedent needed immediate medical attention yet failed to provide same.

**ANSWER:**    Defendant Officers each deny the allegations in paragraph 14 as directed against them individually, and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 14.

-12-

15. At the time of Plaintiff's Decedent's detention, agents, servants and/or employees of the Chicago Police Department referred to in Paragraph 13 ignored telephone calls and repeated pleas for medical assistance to Plaintiff's Decedent by his out-of-state family members and other concerned individuals, including at least one attorney who interviewed Wells and found him to be in need of immediate medical attention.

**ANSWER:** Defendant Officers each deny the allegations in paragraph 15 as directed against them individually, and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 15.

16. At the time of Plaintiff's Decedent's detention, agents, servants and/or employees of the Chicago Police Department referred to in Paragraph 13, had information and access to information in the form of discharge papers from Stroger Hospital, which instructed that the Plaintiff's Decedent was to return to Stroger Hospital or another medical facility if his symptoms worsened.

**ANSWER:** Defendant Musial admits that Plaintiff's Decedent was given discharge papers at Stroger Hospital, but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 16. The remaining Defendant Officers each deny the allegations in paragraph 16 as directed against them individually, and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 16.

17. Despite said repeated pleas for medical attention, the discharge instructions from Stroger Hospital, and Plaintiff's Decedent's deteriorating physical and mental condition, agents, servants and/or employees of the Chicago Police Department referred to in Paragraph 13 of this Third Amended Complaint failed to obtain medical attention to Plaintiff's Decedent.

**ANSWER:** Defendant Officers each deny the allegations in paragraph 17 as directed against them individually, and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 17.

18. Plaintiff's Decedent, exhibiting the symptoms described in Paragraph 13, remained in custody for over forty-eight (48) hours, during which time he slept on a cold concrete floor without proper hydration, nutrition and medical care.

**ANSWER:** Defendants Golubiak, Butkus and Behling restate their respective answers to paragraph 13 as though fully set forth herein, and are without knowledge or information

sufficient to form a belief as to the truth of the allegations in paragraph 18.  Defendants

McMahon, Sanders, Deneen, Gutierrez and Musial restate their respective answers to paragraph

13 as though fully set forth herein.  Upon information and belief, Defendants McMahon,

Sanders, Deneen, Gutierrez and Musial deny Plaintiff's Decedent remained in custody for over

forty-eight hours, and are without knowledge or information sufficient to form a belief as to the

truth of the remaining allegations in paragraph 18.

Defendant Farrell restates his respective answer to paragraph 13 as though fully set forth herein,

and denies the remaining allegations in paragraph 18.  Defendants Carr, Clifford, Moravec,

Norman, Rowling, Terrazas, Block, Carlos, Davis, Ficht, Huddleston, Hurnes, Kilroy, Knight,

Mackey and Roberts restate their respective answers to paragraph 13 as though fully set forth

herein, deny Plaintiff's Decedent slept on a cold concrete floor without proper hydration,

nutrition and medical care, and are without knowledge or information sufficient to form a belief

as to the truth of the remaining allegations in paragraph 18.

       19.     The conditions in which Plaintiff's Decedent remained in custody exacerbated his
physical injuries and caused or contributed to his ultimate death.

    **ANSWER:**    Defendants McMahon, Sanders, Golubiak, Butkus, Behling and are

without knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 19.  Defendants Deneen, Gutierrez, Farrell, Carr, Musial Clifford, Moravec, Norman,

Rowling, Terrazas, Block, Carlos, Davis, Ficht, Huddleston, Hurnes, Kilroy, Knight, Mackey and

Roberts deny the allegations in paragraph 19.

       20.     During the time Plaintiff's Decedent remained in police custody, he was in clear
need of medical attention.

    **ANSWER:**    Defendant Officers deny plaintiff's chronology of events.  Defendants

McMahon, Sanders, Golubiak, Butkus and Behling are without knowledge or information

sufficient to form a belief as to the truth of the allegations in paragraph 20.  Defendants Deneen,

Farrell, Carr, Musial, Gutierrez, Clifford, Moravec, Norman, Rowling, Terrazas, Block, Carlos,

Davis, Ficht, Huddleston, Hurnes, Kilroy, Knight, Mackey and Roberts deny the allegations in paragraph 20.

21.     All of the Defendant officers named in Paragraph 13 had notice and knowledge of Mr. Wells' need for immediate medical attention from their own observations, the discharge papers from Stroger Hospital, and from the repeated verbal warnings provided by the Plaintiff's Decedent's family and at least one attorney.

**ANSWER:**     Defendant Officers deny plaintiff's chronology of events.  Defendant Officers deny the allegations in paragraph 21.

22.     The Defendant officers listed in Paragraph 13 also knew of the seriousness of the Plaintiff's Decedent's medical condition as Plaintiff's Decedent's was: (1) ill, weak, had substantial bruising; (2) had difficulty standing and walking; (3) moaned and groaned in pain; (4) was confused, disoriented, talking incoherently, and was unable to respond to questions; (5) defecated and urinated on the floor and himself; (6) repeatedly removed all or most of his clothes; (7) did not drink or eat; and (8) otherwise behaved abnormally.

**ANSWER:**     Defendant Officers deny plaintiff's chronology of events.  Defendant Officers restate their respective answers to paragraph 13 as though fully set forth herein and deny the allegations in paragraph 22.

23.     The scope of the medical treatment needed by the Plaintiff's Decedent could have been easily accomplished by the Chicago Police Department.

**ANSWER:**     Defendant Officers deny plaintiff's chronology of events.  Defendant Officers deny the allegations in paragraph 23.

24.     There are hospitals with emergency rooms located within minutes of the Second District lock-up where Plaintiff's Decedent was being held.

**ANSWER:**     Defendant Officers admit there are hospitals with emergency rooms located near the Second District lock-up where Plaintiff's Decedent was held, but are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 24.

25.     The Second District is located in one of the five main Area Headquarters. The Second  District is staffed 24 hours a day with a full complement of officers on each shift.

**ANSWER:**    Defendant Officers admit that the Second District is located on the first floor of the building that also houses Area 1 (one of the five main Area Headquarters), and that the Second District is staffed 24 hours a day, but are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 25.

26.    The Second District has access to numerous police vehicles and has experience transporting detainees.  Detainees are transported to various locations on a daily basis without incident.

**ANSWER:**    Defendant Officers admit that the Second District has access to police vehicles, has experience transporting detainees, and that detainees are transported to various locations on a daily basis, but are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 26.

27.    In the alternative, the Chicago Police Department has the authority and ability to call for an ambulance to transport any detainee who may be in need of serious medical attention.

**ANSWER:**    Defendant Officers admit the allegations in paragraph 27.

28.    During his entire stay in the Second District lock-up, there were no investigatory concerns present which would have required that Plaintiff's Decedent remain in the Second District lock-up without access to medical attention.  Plaintiff's Decedent had already been subjected to toxicological tests and had already been exhaustively interviewed.

**ANSWER:**    Defendant Officers deny plaintiff's chronology of events.  Defendant Officers deny Plaintiff's Decedent was denied access to medical attention.  Defendant Officers deny the allegations in paragraph 28.

29.    During his entire stay in the Second District lock-up, there were no penological concerns present which would have required that Plaintiff's Decedent remain in the Second District lockup without access to medical attention. Plaintiff's Decedent never posed a security risk and could have been taken to a nearby hospital without expending significant resources.

**ANSWER:**    Defendant Officers deny plaintiff's chronology of events.  Defendant Officers deny Plaintiff's Decedent was denied access to medical attention.  Defendant Officers deny the allegations in paragraph 29.

30.     During his entire stay in the Second District lock-up, there were no administrative concerns present which would have required that Plaintiff's Decedent remain in the Second District lock-up without access to medical attention. Any Defendant officer listed in Paragraph 13 could have arranged for the Plaintiff's Decedent to obtain medical attention.

**ANSWER:** Defendant Officers deny plaintiff's chronology of events. Defendant Officers deny Plaintiff's Decedent was denied access to medical attention. Defendant Officers admit that they have the ability to call to arrange for medical attention to be given to detainees in custody who are in need of such attention. Defendant Officers deny the allegations in paragraph 29.

31.     During his time in custody, Plaintiff's Decedent suffered pain and emotional distress.

**ANSWER:** Defendants McMahon, Sanders, Golubiak, Butkus and Behling and are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31. Defendants Deneen, Farrell, Carr, Musial, Gutierrez, Clifford, Moravec, Norman, Rowling, Terrazas, Block, Carlos, Davis, Ficht, Huddleston, Hurnes, Kilroy, Knight, Mackey and Roberts deny the allegations in paragraph 31.

32.     Agents, servants and/or employees of the Chicago Police Department referred to in Paragraph 13 of this Third Amended Complaint failed to provide adequate medical assistance and/or assistance to Plaintiff's Decedent and such failure caused or contributed to his death.

**ANSWER:** Defendant Officers each deny the allegations in paragraph 32 as directed against them individually, and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 32.

33.     Plaintiff's Decedent was ultimately released from custody after a period in excess of forty-eight (48) hours of forced detention, and at the expiration of said time, was rushed by ambulance to St. Bernard's Hospital for emergency medical treatment.

**ANSWER:** Defendants Golubiak, Butkus, Behling, Carr, Clifford, Norman, Rowling, Block, Carlos, Davis, Ficht, Huddleston, Hurnes, Kilroy, Mackey and Roberts are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph

-17-

33.  Defendant Farrell admits that upon Plaintiff's Decedent's release from custody he was taken by ambulance to St. Bernard's Hospital for a psychiatric evaluation, but denies the remaining allegations in paragraph 33.  Upon information and belief, Defendants McMahon, Sanders, Deneen, Gutierrez and Musial deny  Plaintiff's Decedent was ultimately released from custody after over forty-eight (48) hours of detention.  Upon information and belief, Defendants McMahon, Sanders and Musial admit that upon Plaintiff's Decedent's release from custody he was taken by ambulance to St. Bernard's Hospital, but are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 33. Defendants Deneen and Gutierrez admit that upon Plaintiff's Decedent's release from custody he was taken by ambulance to St. Bernard's Hospital, but are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 33. Defendant Knight  admits that near the end of his shift on April 27, 2008, paramedics came into the lock-up area for Plaintiff's Decedent, but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 33.  Defendant Moravec admits upon information and belief that Plaintiff's Decedent was taken to St. Bernard's Hospital upon his release, but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 33.  Defendant Terrazas admits that upon Plaintiff's Decedent's release from custody he was taken out of the lock-up area by paramedics and upon information and belief transported to St. Bernard's Hospital, but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 33.

34.     In the six weeks following his release from police custody, Plaintiff's Decedent remained  hospitalized until the day he died. During that time, Plaintiff's Decedent suffered pain and emotional distress and was subjected to numerous medical procedures.

   **ANSWER:**   Defendant Officers are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 34.

-18-

35.     Plaintiff's Decedent was not charged with any criminal conduct in relation to the Accident.  Rather, Plaintiff's Decedent was issued a traffic citation for negligent driving.

**ANSWER:**     Defendants Deneen, McMahon, Farrell, Sanders, Musial and Gutierrez admit Plaintiff's Decedent was issued a traffic citation for negligent driving, but deny the remaining allegations in paragraph 35.  Defendants Golubiak, Butkus, Behling, Carr, Clifford, Moravec, Norman, Rowling, Terrazas, Block, Carlos, Davis, Ficht, Huddleston, Hurnes, Kilroy, Knight, Mackey and Roberts are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 35.

36.     From the time of Plaintiff's Decedent's detention on April 25, 2008 through the time of his release on or about April 27, 2008, Plaintiff's Decedent was under the custody and control of the CHICAGO POLICE DEPARTMENT, and the officers, agents, and servants listed in Paragraph 5 and was not free to leave John Stroger Hospital or the police facility located at 51st and Wentworth.

**ANSWER:**     Defendants Golubiak and Butkus admit that Plaintiff's Decedent was under the custody and control of medical personnel and the Chicago Police Department at certain times on April 25, 2008, but are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 36.  Defendant Farrell admits from the time of Plaintiff's Decedent's arrest on April 25, 2008 through the time of his release on or about April 27, 2008, Plaintiff's Decedent was under the custody and control of the Chicago Police Department and medical personnel, but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 36.  Upon information and belief, Defendants McMahon, Sanders and Carr admit from the time of Plaintiff's Decedent's arrest on April 25, 2008 through the time of his release on or about April 27, 2008, Plaintiff's Decedent was under the custody and control of the Chicago Police Department and medical personnel, but are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 36.  Defendants Deneen, Musial and Gutierrez admit from the time of Plaintiff's Decedent's arrest on April 25, 2008 through the time of his release on or about April 27, 2008, Plaintiff's Decedent was under the custody and control of the Chicago Police

-19-

Department and medical personnel, but are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 36. Upon information and belief, Defendants Behling, Clifford, Moravec, Norman, Rowling, Terrazas, Block, Carlos, Davis, Ficht, Huddleston, Hurnes, Kilroy, Knight, Mackey and Roberts admit from the time of Plaintiff's Decedent's arrest on April 25, 2008 through the time of his release on or about April 27, 2008, Plaintiff's Decedent was under the custody and control of the Chicago Police Department, but are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 36.

37.    The CITY OF CHICAGO and its police officers have a legal responsibility for the safety, health and well-being of persons in their custody and control.

**ANSWER:**    Defendant Officers admit that the City of Chicago and its police officers have certain legal responsibilities to persons in their custody and control, but deny that plaintiff has accurately alleged those legal responsibilities under the facts and circumstances of this case, and therefore deny the remaining allegations in paragraph 37.

38.    During the time of Plaintiff's Decedent's detention, the CITY OF CHICAGO, through the conduct of its police officers, deprived Plaintiff's Decedent access to medical care.

**ANSWER:**    Defendant Officers deny the allegations in paragraph 38.

39.    The CITY OF CHICAGO has a custom and practice to deliberately ignore the medical needs of persons detained or otherwise held in police custody, and in this case, deliberately ignored the medical needs of Plaintiff's Decedent.

**ANSWER:**    Defendant Officers deny the allegations in paragraph 39.

40.    The custom and practice of the CITY OF CHICAGO to ignore the medical needs of persons detained in police custody is further established by the Department's failure to train any of its officers, servants, or agents in recognizing when detainees are in medical distress or in need of medical attention.

**ANSWER:**    Defendant Officers deny the allegations in paragraph 40.

41.    The CITY OF CHICAGO and agents, servants and/or employees of the Chicago Police Department referred to in Paragraph 5 of this Third Amended Complaint deliberately failed to provide medical care to Plaintiff's Decedent in a timely fashion.

**ANSWER:**    Defendant Officers deny the allegations in paragraph 41.

## COUNT I
## 1983 ACTION OBJECTIVELY UNREASONABLE DENIAL OF MEDICAL ATTENTION UNDER THE FOURTH AMENDMENT

**(against Defendants Detective Michael Deneen, Star No. 19012, Captain John B. Farrell, Star No. 0006, Officer Arthur Carr, Jr., Star No. 17789, Sgt. Tracey Sanders, Star No. 1271, Detective Elliott Musial, Star No. 19416, Detective Galo Guiterrez, Star No. 10018, Sgt. John P. Clifford, Star No. 855, Sgt. Richard E. Moravec, Star No. 933, Officer David Norman, Star No. 3719, Sgt. Steven R. Rowling, Star No. 933, Sgt. Jesse Terrazas, Star No. 1539, Lt. Arthur Block, Star No. 600, Officer Edgar Carlos, Star No. 6540, Detention Aide Torrance T. Davis, Sgt. Leonard Fitch, Star No. 2332, Detention Aide Lloyd Huddleston, Officer Philrick Hurns, Star No. 6866, Lt. William Kilroy, Jr. Star No. 280, Officer Fulton Knight, Star No. 4036, Officer Sylvester Mackey, Star No. 19053, Officer David Norman, Star No. 3719, and Officer Levi P. Roberts, Star No. 12313).**

42.    Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 through 41, *supra*, as if fully set out herein; and expressly makes them part of Count I.

**ANSWER:**    Defendant Officers restate and incorporate their answers to the allegations contained in paragraphs 1 through 41 as their answer to paragraph 42, as though fully set forth herein.

43.    The agents, servants and/or employees of the Chicago Police Department referred to in Paragraph 13 of this Third Amended Complaint were: (1) aware of Plaintiff's Decedent's physical and mental condition and his substantial risk of serious injury and death; and (2) failed to take appropriate steps to protect him by providing medical attention.

**ANSWER:**    Defendant Officers deny the allegations in paragraph 43.

44.    The actions of the Defendant officers listed in Paragraph 13 were objectively unreasonable under the Fourth Amendment.

**ANSWER:**    Defendant Officers deny the allegations in paragraph 44.

45.     The injuries to Plaintiff's Decedent were objectively and noticeably serious. The agents, servants and employees of the Chicago Police Department referred to in Paragraph 13 of this Third Amended Complaint were on notice and had knowledge of the seriousness of Plaintiff's Decedent's medical condition through their own observations, the verbal warnings provided, and by the Stroger Discharge papers.

        **ANSWER:**     Defendant Officers deny the allegations in paragraph 45.

46.     The scope of the needed treatment was reasonable, necessary, and could have been accomplished with minimal use of readily available resources.

        **ANSWER:**     Defendant Officers deny they were on notice or had knowledge of

plaintiff's decedent's medical need and/or the seriousness of the medical need, and therefore

deny the allegations in paragraph 46.

47.     There were no investigatory, penological, or administrative concerns present that required Plaintiff's Decedent to be held in the Second District lock-up without medical attention.

        **ANSWER:**     Defendant Officers deny they failed to provide medical attention, and

therefore deny the allegations in paragraph 47.

48.     The balancing of respective interests weighed heavily in favor of obtaining immediate medical treatment for the Plaintiff's Decedent.

        **ANSWER:**     Defendant Officer deny the allegations in paragraph 48.

49.     As a direct and proximate result of this Constitutional violation, Plaintiff's Decedent suffered from, *inter alia,* pneumonia, acute renal failure, and multi-organ failure which ultimately led to his death.

        **ANSWER:**     Defendant Officers deny the allegations in paragraph 49.

        WHEREFORE, Defendant Officers demand judgment in their favor and against the

plaintiff, costs of suit and attorneys' fees, and such other relief as the court deems appropriate.

## COUNT II
## 1983 ACTION - DELIBERATE INDIFFERENCE TO MEDICAL NEEDS
**(against Defendants Detective Michael Deneen, Star No. 19012,
Captain John B. Farrell, Star No. 0006, Officer Arthur Carr,
Jr., Star No. 17789, Sgt. Tracey Sanders, Star No. 1271,
Detective Elliott Musial, Star No. 19416, Detective Galo
Guiterrez, Star No. 10018, Sgt. John P. Clifford, Star No. 855,
Sgt. Richard E. Moravec, Star No. 933, Officer David Norman,**

> **Star No. 3719, Sgt. Steven R. Rowling, Star No. 933, Sgt. Jesse Terrazas, Star No. 1539, Lt. Arthur Block, Star No. 600, Officer Edgar Carlos, Star No. 6540, Detention Aide Torrance T. Davis, Sgt. Leonard Fitch, Star No. 2332, Detention Aide Lloyd Huddleston, Officer Philrick Hurns, Star No. 6866, Lt. W:Qliam Kilroy, Jr. Star No. 280, Officer Fulton Knight, Star No. 4036, Officer Sylvester Mackey, Star No. 19053, and Officer Levi P. Roberts, Star No. 12313).**

50.    Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 through  49, *supra*, as if fully set out herein, and expressly makes them part of Count II.

**ANSWER:**    Defendant Officers restate and incorporate their answers to the allegations contained in paragraphs 1 through 49 as their answer to paragraph 50, as though fully set forth herein.

51.    The agents; servants and/or employees of the Chicago Police Department referred to in  Paragraph 13 of this Third Amended Complaint were aware of Plaintiff's Decedent's physical and mental condition and his substantial risk of serious injury and death, and intentionally and/or recklessly failed to take appropriate steps to protect him by providing medical attention.

**ANSWER:**    Defendant Officers deny the allegations in paragraph 51.

52.    The acts and/or omissions of Officers identified in Paragraph 13 constitute deliberate indifference to Plaintiff's Decedent's medical needs and, thus, violate the Fourteenth Amendment of the United States Constitution.

**ANSWER:**    Defendant Officers deny the allegations in paragraph 52.

53.    Plaintiff's Decedent's injuries were objectively and noticeably serious. The agents, servants and employees of the Chicago Police Department referred to in Paragraph 13 of this Third Amended Complaint were deliberately indifferent to the health and safety of the Plaintiff's Decedent.

**ANSWER:**    Defendant Officers deny the allegations in paragraph 53.

54.    As a direct and proximate result of this Constitutional violation, Plaintiff's Decedent  suffered from, *inter alia*, pneumonia, acute renal failure, and multi-organ failure which ultimately led to his death.

**ANSWER:**    Defendant Officers deny the allegations in paragraph 54.

WHEREFORE, Defendant Officers demand judgment in their favor and against the plaintiff, costs of suit and attorneys' fees, and such other relief as the court deems appropriate.

## COUNT III
## 1983 ACTION (MONELL CLAIM) AGAINST THE CITY OF CHICAGO

55.     Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 through 54, *supra*, as if fully set out herein, and expressly makes them part of Count III.

**ANSWER:**     Defendant Officers restate and incorporate their answers to the allegations contained in paragraphs 1 through 54 as their answer to paragraph 55, as though fully set forth herein.

56.     The actions of agents, servants and/or employees of the City of Chicago referred to in Paragraph 5 of this Third Amended Complaint were caused in part by one or more interrelated *de facto* as well as" explicit policies, practices and/or customs and procedures of the CITY OF CHICAGO and its police department.

**ANSWER:**     Defendant Officers deny the allegations in paragraph 56.

57.     At all times material to this Third Amended Complaint, the CITY OF CHICAGO and its police department, and interrelated *de facto* policies, practices, and customs which included, *inter alia*,

(a)     The CITY OF CHICAGO and its police department's inexcusable and intentional failure to train police officers to identify and respond to pretrial detainees, such as Plaintiff's Decedent, who exhibit obvious signs of physical and/or mental illness, despite the existence of a protocol designed specifically to address situations in which a pretrial detainee exhibits signs of physical and/or mental illness, requiring those untrained police officers to act to seek a physical and/or psychiatric evaluation so the detainee may get proper attention;

(b)     The failure of the Chicago Police Department to insure that any orders, information or training that is conveyed to its employees, agents and servants is actually received, absorbed and understood by the officer in question;

(c)     The failure to implement its policy under which each police district has a designated police officer during each working shift possessed with knowledge of the police department's protocol in responding to pretrial detainees exhibiting obvious signs of physical and/or mental illness, having received formal training in regards to said protocol;

(d)     The failure to insure a flow of critical information regarding the physical and mental condition of detainees in the form of: 1) medical information provided by family members and other concerned individuals including attorneys; 2) medical records and papers that contain follow-up

instructions regarding the detainee's care; 3) indications of abnormal behavior exhibited by the detainee; and 4) information regarding if a detainee has eaten and taken in fluids;

(e) Fostering an environment in which police officers are encouraged to deliberately ignore a pretrial-detainee's obvious signs of physical and/or mental illness and instead are encouraged to detain detainees in deplorable conditions until such time as charges are contemplated and uncharged detainees must be released;

(f) As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train and supervise its officers, such that its failure to do so manifests deliberate indifference;

(g) The City of Chicago has failed to remedy the patterns of behavior described in these subparagraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here;

(h) As a matter of policy and practice, the City of Chicago, facilitates the type of constitutional violation at issue here by failing to punish and discipline prior instances of officers' failure to provide medical attention to detainees, thereby leading officers and providers to believe their actions will never be scrutinized, thereby encouraging future abuses such as those affecting Plaintiff;

(i) The policy and practice is furthered by the actions of the City of Chicago in making findings in a disproportional small number of cases involving officers accused of misconduct similar to that here;

(j) Such policy and practice also condones a "code of silence" in the City of Chicago Police Department that condones the failure to report actions and omissions resulting in detainees being denied adequate medical attention; this results in additional constitutional violations of the same nature, such as the one set forth in this Third Amended Complaint.

**ANSWER:** Defendant Officers deny the allegations in paragraph 57, including sub-paragraphs 57(a) through 57(j).

58. Said policies, practices and customs, as set forth above, both individually and collectively, were maintained and implemented with deliberate indifference, and caused agents, servants and/or employees of the Chicago Police Department referred to in Paragraph 13 of this Third Amended Complaint to commit the aforesaid acts against Plaintiff's Decedent and, therefore, acted as direct and proximate causes of said constitutional violations, and death to Plaintiff's Decedent.

**ANSWER:** Defendant Officers deny the allegations in paragraph 58.

WHEREFORE, Defendant Officers demand judgment in their favor and against the plaintiff, costs of suit and attorneys' fees, and such other relief as the court deems appropriate.

## COUNT IV
## SUPPLEMENTAL STATE LAW CLAIM FOR WRONGFUL DEATH AGAINST DEFENDANT CHICAGO POLICE OFFICERS LISTED IN PARAGRAPH 5.

59.     Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 through 58, *supra*, as if fully set out herein, and expressly makes them part of Count III.

**ANSWER:**     Defendant Officers restate and incorporate their answers to the allegations contained in paragraphs 1 through 58 as their answer to paragraph 59, as though fully set forth herein.

60.     The death of Plaintiff's Decedent was proximately caused by the aforesaid wrongful acts and/or omissions of agents, servants and/or employees of the Chicago Police Department listed in Paragraph 5 of this Third Amended Complaint.

**ANSWER:**     Defendant Officers deny the allegations in paragraph 60.

61.     The death of Plaintiff's Decedent was proximately caused by the aforesaid wrongful acts and/or omissions of agents, servants and/or employees of the Chicago Police Department listed in Paragraph 5 of this Third Amended Complaint.

**ANSWER:**     Defendant Officers deny the allegations in paragraph 61.

62.     By reason of the death of Plaintiff's Decedent, Plaintiff Darlene Wells has suffered pecuniary damages, including the loss of comfort, love, affection, protection and society of the decedent.

**ANSWER:**     Defendant Officers deny the allegations in paragraph 62.

63.     The Estate has incurred substantial medical expenses and funeral expenses.

**ANSWER:**     Defendant Officers are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 63.

WHEREFORE, Defendant Officers demand judgment in their favor and against the plaintiff, costs of suit and attorneys' fees, and such other relief as the court deems appropriate.

## COUNT V
## SUPPLEMENTAL STATE LAW CLAIM FOR WRONGFUL DEATH AGAINST
## DEFENDANT CITY OF CHICAGO

64.     Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 through 63, *supra*, as if fully set out herein, and expressly makes them part of Count V.

**ANSWER:**     Defendant Officers restate and incorporate their answers to the allegations contained in paragraphs 1 through 63 as their answer to paragraph 64, as though fully set forth herein.

65.     The agents, servants and/or employees of the Chicago Police Department listed in Paragraph 5 of this Third Amended Complaint breached a duty they owed to Plaintiff Decedent by unlawfully detaining him and by withholding needed medical care.

**ANSWER:**     Defendant Officers deny the allegations in paragraph 65.

66.     The death of Plaintiff's Decedent was proximately caused by the aforesaid wrongful acts and/or omissions of agents, servants and/or employees of the Chicago Police Department listed in Paragraph 5 of this Third Amended Complaint.

**ANSWER:**     Defendant Officers deny the allegations in paragraph 66.

67.     By reason of the death of Plaintiff's Decedent, Plaintiff Darlene Wells has suffered pecuniary damages, including the loss of comfort, love, affection, protection and society of the decedent.

**ANSWER:**     Defendant Officers deny the allegations in paragraph 67.

68.     The Estate has incurred substantial medical expenses and funeral expenses.

**ANSWER:**     Defendant Officers are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 68.

69.     During the period of time when the death of Plaintiff's Decedent was caused by the wrongful actions or omissions of the individuals listed in Paragraph 5, such individuals were acting as employees, servants and/or agents of the Defendant City of Chicago.

**ANSWER:**     Defendant Officers admit that at all times relevant hereto they were acting as employees, servants and/or agents of the Defendant City of Chicago, but deny the remaining allegations in paragraph 69.

70.     In committing the wrongful acts and omissions detailed in the preceding paragraphs, Defendant officers and employees listed in Paragraph 5 were acting at all relevant times within the scope of their employment.

**ANSWER:**     Defendant Officers admit that at all times relevant hereto they were acting within the scope of their employment, but deny the remaining allegations in paragraph 70.

71.     Defendant City of Chicago is liable as the principal for all torts committed by its employees, agents and servants.

**ANSWER:**     Defendant Officers deny the allegations in paragraph 71.

WHEREFORE, Defendant Officers demand judgment in their favor and against the plaintiff, costs of suit and attorneys' fees, and such other relief as the court deems appropriate.

**COUNT VI**
**SUPPLEMENTAL STATE LAW CLAIM FOR SURVIVAL**
**AGAINST DEFENDANT CHICAGO POLICE**
**OFFICERS/AGENTS/SERVANTS IDENTIFIED IN PARAGRAPH 5**

72.     Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 through 71, *supra*, as if fully set out herein, and expressly makes them part of Count VI.

**ANSWER:**     Defendant Officers restate and incorporate their answers to the allegations contained in paragraphs 1 through 71 as their answer to paragraph 72, as though fully set forth herein.

73.     The death of Plaintiff's Decedent was directly and proximately caused by the aforesaid wrongful acts and/or omissions of agents, servants and/or employees of the City of Chicago referred to in Paragraph 5 of this Third Amended Complaint.

**ANSWER:**     Defendant Officers deny the allegations in paragraph 73.

74.     Prior to the death of the Plaintiff's Decedent, he spent six weeks in two different hospitals going through numerous tests and procedures.  He suffered great pain and emotional suffering as a result of the Defendants actions as detailed above.

**ANSWER:**     Defendant Officers deny plaintiff's decedent suffered great pain and emotional suffering as a result of their actions alleged and detailed above.  Defendant Officers

-28-

are without knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in paragraph 74.

75.     As a direct and proximate result of one or more of the aforementioned acts or
omissions of agents, servants and/or employees of the City of Chicago referred to in Paragraph 5
of this Third Amended Complaint, the Plaintiff's decedent suffered serious injuries of a personal
and pecuniary nature, including, but not limited to, great pain and suffering before his death and
medical expenses, subjecting the aforementioned Defendants to liability pursuant to 755 ILCS
5/27-6, commonly referred to as the Illinois Survival Statute.

    **ANSWER:**     Defendant Officers deny the allegations in paragraph 75.

    WHEREFORE, Defendant Officers demand judgment in their favor and against the

plaintiff, costs of suit and attorneys' fees, and such other relief as the court deems appropriate.

## COUNT VII
## SUPPLEMENTAL STATE LAW CLAIM FOR SURVIVAL
## AGAINST DEFENDANT CITY OF CHICAGO

76.     Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1
through 75, *supra*, as if fully set out herein, and expressly makes them part of Count VII.

    **ANSWER:**     Defendant Officers restate and incorporate their answers to the allegations

contained in paragraphs 1 through 75 as their answer to paragraph 76, as though fully set forth

herein.

77.     The death of Plaintiff's Decedent was directly and proximately caused by the
aforesaid wrongful acts and/or omissions of agents, servants and/or employees of the Chicago
Police Department referred to in Paragraph 5.

    **ANSWER:**     Defendant Officers deny the allegations in paragraph 77.

78.     During the period of time when the death of Plaintiff's Decedent was caused by
the wrongful actions or omissions of the individuals listed in Paragraph 5, such individuals were
acting as employees, servants and/or agents of the Defendant City of Chicago.

    **ANSWER:**     Defendant Officers admit that at all times relevant hereto they were acting

as employees, servants and/or agents of the Defendant City of Chicago, but deny the remaining

allegations in paragraph 78.

-29-

79.     In committing the wrongful acts and omissions detailed in the preceding paragraphs, Defendant officers and employees listed in Paragraph 5 were acting at all relevant times within the scope of their employment.

**ANSWER:**     Defendant Officers admit that at all times relevant hereto they were acting within the scope of their employment, but deny the remaining allegations in paragraph 79.

80.     Defendant City of Chicago is liable as the principal for all torts committed by its employees, agents and servants.

**ANSWER:**     Defendant Officers deny the allegations in paragraph 80.

81.     As a direct and proximate result of one or more of the aforementioned acts or omissions of the agents, servants and/or employees of the City of Chicago referred to in Paragraph 5 of this Third Amended Complaint, the Plaintiff's decedent suffered serious injuries of a personal and pecuniary nature, including, but not limited to, great pain and suffering before his death and medical expenses, subjecting the aforementioned Defendants to liability pursuant to 755 ILCS 5/27-6, commonly referred to as the Illinois Survival Statute.

**ANSWER:**     Defendant Officers deny the allegations in paragraph 81.

WHEREFORE, Defendant Officers demand judgment in their favor and against the plaintiff, costs of suit and attorneys' fees, and such other relief as the court deems appropriate.

## COUNT VIII
## SUPPLEMENTAL STATE LAW CLAIM FOR WILLFUL AND WANTON CONDUCT AGAINST CHICAGO POLICE OFFICERS/AGENTS/SERVANTS IDENTIFIED IN PARAGRAPH 13

82.     Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 through 81, *supra*, as if fully set out herein, and expressly makes them part of Count VIII.

**ANSWER:**     Defendant Officers restate and incorporate their answers to the allegations contained in paragraphs 1 through 81 as their answer to paragraph 82, as though fully set forth herein.

83.     At the time and place of the Plaintiff's Decedent's custody and detention, the agents, servants and/or employees of the Chicago Police Department referred to in Paragraph 13 of this Third Amended Complaint had a duty of care toward Plaintiff's Decedent, including a duty to refrain from willful and wanton acts that would cause suffering or injury to Plaintiff's Decedent.

-30-

**ANSWER:** Defendant Officers admit only those duties imposed by law, and deny the remaining allegations in paragraph 83.

84. As detailed above, the agents, servants and/or employees of the Chicago Police Department referred to in Paragraph 13 of this Third Amended Complaint had actual knowledge that Plaintiff's Decedent was experiencing severe physical and psychiatric ailments that could cause him harm or death. The officers had actual knowledge from the repeated reports given by Plaintiff's Decedent's family and friends while in police custody; from the medical information received from Stroger Hospital, and from the obvious and apparent deterioration of Plaintiff's Decedent's medical condition as detailed in Paragraph 13. The condition of the Plaintiff's Decedent clearly required immediate care and transfer to a health and/or mental facility to protect him from imminent harm.

**ANSWER:** Defendant Officers deny the allegations in paragraph 84.

85. However, the agents, servants and/or employees of the Chicago Police Department referred to in Paragraph 13 of this Third Amended Complaint demonstrated an utter indifference to Plaintiff's Decedent's health and safety when they deliberately ignored Plaintiff's Decedent's need for immediate physical and mental health care at a time they were aware of a risk of harm and/or his death.

**ANSWER:** Defendant Officers deny the allegations in paragraph 85.

86. In addition, the agents, servants and/or employees of the Chicago Police Department referred to in Paragraph 5 demonstrated a willful and wanton and utter indifference to Plaintiff's Decedent's safety when the agents, servants and/or employees of the City of Chicago referred to in Paragraph 13 of this Third Amended Complaint kept Plaintiff's Decedent into a concrete cell without medical care and adequate hydration with actual knowledge that he was involved in a serious vehicular accident and had sustained injuries as a result thereof and that his physical and mental condition were quickly and seriously deteriorating and that he was in danger of harm and/or death.

**ANSWER:** Defendant Officers deny the allegations in paragraph 86.

87. As detailed above, the agents, servants and/or employees of the City of Chicago referred to in Paragraph 13 of this Third Amended Complaint willfully and wantonly committed one or more of the following acts:

    (a)    Deliberately and/or intentionally failed to provide Plaintiff's Decedent with access to physical and mental health care at the time of his arrest, while in police custody and at the time of his custodial release despite actual knowledge of Plaintiff's Decedent's deteriorated physical and mental condition, the reports by his family and other concerned individuals, and knowledge in the form of discharge papers that Plaintiff's Decedent should return to a medical facility of his condition worsened;

(b)    Deliberately and/or intentionally failed to provide Plaintiff's Decedent with access to health care at the time of his arrest and while in police custody despite actual knowledge that Donald was suffering from physical and psychological conditions;

(c)    Deliberately and/or intentionally and with utter disregard for Plaintiff's Decedent's safety and physical and mental condition failed at the time of his arrest and while in police custody, to heed the pleas of family members and friends that Plaintiff's Decedent was in poor health and to provide medical care and assistance to Plaintiff's Decedent;

(d)    Deliberately and/or intentionally and with utter disregard for Plaintiff's Decedent's safety at the time of his arrest and while in police custody, failed to provide Plaintiff's Decedent's family with information regarding his condition at the time of his arrest and while in custody, which would have afforded them an opportunity to provide for his medical care by authorizing said care;

(e)    Deliberately and/or intentionally represented to family members and friends that any decision regarding what to do with Plaintiff's Decedent and his physical and mental condition would remain the responsibility of the Chicago Police Department and its police officers and then deliberately and recklessly failed to provide any care for Plaintiff's Decedent's physical and mental health;

(f)    Deliberately and/or intentionally and with utter and conscious disregard for his safety, allowed Plaintiff's Decedent to remain in a cold cell without clothing and hydration, and allowed the Plaintiff's Decedent to remain in his own urine and feces.

**ANSWER:**    Defendant Officers deny the allegations in paragraph 87, including sub-paragraphs 87(a) through 87(f).

88.    As a direct and proximate result of one or more of the aforesaid wrongful acts and/or omissions, Plaintiff's Decedent developed pneumonia, acute renal failure and multi-organ failure that led to his ultimate death.

**ANSWER:**    Defendant Officers deny the allegations in paragraph 88.

89.    As a direct and proximate result of one or more of the aforesaid wrongful acts and/or omissions, Ann Darlene Wells suffers loss and companionship of her husband.

**ANSWER:**    Defendant Officers deny the allegations in paragraph 89.

WHEREFORE, Defendant Officers demand judgment in their favor and against the plaintiff, costs of suit and attorneys' fees, and such other relief as the court deems appropriate.

## COUNT IX
## SUPPLEMENTAL STATE LAW CLAIM FOR WILLFUL AND WANTON CONDUCT AGAINST DEFENDANT CITY OF CHICAGO

90.     Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 through 89, *supra*, as if fully set out herein, and expressly makes them part of Count IX.

**ANSWER:**     Defendant Officers restate and incorporate their answers to the allegations contained in paragraphs 1 through 89 as their answer to paragraph 90, as though fully set forth herein.

91.     At the time and place of the Plaintiff's Decedent's custody and detention, the agents, servants and/or employees of the Chicago Police Department referred to in Paragraph 13 of this Third Amended Complaint had a duty of care toward Plaintiff's Decedent, including a duty to refrain from willful and wanton acts that would cause suffering or injury to Plaintiff's Decedent.

**ANSWER:**     Defendant Officers admit only those duties imposed by law, and deny the remaining allegations in paragraph 91.

92.     As a direct arid proximate result of one or more of the aforesaid wrongful acts and/or omissions committed by the employees, agents and servants, of the Defendant City of Chicago.  Plaintiff's Decedent developed pneumonia, acute renal failure and multi-organ failure that led to his ultimate death.

**ANSWER:**     Defendant Officers deny the allegations in paragraph 92.

93.     The death of Plaintiff's Decedent was directly and proximately caused by the aforesaid  wrongful acts and/or omissions of agents, servants and/or employees of the Chicago Police Department referred to in Paragraph 13.

**ANSWER:**     Defendant Officers deny the allegations in paragraph 93.

94.     During the period of time when the death of Plaintiff's Decedent was caused by the wrongful actions or omissions of the individuals listed in Paragraph 13, such individuals were acting as employees, servants and/or agents of the Defendant City of Chicago.

**ANSWER:**     Defendant Officers admit that at all times relevant hereto they were acting as employees, servants and/or agents of the Defendant City of Chicago, but deny the remaining allegations in paragraph 94.

95.     In committing the wrongful acts and omissions detailed in the preceding paragraphs, Defendant officers and employees listed in Paragraph 13 were acting at all relevant times within the scope of their employment.

**ANSWER:**     Defendant Officers admit that at all times relevant hereto they were acting within the scope of their employment, but deny the remaining allegations in paragraph 95.

96.     As a direct and proximate result of one or more of the aforesaid wrongful acts and/or omissions, Ann Darlene Wells suffers loss and companionship of her husband.

**ANSWER:**     Defendant Officers deny the allegations in paragraph 96.

97.     Defendant City of Chicago is liable as the principal for all torts committed by its employees, agents and servants.

**ANSWER:**     Defendant Officers deny the allegations in paragraph 97.

WHEREFORE, Defendant Officers demand judgment in their favor and against the plaintiff, costs of suit and attorneys' fees, and such other relief as the court deems appropriate.

## COUNT X
## UNLAWFUL DETENTION CLAIM AGAINST DEFENDANT OFFICERS
## PURSUANT TO 42 U.S.C. §1983
**(Against Detective Michael Deneen, Star No. 19012, Lt. Maureen McMahon, Star No. 19812, Captain John B. Farrell, Star No. 0006, Sgt. Tracey Sanders, Star No. 1271, Officer Rachel Golubiak, Star No. 5453, Officer Joann Butkus, Star No. 7698, Detective Elliott Musial, Star No. 19416, Detective Galo Guiterrez, Star No. 10018, Sgt. Ronald Behling, Star No. 1886; and Lt. Arthur Block, Star No. 600)**

98.     Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 through 97, *supra*, as if fully set out herein, and expressly makes them part of Count X.

**ANSWER:**     Defendant Officers restate and incorporate their answers to the allegations contained in paragraphs 1 through 97 as their answer to paragraph 98, as though fully set forth herein.

99.     As describe more above, Plaintiff's Decedent was arrested and detained by Officers of the Chicago Police Department without being afforded a prompt post-arrest probable cause hearing, in a manner which violates the Fourth Amendment of the United States Constitution. This deprivation of Plaintiff's Decedent's Constitutional rights was effected under color of law, and Plaintiff's Decedent died as a result thereof.

**ANSWER:**    Defendant Officers admit they were acting under color of law at all relevant times.  Defendant Officers admit that Plaintiff's Decedent was arrested and detained by certain officers of the Chicago Police Department, but deny the remaining allegations in paragraph 99.

100.    Within hours of his arrest, Plaintiff's Decedent invoked his right to counsel.

**ANSWER:**    Defendant Musial admits Plaintiff's Decedent invoked his right to confer with an attorney before answering certain further questions during an interview at the Area 1 Detective Division on April 25, 2008, subsequent to his arrest.  Upon information and belief, Defendants McMahon, Sanders, Deneen, Gutierrez and Farrell, admit that Plaintiff's Decedent invoked his right to counsel subsequent to his arrest, but are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 100. Defendants Carr, Golubiak, Butkus, Behling, Clifford, Moravec, Norman, Rowling, Terrazas, Block, Carlos, Davis, Ficht, Huddleston, Hurnes, Kilroy, Knight, Mackey and Roberts are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 100.

101.    Shortly after his arrest, Plaintiff's Decedent submitted to blood and urine tests to detect the presence of drugs and/or alcohol in his body, and Officers of the Chicago Police Department obtained the results of these tests within hours after taken from Stroger Hospital.

**ANSWER:**    Defendant Musial admits that Plaintiff's Decedent submitted blood and urine samples for testing shortly after his arrest to detect the presence of drugs and/or alcohol in his body, but denies the remaining allegations in paragraph 101.  Defendants Golubiak and Butkus admit that Plaintiff's Decedent submitted blood and urine samples for testing shortly after his arrest to detect the presence of drugs and/or alcohol in his body, but are without knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 101.  Upon information and belief, Defendants McMahon, Sanders, Deneen and Gutierrez admit that Plaintiff's Decedent submitted blood and urine samples for testing shortly after his arrest to

-35-

detect the presence of drugs and/or alcohol in his body, but deny the remaining allegations in paragraph 101. Defendants Farrell, Carr, Behling, Clifford, Moravec, Norman, Rowling, Terrazas, Block, Carlos, Davis, Ficht, Huddleston, Hurnes, Kilroy, Knight, Mackey and Roberts are without knowledge or information sufficient to form a belief as to the allegations in paragraph 101.

102.    The results confirmed that there were no drugs, alcohol or other substances in Plaintiff's Decedent's body that would have impaired his ability to drive a motor vehicle at the time of the accident.

**ANSWER:**    Upon information and belief, Defendants McMahon, Sanders, Musial, Deneen and Gutierrez admit that the results indicated that there were no illicit drugs or alcohol detected in Plaintiff's Decedent's body, but are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 102. Defendants Golubiak, Butkus, Farrell, Carr, Behling, Clifford, Moravec, Norman, Rowling, Terrazas, Block, Carlos, Davis, Ficht, Huddleston, Hurnes, Kilroy, Knight, Mackey and Roberts are without knowledge or information sufficient to form a belief as to the allegations in paragraph 102.

103.    Despite knowing the information in the preceding Paragraphs, Detective Michael Deneen, Star No. 19012, Lt. Maureen McMahon, Star No. 19812, Captain John B. Farrell, Star No. 0006, Sgt. Tracey Sanders, Star No. 1271, Officer Rachel Golubiak, Star No. 5453, Officer Joann Butkus, Star No. 7698, Detective Elliott Musial, Star No. 19416, Detective Galo Guiterrez, Star No. 10018, Sgt. Ronald Behling, Star No. 1886, and Lt. Arthur Block, Star No. 600 unlawfully and without justification kept the Plaintiff's Decedent in custody.

**ANSWER:**    Defendants Deneen, McMahon, Farrell, Sanders, Golubiak, Butkus, Musial, Gutierrez, Behling and Block deny the allegations in paragraph 103. Defendants Carr, Clifford, Moravec, Norman, Rowling, Terrazas, Carlos, Davis, Ficht, Huddleston, Hurnes, Kilroy, Knight, Mackey and Roberts are without knowledge or information sufficient to form a belief as to the allegations in paragraph 103.

104.     Furthermore, a second set of toxicology tests were conducted by the Illinois State Police Lab. Those results also confirmed that there were no drugs, alcohol or other substances in Plaintiff's Decedent's body that would have impaired his ability to drive a motor vehicle at the time of the accident.

**ANSWER:**     Defendant Officers deny plaintiff's chronology of events.  Defendants McMahon, Sanders, Musial, Deneen and Gutierrez admit that toxicology tests were conducted by the Illinois State Police Lab, and upon information and belief admit the results indicated that there were no illicit drugs or alcohol detected in Plaintiff's Decedent's body, but are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 104.  Defendants Golubiak, Butkus, Farrell, Carr, Behling, Clifford, Moravec, Norman, Rowling, Terrazas, Block, Carlos, Davis, Ficht, Huddleston, Hurnes, Kilroy, Knight, Mackey and Roberts are without knowledge or information sufficient to form a belief as to the allegations in paragraph 104.

105.     These results were made available to the members of the Chicago Police Department just after noon on April 27, 2008.

**ANSWER:**     Upon information and belief, Defendants McMahon, Sanders, Musial, Deneen and Gutierrez deny the allegations in paragraph 105.  Defendants Golubiak, Butkus, Farrell, Carr, Behling, Clifford, Moravec, Norman, Rowling, Terrazas, Block, Carlos, Davis, Ficht, Huddleston, Hurnes, Kilroy, Knight, Mackey and Roberts are without knowledge or information sufficient to form a belief as to the allegations in paragraph 105.

106.     Despite the presence of two separate tests that showed that were no drugs, alcohol or other substances in Plaintiff's Decedent's body that would have impaired his ability to drive a motor vehicle at the time of the accident, Plaintiff's decedent was kept in custody for an extended period of time.

**ANSWER:**     Defendant Officers deny the allegations in paragraph 106.

107.     During these unnecessary hours in police custody, the condition of the Plaintiff's Decedent continued to deteriorate without receiving medical attention.

**ANSWER:**     Defendant Officers deny the allegations in paragraph 107.

-37-

108.    Plaintiff's Decedent remained in the custody of the Chicago Police Department for over forty-eight (48) hours and was not taken to court at any time during his custody for a probable cause determination.

**ANSWER:**    Defendants Golubiak, Butkus, Carr, Behling, Clifford, Moravec, Norman, Rowling, Terrazas, Block, Carlos, Davis, Ficht, Huddleston, Hurnes, Kilroy, Knight, Mackey and Roberts are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 108.  Upon information and belief, Defendants McMahon, Sanders, Musial, Deneen, Gutierrez and Farrell admit Plaintiff's Decedent was not taken to court, but deny the remaining allegations in paragraph 108.

109.    Plaintiff's Decedent had a constitutional right to prompt judicial determination of probable cause.

**ANSWER:**    Defendant Officers admit that individuals arrested without a warrant, including Plaintiff's Decedent, have a right to a prompt judicial determination of probable cause in accordance with Fourth Amendment standards, but deny that plaintiff has accurately alleged that right under the facts and circumstances in this case.

110.    As described above, Defendants Detective Michael Deneen, Star No. 19012, Lt. Maureen McMahon, Star No. 19812, Captain John B. Farrell, Star No. 0006, Sgt. Tracey Sanders, Star No. 1271, Officer Rachel Golubiak, Star No. 5453, Officer Joann Butkus, Star No. 7698, Detective Elliott Musial, Star No. 19416, Detective Galo Guiterrez, Star No. 10018, Sgt. Ronald Behling, Star No. 1886, and Lt. Arthur Block, Star No. 600 held Plaintiff's Decedent without affording him a probable cause hearing in a manner which violated the Fourth Amendment.

**ANSWER:**    Defendants Deneen, McMahon, Farrell, Sanders, Golubiak, Butkus, Musial, Gutierrez, Behling and Block deny the allegations in paragraph 110.  Defendants Carr, Clifford, Moravec, Norman, Rowling, Terrazas, Carlos, Davis, Ficht, Huddleston, Hurnes, Kilroy, Knight, Mackey and Roberts are without knowledge or information sufficient to form a belief as to the allegations in paragraph 110.

111.    The misconduct described was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff's Decedent.

**ANSWER:**    Defendant Officers deny the allegations in paragraph 111.

112.    This misconduct caused or contributed to the death of the Plaintiff's Decedent as it caused him to spend additional hours in custody while being denied medical care.

**ANSWER:**    Defendant Officers deny the allegations in paragraph 112.

113.    The misconduct described in this and previous Counts was engaged in by Defendant Officers referred to in Paragraph 82 of this Third Amended Complaint with deliberate indifference to clearly established constitutional rights of Plaintiff's Decedent.

**ANSWER:**    Defendant Officers deny the allegations in paragraph 113.

WHEREFORE, Defendant Officers demand judgment in their favor and against the

plaintiff, costs of suit and attorneys' fees, and such other relief as the court deems appropriate.

### COUNT XI
### UNLAWFUL DETENTION CLAIM AGAINST THE CITY OF CHICAGO PURSUANT TO 42 U.S.C. §1983

114.    Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 through 113, *supra*, as if fully set out herein, and expressly makes them part of Count XI.

**ANSWER:**    Defendant Officers restate and incorporate their answers to the allegations

contained in paragraphs 1 through 113 as their answer to paragraph 114, as though fully set forth

herein.

115.    Plaintiff's Decedent remained in the custody of the Chicago Police Department for over forty-eight (48) hours and was not taken to court at any time during his custody for a probable cause determination.

**ANSWER:**    Defendants Golubiak, Butkus, Carr, Behling, Clifford, Moravec, Norman,

Rowling, Terrazas, Block, Carlos, Davis, Ficht, Huddleston, Hurnes, Kilroy, Knight, Mackey and

Roberts are without knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 115. Upon information and belief, Defendants McMahon, Sanders,

-39-

Musial, Deneen, Gutierrez and Farrell admit Plaintiff's Decedent was not taken to court, but deny the remaining allegations in paragraph 115.

116.    Plaintiff's Decedent had a constitutional right to prompt judicial determination of probable cause.

**ANSWER:**    Defendant Officers admit that individuals arrested without a warrant, including Plaintiff's Decedent, have a right to a prompt judicial determination of probable cause in accordance with Fourth Amendment standards, but deny that plaintiff has accurately alleged that right under the facts and circumstances in this case.

117.    Defendant City of Chicago's failure to release or present Plaintiff's Decedent to a neutral magistrate in a timely fashion was intentional and in accordance with a longstanding official and unconstitutional policy or custom of the Chicago Police Department.

**ANSWER:**    Defendant Officers deny the allegations in paragraph 117.

118.    Under this policy, the City of Chicago encourages Chicago police officers to detain suspects for up to and over 48 hours for investigative purposes.

**ANSWER:**    Defendant Officers deny the allegations in paragraph 118.

119.    Defendants' official and unconstitutional policy or custom is to detain suspects and arrestees for investigatory purposes rather than process the detainee or arrestee for court.

**ANSWER:**    Defendant Officers deny the allegations in paragraph 119.

120.    Post-detention delays for investigatory purposes are per se unreasonable and violate the Fourth Amendment and the failure to process Plaintiff's Decedent for court within a reasonable time was caused by this policy.

**ANSWER:**    Defendant Officers deny the allegations in paragraph 120.

121.    The City of Chicago caused this deprivation of rights of Plaintiff's Decedent and is liable for damages, *inter alia*, because:

      a.    The City of Chicago maintains an unjustified and unconstitutional official policy or custom of preventing arrestees from obtaining a probable cause hearing until the felony review process is complete and while the Chicago Police Department gathers additional evidence;

b.      The City of Chicago fails to adequately train its officers on the constitutional requirements for affording prompt probably cause hearings, and fails to supervise and control its officers' activities in this area, and is thereby the force behind the very type of misconduct at issue here, and its failure to do so manifests deliberate indifference;

c.      As a matter of official policy, custom and practice, the Chicago Police Department facilitates the very type of unconstitutional misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff's Decedent;

d.      The City of Chicago has failed to act to remedy the patterns of misconduct described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here;

e.      Detainees are taken to police stations for questioning and are kept in rooms that do not have toilet facilities or running water and are typically furnished only with a metal bench bolted to the wall;

f.      Suspects remain in these rooms while the officers who seized them continue their investigation;

g.      The official unconstitutional policy, practice and custom of the City described in the preceding paragraphs is widespread, permanent and well-settled;

h.      The City's practice has been to delay presentment in order to enable its officers to investigate and thereby to create a probable cause to justify the arrest; and

i.      The City's unconstitutional official policy, custom and practice caused the unreasonable and unlawful detention of Plaintiff's Decedent.

**ANSWER:**    Defendant Officers deny the allegations in paragraph 103, including sub-paragraphs 121(a) through 121(i).

WHEREFORE, Defendant Officers demand judgment in their favor and against the plaintiff, costs of suit, and such other relief as the court deems appropriate.

## COUNT XII - STATE LAW INDEMNIFICATION CLAIM
## AGAINST DEFENDANT CITY OF CHICAGO

122.    Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 through 121, *supra*, as if fully set out herein, and expressly makes them part of Count XII.

**ANSWER:**    Defendant Officers restate and incorporate their answers to the allegations contained in paragraphs 1 through 121 as their answer to paragraph 122, as though fully set forth herein.

123.    In Illinois public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities. 735 ILCS 10/9-102.

**ANSWER:**    Defendant Officers are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 123.

124.    Defendant Officers as listed in Paragraph 5 were employees of the City of Chicago and acted within the scope of their employment in committing the conduct described herein.

**ANSWER:**    Defendant Officers admit that at all times relevant hereto they were employees of the City of Chicago and acting within the scope of their employment, but deny the remaining allegations in paragraph 124.

WHEREFORE, Defendant Officers demand judgment in their favor and against the plaintiff, costs of suit and attorneys' fees, and such other relief as the court deems appropriate.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Defendant Officers are government officials, namely police officers, who perform discretionary functions.  At all times material to the events alleged in plaintiff's complaint, a reasonable police officer objectively viewing the facts and circumstances that confronted Defendant Officers, could have believed their actions to be lawful, in light of clearly established law and the information that Defendant Officers possessed.  Defendant Officers are therefore entitled to qualified immunity as to plaintiff's federal claims.

### Second Affirmative Defense

As to the state law claims, under the Illinois Governmental and Governmental Employees Tort Immunity Act ("the Tort Immunity Act"), Defendant Officers are not liable for any of the claims alleged because their decisions regarding plaintiff's decedent's detention were decisions that involved the determination of policy and the exercise of discretion for which they are immune from liability.  745 ILCS 10/2-201.

-42-

### Third Affirmative Defense

As to the state law claims, under the Tort Immunity Act, public employees are not liable for their acts or omissions in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct. 745 ILCS 10/2-202. Defendant Officers are not liable because they were acting in the execution and enforcement of the law, and because their alleged acts or omissions did not constitute willful or wanton conduct.

### Fourth Affirmative Defense

As to the state law claims, under the Tort Immunity Act, Defendant Officers are not liable for any of the claims alleged because a public employee, as such and acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person. 745 ILCS 10/2-204.

### Fifth Affirmative Defense

As to the state law claims, under the Tort Immunity Act, Defendant Officers are not liable for the claims alleged because they were acting within the scope of their employment and providing police services. A public employee acting within the scope of his employment cannot be held liable for failure to provide adequate police services. 745 ILCS 10/4-102.

### Sixth Affirmative Defense

As to the state law claims, under the Tort Immunity Act, Defendant Officers are not liable for any of the claims alleged because a public employee is not liable for failing to provide a jail, detention or correctional facility, or if such facility is provided, for failure to provide sufficient equipment, personnel, supervision or facilities. Furthermore, the Act does not require the periodic inspection of prisoners. 745 ILCS 10/4-103.

### Seventh Affirmative Defense

As to the state law claims, under the Tort Immunity Act, Defendant Officers are not liable for any of the claims alleged because a public employee is not liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his

custody, unless the employee, acting within the scope of his employment, knows from his observation of conditions that the prisoner is in need of immediate medical care and through willful and wanton conduct, fails to take reasonable action to summon medical care. Furthermore, the Act does not require the periodic inspection of prisoners. 745 ILCS 10/4-105.

### Eighth Affirmative Defense

As to the state law claims, under the Tort Immunity Act, Defendant Officers are not liable for any of the claims alleged because a public employee acting within the scope of his employment is not liable for injury caused by the failure to make a physical or mental examination, or to make an adequate physical or mental examination of any person for the purpose of determining whether such person has a disease or physical or mental condition that would constitute a hazard to the health or safety of himself or others. 745 ILCS 10/6-105.

### Ninth Affirmative Defense

As to the state law claims, under the Tort Immunity Act, Defendant Officers are not liable for any of the claims alleged because a public employee acting within the scope of his employment is not liable for injury resulting from diagnosing or failing to diagnose that a person is afflicted with mental or physical illness or addiction. 745 ILCS 10/6-106(a).

### Tenth Affirmative Defense

As to the state law claims, where Defendant Officers may be liable in damages, the total amount of damages to which plaintiff would otherwise be entitled must be reduced by application of principles of comparative fault in proportion to the amount of willful and wanton, reckless and/or intentional conduct of the plaintiff's decedent which was the proximate cause of his injuries, including but not limited to, refusing medical attention, refusing to provide an accurate medical history and other information with regard to his physical and/or mental condition, and disregarding and not complying with traffic safety laws that resulted in an accident in which the semi-trailer truck he was operating collied into a public transportation station and caused two fatalities and injured several others.

-44-

## Eleventh Affirmative Defense

To the extent plaintiff and/or plaintiff's decedent failed to mitigate any of the claimed injuries or damages, those damages must be reduced by application of the principle that a plaintiff has a duty to mitigate his damages.

## Twelfth Affirmative Defense

Defendant Officers are not liable under the Illinois Mental Health and Developmental Disabilities Code, 405 ILCS 5/6-103 because any of their acts or omissions in preparing petitions or other documents under the Code, or otherwise enforcing the Code, were done in good faith and not the result of willful and wanton misconduct.

## FED.R.CIV.P. 12(b)(6) DEFENSES

1.      An award of punitive damages would deprive Defendant Officers of due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution where the award of punitive damages is unreasonable and disproportionate to the amount of harm to the plaintiff and/or plaintiff's decedent and to the actual damages recovered.

2.      Plaintiff's supplemental state law claims for willful and wanton conduct against the Defendant Officers and the City in Counts VIII and IX, respectively, of the complaint should be dismissed for failure to state a claim because there is no independent cause of action or tort of willful and wanton conduct under Illinois law.  Sparks v. Starks, 367 Ill.App.3d 834, 856 N.E.2d 575 (1st Dist. 2006).

3.      Plaintiff's demands for punitive damages in her claims under the Illinois Wrongful Death Act (Count IV and V) and the Illinois Survival Act (Counts VI and VII) should be dismissed for failure to state a claim because punitive damages are not recoverable under either the Illinois Wrongful Death or Survival Acts.  Ballweg v. City of Springfield, 114 Ill.2d 107, 116-117, 499 N.E.2d 1373, 1377 (1986); Winter v. Schneider Tank Lines, Inc., 107

Ill.App.3d 767, 438 N.E.2d 462 (1ˢᵗ Dist. 1982); In re Air Crash Disaster Near Chicago, Ill., 644 F.2d 594 (7ᵗʰ Cir.), *cert. denied*, 454 U.S. 878 (1981).

    4.      Plaintiff fails to state a claim for attorney fees for her state law claims.  See Pennsylvania Truck Lines, Inc. v. Solar Equity Corp., 882 F.2d 221, 227 (7th Cir. 1989); Kerns v. Engelke, 76 Ill. 2d 154, 166, 390 N.E.2d 859, 865 (1979); Miller v. Pollution Control Board, 267 Ill. App. 3d 160, 171, 642 N.E.2d 475, 485 (4th Dist. 1994).

## **JURY DEMAND**

    Defendants Michael Deneen, Maureen McMahon, John B. Farrell, Arthur Carr, Jr., Tracey Sanders, Rachel Golubiak,  Joann Butkus, Elliott Musial, Galo Gutierrez, Ronald Behling, John P. Clifford, Richard Moravec, David Norman, Steven R. Rowling, Jesse Terrazas, Arthur Block, Edgar Carlos, Torrance T. Davis, Leonard Ficht, Lloyd Huddleston, Philrick Hurnes, William Kilroy, Fulton Knight, Sylvester Mackey and Levi Roberts request a trial by jury.

                    Respectfully submitted,


            By:    s/ Joseph M. Polick
                  JOSEPH M. POLICK
                  Special Litigation Counsel

30 N. LaSalle St. - Suite 1720
Chicago, IL 60602
(312)  744-8335