**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ANN DARLENE WELLS, as Representative of the Estate of Donald L. Wells, Deceased, | ) ) ) | 09 CV 1198 |
| Plaintiff | ) ) | Judge Matthew F. Kennelly |
| v. | ) ) | Magistrate Judge Martin C. Ashman |
| CITY OF CHICAGO, et al., | ) ) | |
| Defendants. | ) ) | |

## PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND RELATED COSTS

Pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1920, Fed. R. Civ. P. 54(d), and Northern District of Illinois Local Rule 54.3, Plaintiff, Ann Darlene Wells, as Representative of the Estate of Donald L. Wells, Deceased, ("Plaintiff") through her undersigned counsel, respectfully moves this Honorable Court for an order granting Plaintiff her attorneys' fees and related costs,[1] as the prevailing party in her 42 U.S.C. § 1983 suit against Defendants City of Chicago, Michael Deneen, Galo Gutierrez, Maureen McMahon, and Elliott Musial (jointly, "Defendants"):

## INTRODUCTION

This Court should grant Plaintiff's Motion for Attorneys' Fees and Related Costs because pursuant to 42 U.S.C. § 1988, Plaintiff is a prevailing party, seeking reasonable attorneys' fees and costs, based on a reasonable hourly rate charged by attorneys handling similar cases. As this Court is aware, this was a complex civil rights action that has amassed over 350 docket entries and has taken over 3.5 years to reach a conclusion. The Defendants have zealously defended every aspect of this case, utilizing an army of skilled attorneys and support staff, challenging Plaintiff at every turn, throwing up countless roadblocks, and requiring Plaintiff and her lawyers to expend significant time and resources into prosecuting this case without Defendants ever making a single settlement offer despite Plaintiff's multiple attempts at a settlement. After over 90 depositions were taken, multiple experts retained, numerous discovery disputes arose, voluminous cross-motions for summary judgment motions were filed, more than 40 witnesses testified over a nine (9) day jury trial, and the jury deliberated for over three full days, a verdict was reached in favor of the Plaintiff in the sum of $1,150,500.00, consisting of compensatory

---

[1] Plaintiff's Motion for Attorneys' Fees and Related Costs includes only those fees and costs incurred through May 8, 2012. Plaintiff reserves the right to supplement the instant Motion for additional attorneys' fees and related costs incurred preparing this Motion not already requested herein, as well as those Plaintiff incurs related to future pleadings and proceedings involving this case.

damages, punitive damages, and a finding that the City of Chicago had an unlawful detention policy; a finding with significant public policy import. As Plaintiff is undoubtedly a "prevailing party", she seeks to recover her attorneys' fees and related costs totaling $4,382,903.66.

Based on United States Supreme Court and Seventh Circuit Court of Appeals precedent, Plaintiff's requested fees are calculated using the approved lodestar method, consisting of taking a reasonable hourly rate and multiplying it by the hours reasonably expended on the litigation. The resulting sum is presumed reasonable, but may be adjusted by applying a multi-factor test.

In this case, the reasonable hourly rates have been determined by reference to the Laffey Matrix created by the United States Attorney for the District of Colombia.[2] This measure of what constitutes a reasonable rate has repeatedly been used in this jurisdiction, and indeed, the City of Chicago has advocated for the Laffey Matrix to be applied in other Civil Rights cases. Moreover, the Laffey Matrix provides for rates even lower than rates that have been approved in civil rights and other civil litigation by this Court and other Courts in this Jurisdiction.

Based on the amount of work this case required, in no small part due to Defendants' aggressive defense and refusal to offer *any* settlement whatsoever, Plaintiffs' lawyers and paralegals spent significant necessary hours on this litigation. Taking the hours expended by each attorney and multiplying them by that attorney's reasonable rate as stated above results in attorneys' fees totaling $3,901,286.75 (Howard & Howard-$2,803,557.50; Statman-$494,973.25; Robertson- $620,756.00)[3]. This total is presumed reasonable, is supported by the attached documentation, and is further mandated when considered in the context of the multi-

---

[2] As discussed more fully below, the rates are adjusted based on locality. For Chicago, Illinois, the Laffey Matrix is adjusted up by .88% and for Detroit, Michigan, the Laffey Matrix is adjusted down by .13%.

[3] Reyes & Bonoma is not seeking attorneys' fees beyond those being sought by Mr. Robertson.

factor *Hensley v. Eckerhart* test established by the Supreme Court. In addition, based on the attached supporting documentation, Plaintiff requests related costs (Howard & Howard-$458,413.13; Statman-$17,987.89; Reyes & Bonoma-$3,795.89; Robertson-$1,420.00) totaling $481,616.91.

Thus, in sum, pursuant to 42 U.S.C. § 1988, as the prevailing party, Plaintiff seeks costs and fees in the amount of $4,382,906.66.

## BACKGROUND

Following three and a half years of contentious litigation and a nine-day jury trial commencing on March 26, 2012, the jury found that Defendants City of Chicago, Michael Deneen, Galo Gutierrez, Maureen McMahon, and Elliott Musial violated Plaintiff's decedent Donald L. Wells's constitutional rights by causing Mr. Wells to be detained unreasonably before taking him before a judge for a hearing to determine whether probable cause existed for Defendants' arrest of Mr. Wells. The jury also found that Defendant City of Chicago violated Mr. Wells's constitutional rights by unreasonably detaining him as a result of a policy or practice of unreasonable detention. The jury awarded Plaintiff $1,000,000.00 in compensatory damages against Defendants City of Chicago, Gutierrez, McMahon, Musial, and Deneen and $150,500.00 in punitive damages; specifically, $50,000.00 against Defendant Gutierrez; $50,000.00 against Defendant McMahon; $50,000.00 against Defendant Musial; and $500.00 against Defendant Michael Deneen. Plaintiff's success at trial was the result of her counsels' diligence, skill, and vigorous efforts on her behalf.

This case was neither easy nor risk free. Plaintiff's decedent had been involved in a grave vehicle accident resulting in two fatalities and more than twenty people being injured. Shortly after the accident, Plaintiff's decedent was taken into Defendants' custody and died

3

approximately six weeks later. The fact that the Defendants were unwilling to make *any* settlement offer throughout this entire litigation and trial demonstrates the uphill nature of the battle that was this case.

Undeterred by the long odds, Plaintiff's counsel (which involved at least four firms at various times in the litigation) proceeded to litigate this case as aggressively as a case can be litigated, investing considerable time and resources necessary to vindicate Mr. Wells's honor and constitutional rights. Through the diligence and skill of her legal counsel, Plaintiff was able to achieve her goals to enforce her beloved husband's constitutional rights and to prevent Defendants from violating the constitutional rights of human beings in Defendants' custody in the future. In light of the success achieved, Plaintiff is the prevailing party on her claims against Defendants. Accordingly, Plaintiff now seeks attorneys' fees and related costs pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1920, Fed. R. Civ. P. 54(d), and Northern District of Illinois Local Rule 54.3.[4]

## ARGUMENT

**I.      Plaintiff is Entitled to Her Reasonable Attorneys' Fees as the Prevailing Party**

### A.      42 U.S.C. § 1988

The Civil Rights Attorney's Fees Awards Act of 1976, codified at 42 U.S.C. § 1988, as well as clear Seventh Circuit precedent, provides that when a party prevails in a civil rights action, as Plaintiff did here, the prevailing party is entitled to recover her reasonable attorneys' fees and costs. Congress enacted § 1988 to combat the fact "that the private market for legal services failed to provide many victims of civil rights violations with effective access to the

---

[4] Plaintiff attempted to negotiate agreeable hourly rates with Defendants' counsel to no avail. Despite Plaintiff's good faith efforts to propose a compromise as to reasonable hourly rates, Defense counsel rejected Plaintiff's proposal. In typical fashion, Defendants failed to make any counteroffer whatsoever.

judicial process." *City of Riverside v. Rivera*, 477 U.S. 561, 576-578 (1986) (fee awards are designed "'to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel'") *quoting Kerr v. Quinn*, 692 F.2d 875, 877 (2d Cir. 1982). Section 1988's fee recovery provision is intended to encourage "'private attorneys general' [to] take it upon *themselves* to invoke and thereby invigorate federal constitutional...rights...and...to insure that those who violate the Nation's fundamental laws do not proceed with impunity.'" *King v. Illinois State Bd. of Elections*, 410 F.3d 404, 412 (7th Cir. 2005) *quoting Charles v. Daley*, 846 F.2d 1057, 1063 (7th Cir. 1988) (emphasis in original). It is important to highlight the fact that a plaintiff who brings a civil rights claim "does so not only for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority." *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968).

### B.    Plaintiff is the "Prevailing Party"

There is no question that Plaintiff is the "prevailing party" within the meaning of 42 U.S.C. § 1988(b). In fact, the Defendants concede that Plaintiff "prevailed" in her suit. *See* Doc. No. 360 ¶ 1. Plaintiff brought § 1983 claims against Defendants to defend important constitutional rights. The jury's verdict demonstrates that Plaintiff succeeded in proving that Defendants violated her husband's constitutional rights while he was in their custody. The jury's verdict in Plaintiff's favor combined with the jury's cumulative award of $1,150,500.00 in damages to Plaintiff and against Defendants confirms that Plaintiff is a prevailing party under § 1988. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Farrar v. Hobby*, 506 U.S. 103, 111-112 (1992) (a prevailing party is one that obtains actual relief on the merits of her claim that "materially alters the legal relationship between the parties by modifying the defendant's

5

behavior in a way that directly benefits the plaintiff") *citing* and *quoting Hensley*, 461 U.S. at 444 ("the public as a whole has an interest in the vindication of the rights conferred by the statutes enumerated in § 1988, over and above the value of a civil rights remedy to a particular plaintiff"); *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Res.*, 532 U.S. 598, 605 (2001). The jury made a statement with its verdict in this case and let Defendants know that their policies and practices are unconstitutional. Accordingly, there can be no doubt if Defendant City of Chicago has not already reviewed its detention policy, it soon will. Plaintiff's victory in this case will affect the lives of thousands of people for the better for years to come. As the prevailing party, Plaintiff is entitled to recover attorneys' fees under § 1988. *Riverside*, 477 U.S. at 578.

### C.    Plaintiff Requests Rates Consistent with The Laffey Matrix

As it is clear that Plaintiff is the prevailing party, the next determination is the amount of fees and costs to be awarded in Plaintiff's favor. First, reasonable rates need to be established. Plaintiff seeks rates for her counsel consistent with the Laffey Matrix. The Laffey Matrix[5] was created by the United States Attorney's Office for the District of Columbia to provide an official guideline for "reasonable" rates in fee-shifting cases. *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 347 (6th Cir. 2000) (the Laffey Matrix is "an official statement of market-supported reasonable attorney fee rates"). According to the U.S. Attorney: "The matrix is intended to be used in cases in which a 'fee-shifting' statute permits the prevailing party to recover 'reasonable' attorney's fees." Courts in the Seventh Circuit have favorably considered the Laffey Matrix when assessing the reasonableness of fees. *See Berg v. Culhane*[6], 2011 WL 589631, *3 (N.D.Ill. Feb. 10, 2011) (J. Kendall); *Hadnott v. City of Chicago*, 2010 WL 1499473, *6 (N.D.Ill. April

---

[5] A copy of the Laffey Matrix is attached hereto as Exhibit 1.

[6] Plaintiff will provide a courtesy copy of all non-published cases cited herein to the Court.

12, 2010) (J. Schenkier) *citing In re Trans Union Corp Privacy Litig.*, 2009 WL 4799954, *19 (N.D.Ill. Dec. 9, 2009) (J. Gettleman) (adjusting the Laffey Matrix upwards); *Catalan v. RBC Mortgage Co.*, 2009 WL 2986122, *6 (N.D.Ill. Sept. 16, 2009) (J. Dow) (awarding rates close to or within the range of rates provided by the Laffey Matrix); *Decker v. Transworld Sys., Inc.*, 2009 WL 2916819, *5 (N.D.Ill. Sept. 1, 2009) (J. Mahoney); *Lopez v. City of Chicago*, 2007 WL 4162805, *8 (N.D.Ill. Nov. 20, 2007) (J. Bucklo); *Delgado v. Village of Rosemont*, 2006 WL 3147695, *5 (N.D.Ill. Oct. 31, 2006) (J. Dow); *Sadler v. Barnhart*, 2004 WL 419908, *2-3 (N.D.Ill. Feb. 25, 2004) (J. Pallmeyer); *Arch v. Glendale Nissan*, 2005 WL 1421140, *1 (N.D.Ill. June 7, 2005) (J. Pallmeyer); *see also Samuel v. Barnhart*, 316 F. Supp. 2d 768, 781-81 (E.D.Wis. 2004); *Covington-McIntosh v. Mount Glenwood Memory Gardens S., Inc.*, 2004 WL 2700482, *4 (N.D.Ill. Feb. 12, 2004) (M.J. Keys); *and also Embry v. Barnhart*, 2003 WL 22478769, *2 (N.D.Ill. Oct. 31, 2003) (M.J. Brown).

Of import to this Court's consideration of the Laffey Matrix as the instructive measure is the fact the Defendant City of Chicago has itself relied on the Laffey Matrix in arguing for the recovery of its own attorneys' fees. In *Hadnott*, *supra*, for example, the City's attorneys sought legal fees and based their request on the Laffey Matrix; and the court relied on the Laffey Matrix in its award of fees to the City attorneys. 2010 WL 1499473 at *6 ("We conclude that the Laffey Matrix is 'satisfactory evidence' of the prevailing rate, so that the burden shifts to opposing counsel to show why a 'lower rate is essential.'"). The Laffey Matrix provides the following rate guidelines:

| Experience | 2011-2012 |
|---|---|
| 20+ years | $495/hour |
| 11-19 years | $435/hour |
| 8-10 years | $350/hour |
| 4-7 years | $285/hour |
| 1-3 years | $240/hour |
| Paralegals | $140/hour |

Courts outside of Washington, D.C., typically adjust the Laffey Matrix for what is called the "locality pay differential." *Schultz v. City of Burbank*, 2007 WL 1099479, *2 (N.D.Ill. Apr. 10, 2007 (M.J. Soat Brown) (adding 4% to the Laffey Matrix); *Berg*, 2011 WL 589631 at *3 (citing adjustments upward with approval). The locality pay differential is determined by reviewing the difference between the locality pay rates provided by the United States' Office of Personnel Management ("OPM") for each of the relevant cities.[7] According to the OPM, the current locality pay differential requires an increase of 0.88% for Illinois and a decrease of 0.13% for Michigan from the Washington, D.C. rates. These locality pay differentials provide the following Laffey Matrix rates for Illinois and Michigan:

**Illinois Differential Applied
("Illinois Laffey Matrix")**

| Experience | 2011-2012 |
|------------|-----------|
| 20+ years | $499/hour |
| 11-19 years | $439/hour |
| 8-10 years | $353/hour |
| 4-7 years | $288/hour |
| 1-3 years | $242/hour |
| Paralegals | $141/hour |

**Michigan Differential Applied
("Michigan Laffey Matrix")**

| Experience | 2011-2012 |
|------------|-----------|
| 20+ years | $494/hour |
| 11-19 years | $434/hour |
| 8-10 years | $350/hour |
| 4-7 years | $285/hour |
| 1-3 years | $240/hour |
| Paralegals | $140/hour |

For various reasons, Plaintiff received legal counsel from four different law firms during the three and a half years this case was litigated before reaching a jury's verdict on April 10, 2012. Initially, in October 2008, Plaintiff hired Statman, Harris & Eyrich, LLC ("Statman"). At the time Plaintiff hired Statman, attorneys Scott Frost and Donna Rizzuto were employed with Statman. After Frost and Rizzuto ceased employ with Statman and joined Howard & Howard, Plaintiff terminated her relationship with Statman and in January 2010 hired Howard & Howard Attorneys PLLC ("Howard & Howard"). In January 2010, Reyes & Bonoma, Ltd. ("Reyes &

---

[7] Attached hereto as Group Exhibit 2 are the OPM's pay salary tables for Michigan, Illinois, and Washington, D.C.

Bonoma") joined Howard & Howard in representing Plaintiff. On November 22, 2010, Plaintiff ceased being represented by Reyes & Bonoma but continued being represented by Howard & Howard. Attorney Robert Robertson had been associated with Reyes & Bonoma in an of counsel position while Reyes & Bonoma represented Plaintiff. Mr. Robertson filed an appearance on behalf of Plaintiff. Mr. Robertson and Reyes & Bonoma ended their of counsel relationship. After the relationship ended, Mr. Robertson continued to work on Plaintiff's case. Following Reyes & Bonoma's termination as Plaintiff's counsel, Mr. Robertson continued to provide counsel to Plaintiff until February 2011, at which point Mr. Robertson ceased representing Plaintiff. Plaintiff has attached a summary for Howard & Howard, Statman, and Mr. Robertson. The summaries provide the time records for each firm by each attorney and paralegal who worked on this case and specifies: the number of hours, descriptions, and total fees for each of the attorneys and paralegals. *See* Group Exhibit 3. The fees pertain to work performed by Plaintiff's legal counsel through the course of this intensive litigation. These records already exclude substantial time to ensure that compensation is not sought for work that might be deemed as properly excluded from a court-ordered fee award. The hours that remain are those that were reasonably expended to accomplish the tasks necessary for this litigation.

Plaintiff requests the following rates consistent with the Illinois Laffey Matrix and the Michigan Laffey Matrix for her Howard & Howard attorneys and paralegals:

| Attorney | Experience | Hourly Rate |
|---|---|---|
| Kell | 41 | $494.00 |
| Peyser | 28 | $494.00 |
| Van Dyke | 22 | $499.00 |
| Shinar | 22 | $494.00 |
| Frost | 21 | $499.00 |
| Rizzuto | 17 | $439.00 |
| Fawaz | 6 | $288.00 |
| Carpenter | 5 | $288.00 |
| Stinton | 5 | $288.00 |
| Hahn | 3 | $242.00 |
| Barber | 3 | $242.00 |
| McGrath | 1 | $242.00 |

| Paralegal | Hourly Rate |
|---|---|
| Losoya | $141.00 |
| Reaser | $140.00 |
| Merritt | $140.00 |
| Sintz | $140.00 |
| Reno | $141.00 |
| Robinson | $140.00 |

Consistent with these rates, Plaintiff presently seeks a total of $2,803,557.50 for the time expended by her counsel from Howard & Howard.

Plaintiff requests the rates consistent with the Laffey Matrix for her other attorneys and paralegals:

### Statman, Harris & Eyrich, LLC

Under the Laffey Matrix as adjusted for locality, the rates for Statman, Harris & Eyrich, LLC are as follows:

| NAME | LEVEL | YEARS SINCE GRADUATION | HOURLY RATE |
|---|---|---|---|
| Alan J. Statman (AJS) | Managing Member | 29 | $545.00 |
| Colleen M. Hegge (CMH) | Of Counsel | 25 | $465.00 |
| Scott C. Frost (SCF) | Member | 21 | $450.00 |
| William K. Lundrigan (WKL) | Partner | 20 | $395.00 |
| Donna Rizzuto (DR) | Associate | 17 | $350.00 |
| Saba Alam (SA) | Associate | 7 | $295.00 |

| Teresa M. Dickinson (TD) | Associate | 4 | $210.00 |
|---|---|---|---|
| Molly Cross (MC) | Law Clerk | N/A | $75.00 |
| Lorna Schutte (LS) | Paralegal | N/A | $75.00 |
| Hazel Sim (HS) | Legal Assistant | N/A | $95.00 |
| Janice Kim (JK) | Paralegal | N/A | $125.00 |
| Dorothy Smith (DS) | Paralegal | N/A | $70.00 |
| Joyce Asselborn (JA) | Secretary | N/A | $50.00 |

Consistent with these rates, Plaintiff presently seeks a total of $494,973.25 for the time expended by her counsel from Statman.

### Robert Robertson

Under the Laffey Matrix as adjusted for locality, the rate for Robert Robertson is $499/hour. Consistent with these rates, Plaintiff presently seeks a total of $602,756.00 for the time expended by Robert Robertson.

### D. Plaintiff's Request for Reasonable Attorneys' Fees Should be Approved Based on the Supreme Court's *Hensley* Factors

Having established that Plaintiff is the prevailing party and provided this Court with the appropriate reasonable rates that apply, the next step is to determine the total award applying the lodestar method.[8] The lodestar method is determined by multiplying "the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888 (1984); *see also Hensley*, 461 U.S. at 444. The resulting amount is presumed to be reasonable, *Clarke v. Ford Motor Co.*, 2006 WL 752902, *3 (E.D. Wis. March 21, 2006) (J.

---

[8] The lodestar includes time spent in preparing the fee petition and litigating the fee issue, as well. *Commissioner, INS v. Jean*, 496 U.S. 154, 162 (1990) citing *Gagne v. Maher*, 594 F.2d 336, 344 (2nd Cir. 1979) ("denying attorneys' fees for time spent in obtaining them would 'dilute the value of a fees award by forcing attorneys into extensive, uncompensated litigation in order to gain any fees'" under 42 U.S.C. § 1988) *affirmed on other grounds*, 448 U.S. 122 (1980).

Adelman) *citing City of Burlington v. Dague*, 505 U.S. 557, 562, but may be adjusted either up or down for a variety of factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 430.

An examination of the various relevant factors clearly establishes that Plaintiff's fee petition should be granted as it seeks reasonable fees.

### 1.    The Amount Involved and the Results Obtained

The most significant *Hensley* factor to be considered by the Court is the degree of Plaintiff's success in relation to her claims. *Farrar*, 506 U.S. at 114 *quoting Hensley*, 461 U.S. at 436; *Telepro, Inc. v. Renello*, 1994 WL 380607 (N.D.Ill. July 18, 1994) (J. Leinenweber) ("The degree of the plaintiff's success in relation to his claims is the most critical factor in determining the amount of attorney's fees awarded"). It is undeniable that Plaintiff's victory on her § 1983 claims for $1,150,000 against Defendants was considerable. This judgment is significant in a monetary sense as well as a public policy sense. By succeeding on her *Monell* claim against Defendant City of Chicago and being awarded punitive damages against Defendants Deneen, Gutierrez, McMahon, and Musial, Plaintiff's victory contributes to the deterrence of future civil-rights violations throughout the City of Chicago and beyond. *Riverside*, 477 U.S. at 574 ("a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms"); *Edwards v. Rogowski*, 2009 WL 742871, *2 (N.D.Ill. March 18, 2009) (J. Coar) ("The legal issues on which the plaintiffs prevailed were indeed significant;

[plaintiffs] successfully prosecuted both Fourth Amendment claims, thereby vindicating his constitutional rights...by recovering damages, [plaintiffs] contributed to the deterrence of future civil-rights violations."). Thus, a consideration of the most significant *Hensley* factor demonstrates that Plaintiff should be awarded her requested attorneys' fees.

### 2. Time and Labor Required and Opportunity Cost

The *Hensley* factor that considers the preclusion of employment by Plaintiff's counsel due to acceptance of Plaintiff's case also weighs in favor of Plaintiff being awarded her requested attorneys' fees. As is apparent from the summaries attached as Group Exhibit 3, which shows that Plaintiff's counsel devoted an aggregate of 11,177.25 billable hours (Howard & Howard-8,424.70; Statman-1330.55; Robertson-1,422) prosecuting Plaintiff's case, it is clear that Plaintiff's counsel endured a substantial opportunity cost in representing Plaintiff in this case. The billable hours Plaintiff's counsel expended on this case are no doubt a direct result of the fact that Defendants' categorically refused to provide *any* offer to settle this case in response to either of Plaintiff's written settlement demands in April 2009 and July of 2010. The same is true for Plaintiff's oral settlement demand on April 7, 2012 when the jury was still considering its verdict. Had Defendants negotiated with Plaintiff early on in this case, Plaintiff's counsel would not have focused their resources on this case to the exclusion of others. Likewise, Defendants could have avoided any post-trial attorneys' fees had they made a reasonable offer in response to Plaintiff's April 7, 2012 demand. The Defendants' failure to engage in settlement negotiations should be considered by the Court in assessing Plaintiff's Motion for Attorneys' Fees and Costs. *See Heder v. City of Two Rivers*, 255 F. Supp. 2d 947, 956 (E.D.Wis. 2003) (awarding request for lodestar where plaintiff made a reasonable settlement demand: "the City has only itself to blame for the disproportionality between the attorneys' fees incurred and the

amount [plaintiff] recovered...[because plaintiffs should not] be forced to swallow expenses incurred largely as a result of the City's approach to this litigation."); *Gonzalez v. Van's Chevrolet, Inc.*, 498 F. Supp. 1102, 1106 (D.C.Del. 1980) ("Confronted as he was with defendant's adamant position, petitioner was required to try this case to the hilt. This necessitated a two and a half day trial...The objection which defendant makes to the payment of any fee in excess of the lodestar is in this sense self-inflicting because of defendant's refusal to make any [reasonable] offer in settlement of this case.").

There can be no doubt that counsel for both the Plaintiff and the Defendants represented their respective clients with vigor. *O'Sullivan v. City of Chicago*, 484 F. Supp. 2d 829, 849 (N.D.Ill. 2007) (granting plaintiff's counsel's fees because "This was a fiercely litigated case, with the City contesting virtually every move the plaintiffs made. More importantly, the Plaintiffs exposed certain practices of the Police Department..."). As previously mentioned, the docket in this case exceeds 350 entries because there were numerous motions, including hotly contested cross-motions for summary judgment, hearings, and substantive orders. Defendants' counsels' advocacy in this case took the team approach to defend this case. At the time of trial, five attorneys had filed appearances on behalf of Defendants; however, throughout this litigation, additional assistant corporation counsel in Defendants' counsel's expansive office no doubt benefitted defendants by providing legal experience, time, and strategy to their defense. For example, we know that additional assistant corporation counsel provided assistance to the five defense counsel of record by representing Defendants' during status hearings and also helping to prepare witnesses for trial. *See Cooper v. Casey*, 897 F. Supp. 1136, 1139 (N.D.Ill. 1995) ("It is worth noting once again that this dispute was not treated as a one-lawyer lawsuit by defendants either—they took a team approach to the litigation...it is unpersuasive for defendants to cavil at

plaintiffs' division of labor…when defendants' own expenditure of time cannot be evaluated for comparative purposes because they do not account for their own time…") *rev'd on other grounds*, 97 F.3d 914 (7th Cir. 1996).

In light of the intense nature of this litigation and the plentiful bench of attorneys Defendants benefitted from during the course of this litigation, it is only appropriate that Plaintiff not be penalized for hiring her legal team to provide her with experience, depth, fervor, and strategy to vindicate her late husband's constitutional rights. *Gary v. Sheahan*, 2001 WL 1543514, *2 (N.D.Ill. Nov. 30, 2011) (J. Coar) ("the defendant often had several lawyers present on his behalf and the plaintiff class was entitled to same advantage"). Further, the evidence demonstrates that Defendants' strategy to never make *any* offer to settle this case forced Plaintiff to litigate every issue to the bitter end, thereby precluding Plaintiff's counsel from being able to work on other cases. Accordingly, the "preclusion of employment by the attorney due to acceptance of the case" *Hensley* factor also substantially weighs in Plaintiff's favor.

### 3. Experience, Reputation, and Ability of Plaintiff's Counsel

Plaintiff respectfully submits that her counsels' credentials, accomplishments, and performance in this litigation warrant top-tier market rates, even higher than those that Plaintiff seeks in this Motion. *See* Group Exhibit 4.

### 4. Degree of Novelty/Difficulty, Skill Required, and "Undesirability of The Case"

As an individual suing the City of Chicago and more than a dozen of its officers, Plaintiff's counsel faced an uphill battle trying to extract information to support Plaintiff's claims against both the individual Defendants and against the City of Chicago for its unconstitutional policies. Despite the inherent risk associated with this case, and the 350 plus docket entries in this case, Plaintiff's counsel approached head on each and every one of the parties' discovery

disputes, the 90+ depositions, the cross-motions for summary judgment, and the 9-day trial.

Plaintiff's *Monell* claim against the City was an especially challenging feat upon which to succeed. Prevailing on Plaintiff's *Monell* claim against the City of Chicago required Plaintiff to piece together exactly when Mr. Wells was taken into and released from Defendants' custody. Plaintiff's counsel also had to develop a strategy to prove that the City of Chicago unreasonably detained Mr. Wells while he was in Defendants' custody due to a policy and practice of unreasonably detaining arrestees in similar circumstances to that of Mr. Wells. In doing so, Plaintiff's counsel was required to investigate the City's claims that they did not have such a systemic practice; this was in part fostered through the discovery of expert witnesses. Following the close of discovery, Plaintiff's counsel briefed Plaintiff's Motion for Summary Judgment and Plaintiff's Response to Defendants' Motion for Summary Judgment. After all pre-trial matters were exhausted, Plaintiff's counsel then developed and executed a successful trial strategy on Plaintiff's claims, including Plaintiff's *Monell* claim against Defendants, which required Plaintiff to prove that Defendants violated Mr. Wells's constitutional rights and that the Defendant City of Chicago's policy or practice caused such violations. Plaintiff's counsel put forth these resources in an effort to prevail on Plaintiff's behalf all the while knowing that plaintiff victories in unreasonable detention claims are difficult to achieve. The complexity, time, and legal skill Plaintiff's counsel demonstrated on Plaintiff's behalf throughout the entire litigation of this case would no doubt be undesirable for many attorneys in light of the odds stacked against Plaintiff. Therefore, a consideration of this *Hensley* factor also weighs in favor of Plaintiff being awarded her requested attorneys' fees.

### 5. Contingent v. Fixed Fee

Two of the *Hensley* factors, specifically, the customary fee factor and the contingent fee

v. fixed fee factor, concern the terms of attorney retention. Because Plaintiff's counsel agreed to take this case on a contingency fee basis, Plaintiff's counsel faced the real possibility of expending its resources but recovering nothing. The assumption of risk associated with taking a case on contingency has led Courts to approve elevated attorneys' fee awards in favor of plaintiffs. *See Spina v. Forest Preserve Dist. of Cook County*, 2002 WL 1770010, *3-4 (N.D.Ill. July 31, 2002) (J. Conlon) (because counsel "accepted the case on a contingency basis, [she] is entitled to be rewarded for assuming the risk of nonpayment") *citing Blum*, 465 U.S. at 902- (elevating a successful counsel's hourly rate induces attorneys to take § 1983 that might not otherwise be heard). Accordingly, these *Hensley* factors also favor Plaintiff being awarded her requested attorneys' fees.

### 6. Customary Fee and Awards and Similar Cases

In order to facilitate the vindication of civil rights through private actions, "Congress felt it appropriate to shift the true full cost of enforcement to the guilty parties to eliminate any obstacle to enforcement." *Casey v. City of Cabool, Mo.*, 12 F.3d 799, 805 (8th Cir. 1993) *citing* S.Rep.No. 1101, 94th Cong., 2nd Sess. 5 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5913 ("It is intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases...").

The customary fee for purposes of a § 1988 Motion is equivalent to the reasonable hourly rate for an attorney's services. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 554-5 (7th Cir. 1999). An attorney's reasonable hourly rate is determined by the market rate for that attorney's services. Rates comparable to those from the private sector are routinely approved in civil rights litigation. *See e.g. O' Sullivan v. City of Chicago*, 484 F. Supp. 2d 829, 838 (N.D.Ill. 2007) (relying on 2006 *National Law Journal* sample showing, e.g., that fourth year associates at

17

large firms bill up to $325 or $330/hour in 2006); *see* J. Granich Declaration Group Exhibit 4(B). Almost six years ago, this Court approved rates at the following levels for the attorneys who represented a civil rights plaintiff in *Entertainment Software Ass'n v. Blagojevich*, 2006 WL 3694851, *2, 5 (N.D.Ill. Aug. 9, 2006) (J. Kennelly):

| Experience | Rate |
|------------|------|
| 27 years | $585/hour |
| 10 years | $425/hour |
| 6 years | $340/hour |
| 5 years | $310/hour |
| 4 years | $275/hour |

Like the attorneys that represented Plaintiff in the instant case, the attorneys in *Entertainment Software* had impressive credentials. When the Laffey Matrix rates sought by Plaintiff in 2012 are compared to the rates found reasonable six (6) years ago in *Entertainment Software*, it is clear that Plaintiff's request is certainly reasonable. This is further supported by the courts' awards in the following cases, which were also higher than those that Plaintiff seeks in the instant Motion. *See Neuros Co., Ltd. v. KTurbo Inc.*, 2010 WL 547599, * (N.D.Ill. Feb. 9, 2010) (J. Darrah) (awarding $560/hour-12 years; $450/hour-6 years); *Jones v. Ameriquest Mortg. Co.*, 2009 WL 631617, *4 (N.D.Ill. March 10, 2009) (J. Coar) (awarding $465/hour-18 years); *Catalan*, 2009 WL 2986122 at *6 (awarding $400/hour-16 years). Accordingly, Plaintiff respectfully submits that her requested rates are reasonable and should be awarded.

### E.    Plaintiff's Related Cost Request Should be Approved

In their effort to prevail for Plaintiff, Howard & Howard spent $411,387.67 in related non-taxable costs and $47,025.46 in related taxable costs (cumulatively, $458,413.13). Statman spent $17,987.89 in related costs; Reyes & Bonoma spent $3,795.89 in related costs; and Robert Robertson spent $1,420.00 in related costs. The aggregate total of these costs equals

$481,616.91. *See* Group Exhibit 3 and Group Exhibit 5.[9]  These expenses are reasonable and helped produce the successful result achieved for Plaintiff in this case. 28 U.S.C. § 1920 (providing six categories of expenses that may be taxed as costs: fees of the court clerk and marshal; fees of the court reporter; printing fees and witness fees; copying fees; certain docket fees; and fees of court-appointed experts); 42 U.S.C. § 1988; Federal Rule of Civil Procedure 54(d)(1); *see also Henry v. Webermeier*, 738 F.2d 188, (7th Cir. 1984) (noting the court may award the prevailing party both taxable and out-of-pocket expenses) *Lopez*, 2007 WL 4162805 at *9-10 (awarding prevailing party's taxi and travel costs).  Accordingly, Plaintiff respectfully requests that the Court approve and award Plaintiff's costs.

## CONCLUSION

By taking this case on a contingency basis, Plaintiff's counsel faced the very real risk that they may recover $0.00 despite their hard work, time, and effort in seeking justice on behalf of Plaintiff.  Fortunately for Plaintiff and her counsel, Plaintiff's counsel achieved a favorable result for Plaintiff, thereby making Plaintiff the prevailing party in the instant suit.   As such, Plaintiff is entitled to be reimbursed for her counsels' reasonable attorneys' fees and costs to commensurate with the risk and the degree of success fostered in this case.  Further, the Court should consider the fact that attorneys' fees and costs Plaintiff seeks in her Motion are in no small part a result of the Defendant's failure to engage in ***any*** settlement negotiations throughout this entire case.

---

[9] Plaintiff reserves the right to supplement the receipts and invoices attached to Group Exhibit 5.

**WHEREFORE**, based on the arguments set forth in and attached to this Motion, Plaintiff respectfully requests that the Court approve the lodestars sought herein and grant Plaintiff's Motion for Attorneys' Fees and Related Costs.

Respectfully submitted,

/s/ Scott C. Frost
Ann Darlene Wells, as Representative of the Estate of Donald L. Wells, Deceased, By One of Her Attorneys

Scott C. Frost
David C. Van Dyke
Donna Rizzuto
Tiffany L. Carpenter
Howard and Howard Attorneys PLLC
200 South Michigan Ave., Ste. 1100
Chicago, Illinois 60604
(312) 372-4000