**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ANN DARLENE WELLS, as Representative of the Estate of Donald L. Wells, Deceased, | ) ) ) | |
| Plaintiff, | ) | |
| vs. | ) ) | No.  09 C 1198 |
| CITY OF CHICAGO, et al., | ) ) | Judge Kennelly |
| Defendants. | ) | |

**<u>DEFENDANTS' POST-TRIAL MOTION</u>**

Defendants Maureen McMahon, Michael Deneen, Elliott Musial, Galo Gutierrez, and the

City of Chicago, and pursuant to Fed.R.Civ.P. 50(b) and 59, move this Honorable Court for

judgment as a matter of law in their favor on plaintiff's claims or, in the alternative, a new trial

on damages.  In support thereof, the defendants state as follows:

On April 10, 2012, the jury returned a verdict in favor of Plaintiff on the unlawful

detention claim, and on the *Monell* claim that the City has a policy of holding people for less than

48 hours after arrest for an improper purpose.  That verdict was in error.  The only evidence in

the case established that Donald Wells was held for fewer than 48 hours after his arrest, and that

the Defendant Officers had probable cause to arrest him.  Plaintiff adduced no evidence of any

City policy.  In fact, the only evidence in the case proved that the City does not hold people for

less than 48 hours for an improper purpose.  For those reasons, the jury's verdict is contrary to

the law and unsupported by the evidence and the Defendants are entitled to judgment in their

favor.

Moreover, this verdict cannot stand because it is against the manifest weight of the

evidence and the damages are wildly excessive.  The jury awarded $1 million in compensatory

damages for what, at most, was 9 hours in custody.  $ 1851.85 per minute is simply ridiculous.

The award of $150,500 in punitive damages against 4 officers was so monstrously excessive as

to violate the Officers' constitutional rights.  Therefore, pursuant to Fed.R.Civ.P. 59, Defendants

respectfully request a new trial on damages or, in the alternative, that the Court remit the

compensatory and punitive damages awards.

## STANDARD OF REVIEW

Defendants first seek, pursuant to Federal Rule of Civil Procedure 50(b), entry of

judgment as a matter of law in their favor.   The court may direct the entry of judgment as a

matter of law only if there was not a legally sufficient evidentiary basis for the jury's verdict.

*Thomas v. Cook Co. Sheriff's Dep't*, 604 F.3d 293, 301 (7th Cir.), *cert. denied*, —— U.S. ——,

131 S. Ct. 643. (2010).  *See also Alexander v. Mount Sinai Hosp. Med. Ctr.*, 484 F.3d 889, 902

(7th Cir.2007).  The verdict may be overturned if no rational trier of fact could have found for the

Plaintiff.  *Thomas*, 604 F.3d at 301.  In ruling on the motion,  "the question is not whether the

jury believed the right people, but only whether it was presented with a legally sufficient amount

of evidence from which it could reasonably derive its verdict." *Massey v. Blue Cross–Blue Shield

of Illinois*, 226 F.3d 922, 924 (7th Cir.2000).

Should the Court deny Defendants' Rule 50(b) motion, Defendants seek a new trial on

damages, pursuant to Federal Rule of Civil Procedure 59.  The court should grant a new trial on

damages under Rule 59 where "the record shows that the jury's verdict resulted in a miscarriage

of justice or where the verdict, on the record, cries out to be overturned or shocks our

conscience." *Latino v. Kaiser*, 58 F.3d 310, 315 (7th Cir.1995).  The motion should be granted "

'if the verdict is against the manifest weight of the evidence.' " *ABM Marking, Inc. v. Zanasi*

*Fratelli, S.R.L.*, 353 F.3d 541, 545 (7th Cir.2003) (quoting *Lowe v. Consol. Freightways of Del., Inc.*, 177 F.3d 640, 641 (7th Cir.1999)). In ruling on a motion for a new trial, "the district court has the power to get a general sense of the weight of the evidence, assessing the credibility of the witnesses and the comparative strength of the facts put forth at trial." *Mejia v. Cook Cty.*, No. 09–3540, 2011 WL 1518878, at *1 (7th Cir. Apr.22, 2001). If the court concludes, based on its review of the evidence, "that the verdict is against the manifest weight of the evidence, a new trial is appropriate." *Id.*

Finally, Defendants seek a remittitur of the compensatory and punitive damages awards. The Seventh Circuit lists three factors to be considered in determining the appropriateness of a remittitur of damages: "(1) whether the award is 'monstrously excessive'; (2) whether there is no rational connection between the award and the evidence; and (3) whether the award is roughly comparable to awards made in similar cases." *Thompson v. Mem'l Hosp. of Carbondale*, 625 F.3d 394, 408 (7th Cir.2010). As these damages violate all three factors, they should be drastically reduced.

## I.    DEFENDANTS ARE ENTITLED TO JUDGMENT IN THEIR FAVOR ON THE DETENTION CLAIMS.

Plaintiff prevailed on two claims: (1) that the Defendant Officers held Donald Wells for more than 48 hours without a proper justification or, in the alternative, that the Defendant Officers held Donald Wells for less than 48 hours for an improper purpose; and (2) that the City of Chicago has a policy of holding people for less than 48 hours for an improper purpose. That verdict is not supported by the evidence in the case.

It is axiomatic that an individual arrested without a warrant is entitled to a prompt judicial

determination of probable cause within 48 hours of an arrest. *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975). *See also County of Riverside v. McLaughlin,* 500 U.S. 44, 56 (1991). While probable cause determinations within 48 hours are presumptively reasonable, they may still violate the Fourth Amendment if the arrested individual can prove his hearing was delayed unreasonably even though it occurred within 48 hours. In that case, the arrested individual bears the burden of proving an unreasonable delay. *Id.* at 56-57. If the detention prior to the probable cause determination exceeds 48 hours, then the burden shifts to the government to justify the delay by demonstrating the existence of a bona fide emergency or other extraordinary circumstance. *Id.* at 57; *see also Portis v. City of Chicago,* 613 F.3d 702, 703-04 (7th Cir. 2010).

Thus, if Defendant Officers had probable cause to arrest Plaintiff, holding him for up to 48 hours was presumptively reasonable. Plaintiff would then bear the burden of proving that Donald Wells was unreasonably delayed before his release. As the evidence provided by Plaintiff conclusively proved, Donald Wells was not detained for more than 48 hours. Plaintiff's sole attempt to prove that Donald Wells was unreasonably delayed, failed. Thus, the Defendant Officers were entitled to judgment as a matter of law. In addition, Plaintiff's *Monell* claim would also fail because she would not have an underlying constitutional violation. Moreover, Plaintiff adduced no evidence that the City has a policy of holding people for less than 48 hours for an improper purpose. For these reasons, the Court should grant judgment as a matter of law to the Defendants.

### A. The Defendant Officers Had Probable Cause to Arrest Donald Wells.

Based on the information known to Investigator Musial when he arrested Mr. Wells, there was probable cause to arrest Mr. Wells.

> [A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed. Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts know to the arresting officer at the time of the arrest.

*Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). "Probable cause depends not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person *in the position of the arresting officer* - - seeing what he saw, hearing what he heard." *Carmichael v. Village of Palatine*, 605 F.3d 451, 457 (7th Cir. 2010), *quoting Mahoney v. Kersey*, 976 F.3d 1054, 1057 (7th Cir. 1992) (emphasis in original). Officers have probable cause to arrest when "the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect has committed an offense." *Williams v. Rodriguez*, 509 F.3d 392, 398 (7th Cir. 2007). Moreover, the severity of the penalty for the crime is irrelevant to the inquiry. "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). *See also Williams v. Rodriguez*, 509 F.3d 392, 399 (7th Cir. 2007). While the jury made a determination, this Court may independently review their finding. In *Phillips v. Community Insurance Corporation*, – F.3d – , 2012 WL 1449675, *3 (7th Cir., April 27, 2012), *citing Bell v. Irwin*, 321 F.3d 637, 640 (7th Cir.2003), the Seventh Circuit held:

> We defer to a jury's determination of what occurred during an arrest or whose testimony is credible. But a constitutional tort is not "an analog of civil negligence." *Id.* In a traditional negligence case, we permit the jury to determine whether conduct was reasonable under the circumstances. In an excessive force case, while we accept the factual inferences made by the jury, we must independently review the jury's interpretation of what is reasonable under the Fourth Amendment. *Id.*

This finding was in keeping with the Supreme Court's determination in *Ornelas v. United States,* 116 U.S. 690, 699 (1996):

> We therefore hold that as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal. Having said this, we hasten to point out that a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.

Thus, this Court may review the jury's determination of what was reasonable.

When Investigator Musial placed Mr. Wells under arrest, Defendant Officers knew the following facts: (1) Donald Wells disobeyed a red stop light - Exhibit E (Deneen day 2) at 26; (2) witnesses at the scene told investigators that the truck was traveling at approximately 50 miles per hour - Exhibit F (Musial) at 74, Exhibit B (Gutierrez) at 32, Exhibit E (Deneen day 2) at 26; (3) Donald Wells crossed four lanes of traffic, not giving the right of way to the vehicles and pedestrians - Exhibit B (Gutierrez) at 33; (4) he drove his truck onto the sidewalk, demolishing the bus stop and the entrance to the station - Exhibit B (Gutierrez) at 33, Exhibit E (Deneen day 2) at 26; (5) Donald Wells drove his truck up the stairs and escalator inside the station - Exhibit B (Gutierrez) at 26; (6) he killed two people and injured 20 - Exhibit F (Musial) at 76, Exhibit E (Deneen day 2) at 6; (7) Mr. Wells had five bottles of different prescription medications in the cab of his truck - Exhibit F (Musial) at 81; (8) the pills within the vials appeared to be different varieties - Exhibit F (Musial) at 81; (9) there were jugs of urine in the cab of the truck - Exhibit F (Musial) at 81; (10) Mr. Wells had difficulty answering questions at the scene of the accident and seemed disoriented and fatigued - Exhibit F (Musial) at 71; (11) there were no marks on the pavement that indicated Mr. Wells tried to stop the truck before hitting the bus shelter Exhibit F (Musial) at 77; Exhibit B (Gutierrez) at 36; and (12) Mr. Wells told Investigator Deneen at

Stroger Hospital that his brakes failed and he drove his truck up the stairs to slow down.  Exhibit

E (Deneen day 2) at 17.

At that point, a reasonable police officer would have believed that he had probable cause

to arrest Mr. Wells for, among other things, violations of: Section 9-16-030 of the Chicago

Municipal Code (failure to properly turn on a red light); Section 9-12-070 of the Chicago

Municipal Code (driving in excess of the posted speed limit); Section 9-40-07 of the Chicago

Municipal Code (driving on the sidewalk); Section 9-40-140 of the Chicago Municipal Code

(negligent driving); 625 ILCS 5/11-601(c) (driving in excess of 30 miles per hour in a urban

district); 625 ILCS 5/11-1008 (failure to yield the right of way to pedestrians on the sidewalk);

and 625 ILCS 5/11-1412.12 (driving on the sidewalk).

### B.    Eliot Musial Placed Donald Wells under Arrest at 10:20 p.m. on April 25, 2008.

The undisputed evidence in the case proves that Donald Wells was not under arrest until

10:20 p.m., when Investigator Eliot Musial informed Donald Wells that he was under arrest.

While Mr. Wells had been in the same trauma unit at Stroger Hospital as Officer Butkus was

since approximately 6:00 p.m., the evidence established that Officer Butkus did not arrest Mr.

Wells.  Merely being around a police officer is not the same as being seized or arrested by the

officer.  "[A] person has been 'seized' within the meaning of the Fourth Amendment, only if, in

view of all the circumstances surrounding the incident, a reasonable person would have believed

that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).  *See also*

*Florida v. Bostick*, 501 U.S. 429, 434 (1991) (a person is seized when the officer "'by means of

physical force or show of authority,'" terminates or restrains his freedom of movement.) (*quoting*

-7-

*Terry v. Ohio*, 392 U.S. 1, 19, n. 16 (1968). The *Mendenhall* Court also held:

> Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. In the absence of such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to the seizure of that person.

*Id.* at 554-555 (internal citations included). Subsequently, the Supreme Court made clear that, "[T]he test for existence of 'show of authority' is an objective one; not whether the citizen perceived that he was being ordered to restrict his movements, but whether the officer's actions would have conveyed that to a reasonable person." *California v. Hodari D.*, 499 U.S. 621, 628 (1991). Thus, Plaintiff had to establish that Officer Butkus did anything to indicate to a reasonable person that Donald Wells was not free to leave. Plaintiff failed to meet her burden.

### i. Officer Butkus did not exert authority over Donald Wells.

Officer Butkus testified at length about her contact with Donald Wells. She did not place him under arrest. Exhibit C (Butkus) at 6. She was one of two officers in the trauma unit while Donald Wells was receiving treatment. Exhibit C (Butkus) at 7-8. Officer Butkus and her partner remained 15 to 20 feet from Mr. Wells while he received treatment. Exhibit C (Butkus) at 11; Exhibit D (Deneen) at 5. Officer Butkus asked him some questions. Exhibit C (Butkus) at 8-9. He answered some, but not others. Exhibit C (Butkus) at 9, 26. When Mr. Wells was taken to a different location in the hospital for testing, however, they did not accompany him into the room. Exhibit C (Butkus) at 11. Officer Butkus, while following Mr. Wells to the CT Scan room, did nothing to communicate that information to Mr. Wells. Exhibit C (Butkus) at 32. The officers left the trauma unit several times to make calls. Exhibit C (Butkus) at 13. If Mr. Wells

had wanted to leave, Officer Butkus would have contacted a supervisor. Exhibit C (Butkus) at

29. That question is moot, however, because Mr. Wells did not try to leave at any point, and did

not tell Officer Butkus that he wanted to leave. Exhibit C (Butkus) at 29. The seizure

circumstances outlined in *Mendenhall* are not met here. *Mendenhall*, 446 U.S. at 554-555.

Officer Butkus was not present when Investigator Deneen interviewed Mr. Wells.

Exhibit C (Butkus) at 14. Investigator Deneen interviewed Mr. Wells at Stroger Hospital for 10

to 15 minutes. Exhibit D (Deneen) at 5-6. Mr. Wells did not answer some questions. Exhibit D

(Deneen) at 11. Investigator Deneen stopped asking questions when medical personnel appeared

to treat Donald Wells. Exhibit E (Deneen day 2) at 16. None of the officers handcuffed Mr.

Wells prior to his arrest and transport to Area 1. Exhibit C (Butkus) at 25, Exhibit F (Musial) at

93. As in *Mendenhall*:

> The respondent was not seized simply by reason of the fact that the agents approached
> her, asked her if she would show them her ticket and identification, and posed to her a
> few questions. Nor was it enough to establish a seizure that the person asking the
> questions was a law enforcement official.

446 U.S. at 555. Like every other person in that trauma unit that night, and the members of the

jury who sat in the courtroom for two weeks with fifteen police officers and listened to her

testimony, Mr. Wells was not seized by Officer Butkus in the trauma unit at Stroger Hospital. A

person is seized "only when there is a governmental termination of freedom of movement

through means intentionally applied." Brower v. County of Inyo, 489 U.S. 593, 597, 109 S. Ct.

1378, 1381 (1989). Mr. Wells was not under arrest until Investigator Musial arrested him at

10:20 p.m. Exhibit C (Butkus) at 28. Exhibit F (Musial) at 23, 90. There is literally no evidence

to the contrary.

### ii. Other officers at Stroger Hospital did not exert authority over Donald Wells.

Officer Butkus also testified that other officers came to the hospital to question Donald Wells. Exhibit C (Butkus) at 14, 16, Exhibit D (Deneen) at 5. Investigator Deneen was one of those officers. Exhibit C (Butkus) at 13, Exhibit D (Deneen) at 5. Investigator Deneen read Mr. Wells his *Miranda* rights and asked him about the accident. Exhibit D (Deneen) at 6. Mr. Wells told Investigator Deneen that the brakes on the truck failed and he tried to slow the truck by driving it up the stairs. Exhibit D (Deneen) at 7. Investigator Deneen left the hospital before Mr. Wells. Exhibit D (Deneen) at 12. Investigator Deneen did not see Mr. Wells again until after Mr. Wells has been transported to Area 1 Detective Division. Exhibit D (Deneen) at 12. There is no evidence anywhere in the record that Investigator Deneen exerted any control of Mr. Wells. The only evidence in the case establishes that Mr. Wells was not under arrest or restrained in his liberty until Investigator Musial arrested him at 10:20 p.m. on April 25, 2008.

### C. The Defendant Officers Did Not Illegally Detain Donald Wells.

Because the Defendant Officers had probable cause to arrest Donald Wells, the Defendant Officers had 48 hours to seek higher charges. In *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975), the Supreme Court held that individuals arrested without a warrant are entitled under the Fourth Amendment to a prompt judicial determination of probable cause as a prerequisite to extended detention following arrest. In *County of Riverside v. McLaughlin,* 500 U.S. 44 (1991), the Court provided additional guidance on the "promptness" requirement. The Court held "a jurisdiction that provides a judicial determination of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein.*" *Id.* at 56. While probable

cause determinations within 48 hours are presumptively reasonable, they may still violate the Fourth Amendment if the arrested individual can prove his hearing was delayed unreasonably even though it occurred within 48 hours. In that case, the arrested individual bears the burden of proving an unreasonable delay. *Id.* at 56-57. If the probable cause determination exceeds 48 hours, then the burden shifts to the government to justify the delay by demonstrating the existence of a bona fide emergency or other extraordinary circumstance. *Id.* at 57; *see also Portis v. City of Chicago,* 613 F.3d 702, 703-04 (7th Cir. 2010).

Spending that time to gathering evidence in order to *justify* the arrest presumptively violates *Gerstein*. *County of Riverside*, 500 U.S. at 56. There is, however, no prohibition on using 48 hours after an arrest to find evidence in order to seek higher charges related to the incident for which the arrestee was arrested. As the Seventh Circuit held in *United States v. Daniels*, 64 F.3d 311, 313-14 (7th Cir. 1995):

> Daniels' argument seems to interpret *Riverside* to preclude law enforcement from bolstering its case against a defendant while he awaits his *Gerstein* hearing; that is a ludicrous position. *Gerstein* and its progeny simply prohibit law enforcement from detaining a defendant to gather evidence to justify his arrest, which is a wholly different matter. Probable cause to arrest Daniels already existed and that is what [the officer's] affidavit reported. We therefore reject Daniels' contention that he did not receive a prompt *Gerstein* hearing..

*See also United States v. Sholola,* 124 F.3d 803, 820 (7th Cir.1997),

In this case, the Defendant Officers were investigating the traffic accident which caused the deaths of two people and injured twenty. While they had probable cause to arrest Mr. Wells for at least seven traffic offenses, they were entitled to investigate further to determine if they could seek charges for, among other things: 625 ILCS 5/11-501 (Aggravated Driving Under The Influence); 625 ILCS 5/11-503(c) (Aggravated Reckless Driving); 720 ILCS 5/9-1 (First Degree

-11-

Murder); and 720 ILCS 5/9-3(a) (Involuntary Manslaughter and Reckless Homicide). That violates neither the letter nor the spirit of *County of Riverside*. Thus, the fact that Investigator Musial had probable cause, coupled with the 10:20 p.m. time of arrest means that the Defendant Officers had until 10:20 p.m on April 27, 2008, to present him to a magistrate. Exhibit H (Farrell) at 68.

### i.    Donald Wells Was Released Less Than 48 Hours After His Arrest

Plaintiff established at trial that Captain Farrell released Donald Wells 47 hours after his arrest. The undisputed evidence proved that Captain Farrell went to Mr. Wells' cell to tell him he was going to be released around 9:15 p.m. Exhibit H (Farrell) at 55-56. Mr. Wells appeared to be refusing to leave. Exhibit H (Farrell) at 61-62. Based upon Mr. Wells' condition, and his concerns about Mr. Wells not having somewhere to go, Captain Farrell chose to have Mr. Wells taken to the hospital. Exhibit H (Farrell) at 64. Mr. Wells, however, was entirely free to leave before then. Exhibit H (Farrell) at 67. Had he chosen to do so, Mr. Wells could have left the station at any point after Captain Farrell told him he was free to go. Exhibit H (Farrell) at 58. The fact that he chose not to leave is not "custody" as defined by the law.

Since Mr. Wells was not held for more than 48 hours, the detention was presumptively reasonable and the burden shifted to Plaintiff to show that Mr. Wells' release was unreasonably delayed. *County of Riverside*, 500 U.S. at 56-57. Plaintiff has completely failed to prove this element. Every person who testified said that Mr. Wells was held because of the enormity of the accident, the need to be fair to both Mr. Wells and the victims, and the need to uncover what caused the accident. Mr. Wells told officers that his brakes failed. Thus, an investigation into the condition of the brakes had to occur. Witnesses had to be interviewed. Exhibit B

(Gutierrez) at 46. The deceased victims had to be identified. Exhibit B (Gutierrez) at 31. The scene had to be examined. Exhibit B (Gutierrez) at 28. Mr. Wells told officers that he aimed for the stairs, an admission that suggested intent. Hundreds of questions had to be answered and that took time.

In response to this, Plaintiff argued simply that probable cause to hold Mr. Wells for *any* charge dissipated when the DUI kit came back negative for alcohol and illicit drugs. That is ridiculous. While it is certainly true that the continuation of even a lawful arrest violates the Fourth Amendment when the police discover additional facts dissipating their earlier probable cause, *Bevier v. Hucal*, 806 F. 2d 123, 128 (7th Cir. 1986), *citing People v. Quarles*, 88 Ill.App.3d 340, 43 Ill.Dec. 497, 410 N.E.2d 497 (1980), the results of the DUI kit only apply to the proposed Aggravated DUI charge. The test results absolutely dissipated probable cause for the Aggravated DUI charge. Which is why Mr. Wells was not charged with Aggravated DUI. Impairment, whether by illicit drug or alcohol, is not an element of any of the other crimes with which Mr. Wells could have been charged. Exhibit B (Gutierrez) at 48-49; Exhibit G (McMahon) at 31. It is not an element of the one ticket Mr. Wells received before he was released from custody: Section 9-40-140 of the Chicago Municipal Code (negligent driving). Probable cause did not dissipate. As a result, the Defendant Officers did not violate Mr. Wells' constitutional rights by holding him for less than 48 hours. Defendants were entitled to judgment in their favor on this alternative to the claim.

### ii. The Defendant Officers Did Not Hold Donald Wells for less than 48 Hours for an Improper Purpose.

Since the Defendant Officers had probable cause, a detention of less than 48 hours is presumptively reasonable under *County of Riverside*. Plaintiff bore the burden of proving that the detention was for an improper purpose. Plaintiff could overcome the presumption of reasonableness only "if the arrested individual can prove that his or her probable cause hearing was delayed unreasonably. Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." *County of Riverside,* 500 U.S. at 56. For the reasons outlined above, there was a complete failure of proof on this claim. Again, the only theory Plaintiff advanced was that probable cause dissipated upon the return of the DUI test results. Holding Mr. Wells past the return of test results that did not impact the majority of contemplated charges does not fit within the examples described by the Supreme Court. The arrest did not need to be justified - the Defendant Officers had probable cause to arrest for a myriad of charges. There was no evidence of ill will against Mr. Wells on the part of anyone who came into contact with him. This complete failure of proof means that the Defendant Officers are entitled to judgment as a matter of law on the detention claim.

### D. The Defendant Officers Are Entitled to Qualified Immunity.

Moreover, the Defendant Officers are entitled to qualified immunity on the illegal detention claim because no reasonable police officer could have known, in this circumstance, that their actions violated the Constitution. Qualified immunity protects public officials performing discretionary functions from "liability for civil damages insofar as their conduct does not violate

-14-

clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)(citations omitted). The issue of qualified immunity is a question of law for the court to decide. *Alvarado v. Picur*, 859 F.2d 448, 451 (7th Cir. 1988). "Although qualified immunity is an affirmative defense, once the defense is raised, it becomes plaintiff's burden to defeat it." *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008)(citations omitted).

The issue is not simply whether Mr. Wells was held for more than 48 hours. Given the case law, a reasonable police officer could not have known that Mr. Wells was under arrest, and the 48 hour clock started, at 6:00 p.m. on April 25th simply because Officer Butkus was physically present in the Stroger trauma unit. Since that information was not conveyed to them, Exhibit B (Gutierrez) at 58, there is no way Defendant Officers could have known that the 48 hour clock began at 6:00 p.m., not at 10:20 p.m. when Investigator Musial arrested Mr. Wells. Moreover, Mr. Wells was in the Second District Lockup until after10:00 p.m. because Captain Farrell called for an ambulance to take him to the hospital. There was no way for these officers to know that the extra 1.5 hours Mr. Wells spent waiting for that ambulance was "custody" and continued the running of the 48 hour clock.

In light of *Daniels* and *Sholola*, it was not clearly established that it was unreasonable for defendants to bolster their case against Wells by further investigating the same incident for more serious charges while he awaited a judicial determination of probable cause where probable cause to arrest him already existed. If *Lopez v. City of Chicago*, 464 F.3d 711, 714 (7th Cir. 2006), holds that such delay is unreasonable, then it would be contrary to *Daniels* and *Sholola*, and make qualified immunity appropriate. If judges can disagree on a constitutional question, it

-15-

is unfair to subject the police to liability for money damages for picking the losing side of the controversy. *See Wilson v. Lane*, 526 U.S. 603, 618 (1999). The Defendant Officers are entitled to qualified immunity on Plaintiff's claims.

### E. There Is No City Policy Concerning Holding Arrestees for less than 48 Hours for an Improper Purpose.

The City is entitled to judgment as a matter of law on the *Monell* claim. First, as argued above, the fact that the Defendant Officers did not violate Mr. Wells' constitutional rights means that there is no underlying constitutional violation upon which the City may be held liable. *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). After summary judgment, the only policy claim remaining in the case was a claim that the City holds arrestees for less than 48 hours for an improper purpose. Plaintiff had to prove that policy was the "direct cause" or "moving force" of the constitutional injury. *See Minix v. Canarecci,* 597 F.3d 824, 832 (7th Cir. 2010); *see also City of Canton v. Harris*, 489 U.S. 378, 387 (1989) ("our first inquiry…is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation"). "Isolated" acts committed by non-policymaking officials generally do not amount to a "custom" which "implies a habitual practice of a course of action that characteristically is repeated under like circumstances." *Sims v. Mulcahy*, 902 F.2d 524, 542 (7th Cir. 1990), *quoting Jones v. City of Chicago*, 787 F.2d 200, 204 (7th Cir. 1986).

Plaintiff made no showing of a widespread policy or practice. Other than her contention regarding Mr. Wells, there was literally no other evidence that any other person has been held by the Chicago Police Department for less than 48 hours for an improper purpose. In fact, plaintiff read into evidence the deposition of Mr. Ronald Ward who was in lock-up at the 2nd District with

Wells for a period of time. Ward was arrested for a minor offense the late evening of April 25, 2008 and was released before 9:00 a.m. on April 26, 2008. Exhibit A (Ward) at 5, 8, 16. As there is no evidence to support plaintiff's *Monell* claim that the City holds people improperly for less than 48 hours, the City is entitled to judgment as a matter of law on that claim.

## II. THE DEFENDANTS ARE ENTITLED TO A NEW TRIAL ON DAMAGES OR, IN THE ALTERNATIVE, REMITTITUR ON DAMAGES.

Pursuant to Federal Rule of Civil Procedure 59, Defendants City, Deneen, Guitierrez, McMahon and Musial move this court for a new trial on damages or, in the alternative, for a remittitur on the damages awarded, because both the compensatory and punitive damages awarded by the jury were excessive in light of the evidence presented at trial.

The jury found in favor of the Plaintiff and against Defendants Deneen, Gutierrez, McMahon and Musial on plaintiff's claim for unreasonable detention under *County of Riverside v. McLaughlin,* 500 U.S. 44 (1991). The jury also found in favor of the plaintiff and against Defendant City on Plaintiff's claim that the City unreasonably detained Donald Wells as a result of a policy or practice of unreasonable detention. Compensatory damages were awarded against these defendants in the amount of $1million for pain and suffering. Punitive damages were assessed against the individual defendants in the following amounts: Deneen, $500; Gutierrez, $50,000; McMahon, $50,000.00; and Musial, $50,000. Both the compensatory and punitive damages awards are excessive.

### A. The compensatory damages award bore no rational connection to the evidence presented at trial.

In determining whether a compensatory damages award is excessive, the court employs a three factor test: (1) whether the award is "monstrously excessive;" (2) whether there is no

rational connection between the award and the evidence; and (3) whether the award is roughly comparable to awards made in similar cases. *See David v. Caterpillar, Inc.*, 324 F.3d 851, 864 (7th Cir. 2003); *Tullis v. Townley Engineering and Mfg. Co.*, 243 F.3d 1058, 1066 (7th Cir. 2001). Because the Seventh Circuit views the "monstrously excessive" factor as "a rather vague standard for review," it has suggested that it should be merged with the rational inquiry analysis. *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1285 n. 13 (7th Cir. 1995).

The $1 million compensatory damages award for pain and suffering bore no rational connection to the evidence presented at trial. Plaintiff presented alternate theories of liability on her unreasonable detention claim. First, she claimed Mr. Wells was not taken before a judge for a probable cause to detain hearing or released by the defendants within 48 hours after he was placed in custody. Alternatively, Plaintiff claimed the defendants unreasonably delayed Wells' release for an improper purpose because either no probable cause existed to arrest him in the first place, or because information came to the attention of the police that dissipated the existence of probable cause. As to the first alternative, Plaintiff claimed Mr. Wells was held for 53 hours after he was taken into custody on April 25, 2008. In the alternative, Plaintiff contended that probable cause dissipated at 12:45 p.m. on April 27, 2008, when the police learned that Mr. Wells' blood and urine was negative for alcohol and drugs. According to the evidence presented at trial, Wells was released from police custody on April 27, 2008, at approximately 9:30 p.m. by the on-duty watch commander, Defendant John Farrell. Under this theory, according to Plaintiff, Wells was unreasonably detained for approximately nine hours after probable cause had dissipated in light of the ISP lab results.

Whether it is five hours or nine hours over the 48 hour limit, the compensatory damages

awarded for pain and suffering are clearly excessive. If five hours over, the award is $200,000 per hour; if nine hours over, the award is over $111,000 per hour. Plaintiff failed to produce any evidence at trial to justify such awards. This is especially true in light of the fact the jury determined that none of the defendants were liable on either plaintiff's federal denial of medical care claim or plaintiff's state wrongful death and survival claims based on a failure to provide medical care.

Defendants have found no comparable case in the Circuit where a Plaintiff has prevailed on a 48 hour claim, whether the issue was over or under the 48 hours, and was awarded anything close to this type of award. In *Swanigan v. Trotter*, 07 C 4749 (tried before Judge Kendall in August of 2011), the Plaintiff alleged he was held for 52 hours. Plaintiff put on a psychiatrist who testified to Plaintiff's emotional damages as a result of the arrest. The jury awarded $60,000 in compensatory damages for pain and suffering. In short, the compensatory damages here are so beyond the bounds of reason that the Court should not let them stand. A new trial on damages is warranted or, in the alternative, a remittitur.

**B.** **The Punitive Damages Awards Are Unsupported By Any Evidence In The Case.**

The awards of punitive damages in this case bear no rational relationship to the evidence in this case. It should be presumed that a plaintiff has been made whole by compensatory damages, so punitive damages should be awarded only if the defendant's culpability is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence. *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003). The jury's punitive damage awards against Defendants Deneen, Guitierrez, McMahon and Musial are

both "constitutionally excessive" and conventionally excessive in light of the evidence presented at trial.

In assessing whether a punitive damage award is constitutionally appropriate, the Supreme Court has directed courts to focus their evaluation on three guideposts: (1) the reprehensibility of the defendant's conduct; (2) the relationship between the amount of the punitive damages award and the harm or potential harm suffered by the plaintiff; and (3) the difference between the punitive damages award and the civil penalties authorized or imposed in comparable cases. *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575 (1996).

"Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Id*. In evaluating the reprehensibility of a defendant's conduct the Supreme Court has instructed the lower courts to consider whether: the harm caused was physical as opposed economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident. *State Farm*, 538 U.S. at 419.

Given the claim on which punitive damages were awarded, and the nature and extent of each defendant's respective interaction with Wells (or lack thereof), the defendants' conduct can simply cannot be characterized as reprehensible. Defendant Deneen briefly interacted with Wells at Stroger Hospital on the day of the accident, April; 25, 2008. Exhibit D (Deneen) at 5-6. He decided it would be better for Wells to receive medical attention than to further question him about the accident, so he left the hospital and returned to the scene. Exhibit E (Deneen day 2) at

9-10. He next saw Wells when he escorted him down the stairs from the detective division on the second floor of the police station at 51st and Wentworth to the 2nd District lock-up area on the first floor of the building during the early morning hours of April 26, 2008. Exhibit E (Deneen day 2) at 23-24. He did not see Wells again until Wells had been released from the 2nd District lock-up on the evening of April 27, 2008. Exhibit E (Deneen day 2) at 24.

Defendant Gutierrez had no interaction with Donald Wells at the scene of the accident. Exhibit B (Gutierrez) at 35. He was with Deneen when Wells was escorted downstairs from the detective division to the lock-up on the first floor during the early morning of April 26th. Exhibit B (Gutierrez) at 42-43. Like Deneen, Gutierrez had no other interaction with Wells until Wells had been released from the 2nd District lock-up on the evening of April 27, 2008. Exhibit B (Gutierrez) at 49-50.

Defendant McMahon observed Wells at the scene of the accident on April 25, 2008, but did not have any interaction with him there or at _any_ time thereafter. Exhibit G (McMahon) at 21, 22.

Investigator Musial placed Wells under arrest at Stroger Hospital on April 25th. Exhibit F (Musial) at 93. Mr. Wells was then transported to the police station at 51st and Wentworth by a squadrol or police wagon. Exhibit F (Musial) at 97. Investigator Musial conducted a videotaped interview of Wells at the police station, but when Mr. Wells invoked his right to counsel, Investigator Musial terminated the interview. Exhibit F (Musial) at 102-103. He monitored Mr. Wells from time to time while Mr. Wells was still in the interview room until he was relieved by Investigators Deneen and Gutierrez who took Mr. Wells from that room to the lock-up. Exhibit F (Musial) at104. Investigator Musial was not present when Wells was released from the 2nd

District lock-up on April 27, 2008.  Exhibit F (Musial) at 55, 59.

Despite the lack of reprehensibility of their respective actions, the jury awarded punitive damages against each of these defendants on plaintiff's unreasonable detention claim.  The inappropriateness of those damages is underscored by the fact that none of these defendants were assigned to the 2nd District station, the unit of detention that held Wells while he was in custody from April 25 to April 27, 2008.  Defendants Deneen, Gutierrez, McMahon and Musial were all assigned to the Major Accidents Unit, the police unit investigating the accident.  As argued above, there was no evidence suggesting a lack of probable cause to arrest Wells for negligent driving as a result of the accident.  Furthermore, the evidence adduced at trial did not establish anything improper about their investigation of the accident. There was also no evidence produced at trial that these defendants were motivated by ill will or malice, or were recklessly indifferent to Wells' rights, with respect to his detention following his arrest.  In sum, the lack of reprehensibility of these defendants' respective conduct does not justify the punitive damages awarded against them.

The second guidepost addresses the relationship or ratio of the punitive damages award to the actual harm inflicted on the plaintiff.  *Gore*, 517 U.S. at 580.  This is done by a comparison between the compensatory and punitive awards.  *Id.* at 581.  Here, the punitive damages did not exceed the compensatory damages.  However, as argued above, the compensatory damage award was excessive in light of the evidence at trial, and therefore, any award of punitive damages would not bear a reasonable relationship to the compensatory damages.  Furthermore, when the punitive damages are compared to the actual harm suffered by Wells – the pain and suffering of five to nine hours of extended detention – the amounts are not justified.  At five hours over, the

collective punitive damages ($150,500) amounts to an award of $30,100 per hour; at nine hours, the award is over $16,700 for each hour of extended detention. Thus, the punitive damage awards do not bear a reasonable relationship to the actual harm suffered.

With regard to the third guidepost, the award of punitive damages is irreconcilable with the punitive damages imposed in comparable cases. In *Kyle v. Patterson*, 196 F.3d 695 (7th Cir. 1999), the Seventh Circuit decided that a plaintiff held in police custody 13 hours longer than permissible under the law was not entitled to punitive damages against the law enforcement officers responsible for his illegal detention in the absence of evidence of evil motives or deliberate indifference. In *Kyle*, the police contended they detained the plaintiff for more than 48 hours because they were waiting for the Cook County prosecutor to approve and prepare murder charges. 196 F.3d at 697. The court determined that although the defendants arrested plaintiff on a charge supported by probable cause, they missed the 48-hour deadline for plaintiff to receive a judicial determination of probable cause. Nonetheless, there was no evidence to establish the defendants acted with evil motives or deliberate indifference to support an award of punitive damages. *Id.*, at 698. In *Swanigan v. Trotter*, No. 07 C 4749 (N.D. Ill), the jury declined to award punitive damages for the 52 total hours Plaintiff was in custody. Thus, based on the *Gore* guideposts, the punitive damage awards against Defendants Deneen, Gutierrez, McMahon and Musial are "constitutionally excessive," and these defendants are entitled to a new trial on damages, or in the alternative, a remittitur.

In addition to running afoul of the constitutional limitations, the punitive damage awards are also excessive in light of the evidence presented by plaintiff at trial. In this analysis, the court employs the same test used for compensatory damages as stated above in order to determine

whether the punitive damage award is excessive.  *See, David v. Caterpillar, Inc.*, 324 F.3d 851, 864 (7th Cir. 2003); *Tullis v. Townley Engineering and Mfg. Co.*, 243 F.3d 1058, 1066 (7th Cir. 2001).   Based on this analysis, the punitive damage awards bear no rational connection to the evidence.  As noted above, the punitive damages awarded herein were for plaintiff's claim of unreasonable detention.  None of the defendants against whom punitive damages were awarded were assigned to the 2nd District station, the unit of Wells' detention from April 25 to April 27, 2008.  They were all assigned to the unit investigating the accident.  As argued above, based on the evidence presented at trial there was nothing about the investigation that was improper or legally impermissible as it related to Wells' detention.

While punitive damages may be awarded by a jury in a Section 1983 case if it finds that the defendant's conduct was "motivated by evil intent or callous indifference to the plaintiff's federally protected rights,"  *Marshall v. Teske*, 284 F.3d 765, 772  (7th Cir. 2002), there was a total lack of evidence of evil intent or deliberate indifference to Wells' rights to support an award of punitive damages herein.  Indeed, the jury found no willful and wanton conduct on the part of any defendant in returning its verdict against plaintiff on her wrongful death claim.  If the jury could not find willful and wanton conduct by the defendants leading to Wells' death, it is inconceivable that they could find such conduct existed in unreasonably detaining Wells for five to nine hours over the 48-hour limit.  In sum, the evidence presented by the plaintiff did not bear a rational relationship to the award of punitive damages.

Furthermore, as noted above, the award is not comparable to punitive damage awards in similar cases.  In *Kyle v. Patterson*, *supra*, an award of punitive damages for an unreasonable detention 13 hours over the limit was rejected.  The jury rejected the award of punitive damages

in *Swanigan*. Thus, the only comparable cases the defense has found awarded $0 in punitive

damages. The Court should do so here.

## CONCLUSION

The jury verdict on the illegal detention claims was contrary to the law of this Circuit.

Moreover, the damages awarded for less than 10 hours of extended detention were completely

unsupported by the evidence. For all the forgoing reasons, the verdict on the illegal detention

claims should be reversed.

Respectfully submitted,

/s/ Liza M. Franklin
LIZA M. FRANKLIN
Deputy Corporation Counsel

30 N. LaSalle Street
Suite 900
Chicago, Illinois 60602
(312) 742-0170
(312) 744-6566 (FAX)
ATTY. NO. 06216088

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have caused true and correct copies of the above and foregoing **Notice of Filing** and **Defendants' Post-Trial Motion** to be sent via the CM/ECF electronic filing system to the attorney(s) named above at the address(es) therein shown on this 14th  day of May, 2012.

Respectfully submitted,

/s/ Liza M. Franklin
LIZA M. FRANKLIN
Deputy Corporation Counsel

30 N. LaSalle Street
Suite 900
Chicago, Illinois 60602
(312) 742-0170
(312) 744-6566 (FAX)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANN DARLENE WELLS, as Representative of the Estate of Donald L. Wells, Deceased, | ) ) ) | |
| Plaintiff, | ) | |
| vs. | ) ) | No.  09 C 1198 |
| CITY OF CHICAGO, et al., | ) ) | Judge Kennelly |
| Defendants. | ) | |

## **INDEX TO EXHIBITS**

Exhibit A          Ronald Ward testimony

Exhibit B          Galo Gutierrez testimony

Exhibit C          Joanne Butkus testimony

Exhibit D          Michael Deneen testimony  (1st day)

Exhibit E          Michael Deneen testimony (2nd day)

Exhibit F          Elliott Musial testimony

Exhibit G          Maureen McMahon testimony

Exhibit H          John Farrell testimony