IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANN DARLENE WELLS, as Representative of the Estate of Donald L. Wells, Deceased, | ) ) ) | 09 CV 1198 |
| Plaintiff | ) ) ) | Judge Matthew F. Kennelly |
| v. | ) ) | |
| CITY OF CHICAGO, et al., | ) ) | |
| Defendants. | ) | |

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF HER MOTION FOR ATTORNEYS' FEES AND RELATED COSTS**

Pursuant to this Court's November 11, 2012 Order [Doc. No. 417], Plaintiff submits the following five (5) page supplemental brief in support of her Motion for Attorneys' Fees and Related Costs, focusing on the impact of this Court's September 16, 2012 Opinion on Defendants' post-judgment motions.

There is no question that Plaintiff is the prevailing party in this case. *Farrar v. Hobby*, 506 U.S. 103, 109 (1992)("[a] judgment for damages in any amount, . . . modifies the defendant's behavior by forcing the defendant to pay an amount of money.") As this Court held, Plaintiff is entitled to "a substantial damage award for Wells's pain and suffering." (Doc. No. 411, p. 23). Thus, in a post-judgment ruling, this Court awarded Plaintiff a "substantial" award of $250,000 against the four Major Accident Investigation Unit Defendants based on an unlawful detention theory. The only question to be decided now is the amount of fees and costs Plaintiff should be awarded utilizing the standard lodestar method and whether Plaintiff's costs and fees should be adjusted under the *Hensley* factors. Based on the interrelated nature of the claims, the complexity of the case, the Defendants' refusal to ever discuss settlement or offer a dime to settle this case, and the Plaintiff's "substantial" damages award, Plaintiff's fees and costs should be awarded as submitted without any adjustment.

Because civil rights cases are both time-consuming and difficult to win, the law provides that a prevailing party in a civil rights case be compensated for the number of hours its attorneys reasonably expend on the litigation times a reasonable hourly rate. *Blum v. Stenson*, 465 U.S. 886, 888 (1984). The resulting amount is the **presumed** fee and is frequently awarded without adjustment. *Perdue v. Kenny A.*, 130 S.Ct. 1662, 1633 (2010) (the lodestar may be adjusted in "those **rare** circumstances in which the lodestar does not adequately take into account a factor that may be properly considered in determining a reasonable fee") (emphasis added).

That Plaintiff did not succeed on all of her claims against Defendants does not warrant a decrease in the lodestar. The Supreme Court held a plaintiff is entitled to an award for her attorneys' fees for claims that were ultimately unsuccessful so long as those claims involve a "common core" of operative facts and seek relief for essentially the same course of conduct involved in those claims or are based on related legal theories for which Plaintiff succeeded. *Hensley*, 461 U.S. at 434-35. A claim is unrelated if it is "distinct in all respects from [plaintiff's] successful claims." *Id.* at 440; *see also Jaffee v. Redmond*, 142 F.3d 409, 413 (7th Cir. 1998) ("time spent pursuing an unsuccessful claim may be compensable if it also contributed to the success of other claims").

In this case, the Court can look at this case in two key phases as it relates to the fees

1

incurred: pretrial and trial. During the pretrial phase of this case, depositions taken, experts retained, records obtained, were all reasonable and necessary whether there was one claim or ten or one Defendant or ten. Plaintiff succeeded on a claim that Defendants unlawfully detained Mr. Wells in excess of 48 hours. To prove this claim, Plaintiff had to establish the events surrounding the accident, when Mr. Wells was in custody, the actions of the 40 police officers who transported, interrogated, guarded, and witnessed Mr. Wells. To ultimately prove damages, Plaintiff had to establish Mr. Wells' physical and mental condition at various stages, thus the testimony from over 15 medical witnesses, treating physicians and expert doctors was necessary, as well as testimony from the various witnesses who saw Mr. Wells. Indeed, in upholding the jury's verdict and finding Mr. Wells "suffered significant physical pain during the time he was detained," this Court recited the testimony of nearly a dozen different witnesses. (Doc. No. 411, pp. 22-23). Therefore, whether based on the state law claims, section 1983 claims for failure to provide medical care, or unlawful detention, Plaintiff needed to pursue the same discovery regardless of the theory. This need was only reinforced by the Defendants' refusal to even engage in settlement discussions to resolve the suit.

In addition, while Plaintiff ultimately did not succeed on her *Monell* based claims following this Court's post-judgment ruling, most of the same discovery would have been taken with or without the *Monell* claims. Plaintiff argued the City had a *de facto* policy based on a widespread practice, and to prove it, Plaintiff deposed the officers regarding their conduct in this case and in similar cases to establish the widespread practice; Plaintiff did not expend significant time on separate discovery unrelated to the other claims.[1] Moreover, the limited time spent in taking 30(b)(6) depositions elicited testimony that helped bolster Plaintiff's unlawful detention claims.

In the next phase of this case, a complex ten day trial occurred. Once again, the witnesses called, the experts used, and the evidence introduced was all necessary to establish liability and

---

[1] Defendants may point to Mr. Waller, Plaintiff's police procedures expert, and argue that his time, testimony, and expense should be stricken because Plaintiff did not ultimately win her *Monell* claims. However, it was Defendants' own counsel who elicited testimony from Mr. Waller relative to Plaintiff's successful claim. (*See* Doc. No. 388, p. 24, and exhibit 54 thereto). Moreover, this Court cited to Mr. Waller's testimony in its post-judgment ruling in finding Plaintiff proved substantial damages. (Doc. No. 411, pp. 22-23).

damages regardless of the theory of liability. As with the pretrial discovery, Plaintiff called police officers and other witnesses to establish the circumstances surrounding the accident, Mr. Wells's mental state, when he was taken into custody, and the circumstances surrounding his arrest. In addition to proving a constitutional violation, Plaintiff had to support damages stemming from the violation, and thus, physicians, witnesses, and experts were needed to establish Mr. Wells's physical and mental condition at various stages before, during, and after his custody. Indeed, as this Court noted in its post-judgment opinion, "the damage award appropriately takes into account the severe level of disorientation and mental distress, not to mention physical pain, that Wells suffered during his custody – distress that appears to have increased toward the end of his custody, which was the period during which he was unlawfully held." (Doc. No. 411, pp. 29-30). Plaintiff could only have made this showing with evidence from experts, physicians, and those who saw Mr. Wells and could testify as to his deteriorating condition, culminating in his greatest suffering in the final hours in Defendants' custody. Thus, whether just one claim or all the claims, the trial would have still been complex and would not have been shortened had Defendants or claims been dismissed.[2] This was also necessary as again, Defendants never offered a dime to settle the case.

Post-trial, while the Court overruled the jury's verdict in part, it upheld what it characterized as "a substantial damage award for Wells's pain and suffering" totaling $250,000. (Doc. No. 411, p. 23). Thus, Plaintiff succeeded and is entitled to fees in defending against the Defendants' post-trial motions and for the fees incurred in pursuing her fees and costs.

Plaintiff seeks attorneys' fees totaling $4,037,367.85 and costs of $475,119.80 for a final total of $4,512,487.65. (Doc. No. 406). This is supported by voluminous detailed billing records, receipts,

---

[2] As stated in footnote 1, even as to the *Monell* claim that proceeded to trial after this Court denied the City summary judgment, at trial, no special evidence, documentation, or witnesses were offered to prove the *Monell* claim. Instead, each officer was asked about his treatment of Mr. Wells in relation to treatment of other detainees to establish a widespread practice that was ignored by the City. Further, as to the failure to provide medical care claims, the same witnesses were utilized who could testify as to Mr. Wells's physical and mental condition while in custody and the same doctors were presented to testify as to his worsening condition. Other witnesses had knowledge regarding the existence of probable cause to arrest and whether it was maintained, but they offered testimony regarding Well's detention and the timing of that detention. They were all the same witnesses who helped Plaintiff prove her successful unlawful detention claim.

and other documentation. Calculated using the lodestar method, the fees are presumed reasonable, absent some "rare" circumstances. *Perdue*, 130 S.Ct. at 1633. To determine whether an adjustment of the lodestar is warranted, courts consider twelve factors. *Hensley*, 461 U.S. at 430. While the most important factor is the result obtained, the other factors cannot be ignored. *Id.* at 436.

Even after this Court reduced the jury's verdict, Plaintiff still achieved a significant result, characterized by this Court as a "substantial damage award." (Doc. No. 411, p. 23). Indeed, based on comparison cases examined by this Court, the award was among the highest achieved. *Id.* at 29-30. Further, the judgment was against the four members of the Accident Investigation Unit, sending a clear signal that an important department was failing the citizens of Chicago. Thus, Plaintiff had tremendous success. The success is similar to *Warfield v. City of Chicago*, 733 F. Supp. 2d 950, 950 (N.D. Ill. 2010). In *Warfield*, the court held that plaintiff was entitled to fees and costs where the jury found against the defendants and awarded substantial damages of over $240,000 to the plaintiff. In that case, the court approved rates based on the Laffey Matrix, refused to enhance or decrease the lodestar award, and found that even though plaintiff succeeded only on one count for unlawful detention and lost on the other seven counts, plaintiff was entitled to her full lodestar[3] because the remaining claims were interrelated and all revolved around the same shooting incident. *Id.* at 958-60.

An examination of the remaining factors also supports awarding the full lodestar. This case was complex and labor intensive, made only more so by Defendants' refusal to discuss settlement. This case followed a well-publicized accident involving many witnesses and officers, included 100+ depositions, voluminous summary judgment and *Daubert* briefing, and a ten day trial. Further, counsel has assumed a substantial risk, receiving <u>no</u> contingency fee. Even when the foregoing circumstances are lacking under the *Hensley* factors, courts reluctantly reduce the lodestar, and do so

---

[3] In *Warfield*, the defendants asked the court to decrease the prevailing plaintiffs' lodestar despite the fact that the defendants paid their own outside counsel over $1 Million in fees, more than the plaintiffs' attorneys had billed. (**Ex. A**). Outside counsel in that case only got involved on behalf of the defendants late in the case, so those fees did <u>not</u> include the time spent by inside corporation counsel for several years of litigation. *See Warfield*, No. 05-cv-03712, Doc. No. 486-2, pp. 6-7. In other words, in that case, which is quite similar to the case at bar (albeit involving a less publicized incident than is present in this case and with significantly less witnesses), the defendants expended millions in fees, and now are asking this Court to cut Plaintiffs' fees after Plaintiff won "substantial damages." The Defendants' indignation at the fees is hypocritical and meritless.

4

sparingly. *See Gibson v. City of Chicago*, 2012 WL 2775025 *13 (N.D. Ill. July 6, 2012) ($7,500 award for false arrest claim – plaintiff received nearly $107,000 in fees following a 35% reduction in the lodestar. Reduction based on only partial success for plaintiff, and lack of complexity where no dispositive motions, and the trial lasted only three days.) Where courts significantly reduced the lodestar, it was primarily because a plaintiff rejected a substantial settlement offer. *See Thompson v. City of Chicago*, 2011 WL 2923694 *4-5 (N.D. Ill. July 18, 2011) (citing *Moriarty v. Svec*, 233 F.3d 955, 967 (7th Cir.2000) ($15,000 verdict on a single claim after plaintiff had rejected two settlement offers of up to $425,000; plaintiff awarded $132,000 in fees after a 70% reduction in fees "due to the number of hours billed following the 'substantial settlement' offer."); *Dominguez v. Quigley's Irish Pub, Inc.*, 2012 WL 4060568 *15 (N.D. Ill. Sept. 14, 2012) (Settlement of less than $4,000 resulted in a fee award of nearly $64,000, following a 33% reduction pursuant to *Hensley* factors); *but see Heder v. City of Two Rivers*, 255 F. Supp. 2d 947, 956 (E.D.Wis. 2003)(Plaintiff should not be penalized for City's aggressive tactics.)

Defendants will undoubtedly ask this Court to slash Plaintiff's fees by 80 or 90%, Defendants' *modus operandi* in these cases. Plaintiff urges this Court to reject this Draconian and baseless request. Congress passed section 1988 to encourage attorneys, at significant risk, to represent the interests of an individual whose constitutional rights have been violated, despite the difficulty in proving such violations. *Ustrak v. Fairman*, 851 F.2d 983, 989 (7th Cir. 1988)(approving a fee award 21 times greater than damages because "[t]here is an irreducible fixed cost to litigation. If the plaintiff cannot recover that cost in an award of attorney's fees, he will find it difficult to hire a lawyer.") The risk is evident here where Plaintiff was represented by three law firms, ending with her representation by Howard & Howard. This case was complex, had many potential pitfalls, and was only made more difficult by Defendants' refusal to discuss settlement. Despite the risks, and with great expense, Plaintiff's attorneys proceeded against an army of the Defendants' attorneys and staff, obtaining what this Court characterized as "substantial damages." Having fought hard against great odds, made only more difficult by the unbelievable publicity surrounding the accident at issue, this Court should award Plaintiff her full fees and costs incurred totaling $4,512,487.65.

5

                                                             Respectfully submitted,

                                                             /s/ Michael O. Fawaz  
                                                             Ann Darlene Wells, as Representative of the Estate of  
                                                             Donald L. Wells, Deceased, By One of Her Attorneys

Scott C. Frost  
David C. Van Dyke  
Michael O. Fawaz  
Donna Rizzuto  
Tiffany L. Carpenter  
Howard and Howard Attorneys PLLC  
200 South Michigan Ave., Ste. 1100  
Chicago, Illinois 60604  
(312) 372-4000

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANN DARLENE WELLS, as Representative of the Estate of Donald L. Wells, Deceased, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 09 C 1198 |
| CITY OF CHICAGO, *et al.*, | ) ) ) | Honorable Matthew F. Kennelly |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I, Michael O. Fawaz, an attorney, hereby certify that I electronically filed the foregoing notice, together with the documents referenced therein, with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the CM/ECF system which will send notification to all counsel of record in this case on November 20, 2012.

/s/ Michael O. Fawaz

Howard and Howard Attorneys, PLLC
450 W. Fourth Street
Royal Oak, MI 48067