**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ANN DARLENE WELLS, as representative** | ) | |
| **of the estate of Donald L. Wells, deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 09 C 1198** |
| | ) | |
| **CITY OF CHICAGO, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Ann Darlene Wells (plaintiff), as representative of the estate of Donald L. Wells

(Wells), sued the City of Chicago and a number of Chicago police officers and

employees under 42 U.S.C. § 1983 for claims arising from his arrest, confinement, and

death.  In April 2012, a jury returned a verdict for plaintiff against the City and four of the

defendant officers on plaintiff's unlawful detention claim.  The jury awarded plaintiff $1

million in compensatory damages against all of the defendants found liable and a total

of $150,500 in punitive damages against the four officers.  The jury found for all

defendants on plaintiff's claim relating to denial of medical care.

On September 16, 2012, following consideration of defendants' motions for

judgment as a matter of law or for a new trial, the Court entered judgment as a matter of

law in favor of the City on plaintiff's *Monell* claim concerning unlawful detention, finding

the evidence insufficient to support that claim.  The Court also vacated the punitive

damage awards against the four officers, finding the evidence insufficient to support

punitive damages.  This left plaintiff's compensatory damage award of $1,000,000.  The

Court concluded that the award was excessive and ordered a remittitur, stating that it

would grant a new trial on the issue of compensatory damages unless plaintiff accepted

a reduced award of $250,000.  *See Wells v. City of Chicago*, No. 09 C 1198, 2012 WL

4092691 (N.D. Ill. Sept. 16, 2012).  Plaintiff accepted the reduced award.  The City then

filed a statement that it would indemnify the four officers for the amount of the award.

*See* docket entry 415 (Oct. 2, 2012).  No appeal was filed following entry of the Court's

revised judgment.

Plaintiff has petitioned for an award of attorney's fees and expenses pursuant to

42 U.S.C. § 1988.  She requests attorney's fees of $4,037,367.85 and $475,119.80 in

expenses.  Plaintiff has also petitioned for costs pursuant to 28 U.S.C. § 1920.  It is

unclear to the Court the extent to which the costs that plaintiff seeks in her petition for

costs overlap with the expenses sought in her fee petition.[1]  In addition, the defendants

who prevailed at trial have petitioned for costs pursuant to section 1920.

Plaintiff's fee petition and the original briefs supporting and opposing it were filed

before the Court issued its September 16 decision on the post-trial motions.  At the

Court's request, the parties made supplemental submissions after the issuance of that

decision.

### Plaintiff's fee petition

The starting point for determination of a reasonable attorney's fee in a section

1983 case is the number of hours reasonably expended on the litigation, multiplied by a

---

[1]  There is some that the Court would be able to sort this out by locating and comparing the
detail sheets contained within the extremely large volume of materials filed in connection with
the fee petition with the detail sheets accompanying plaintiff's petition for costs.  But neither
side's counsel has provided the Court any guidance in this regard, and the Court does not
believe that it is duty-bound to ferret out this information on its own.

reasonable hourly rate.  *See Hensley v. Eckerhart,* 461 U.S. 424, 433 (1984).  The fee

applicant bears the burden of showing the reasonableness of the time requested as well

as the hourly rates.  *Id.* at 437.

The figure derived from multiplying the hours reasonably expended by a

reasonable hourly rate is referred to as the "lodestar."  A court can adjust the lodestar

based on twelve factors described in *Hensley.  Id.* at 434 n.9.  The twelve factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the
> questions; (3) the skill requisite to perform the legal service properly; (4)
> the preclusion of employment by the attorney due to acceptance of the
> case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7)
> time limitations imposed by the client or the circumstances; (8) the amount
> involved and the results obtained; (9) the experience, reputation, and
> ability of the attorneys; (10) the "undesirability" of the case; (11) the nature
> and length of the professional relationship with the client; and (12) awards
> in similar cases.

*Id.* at 430 n.3.  "However, 'many of these factors usually are subsumed within the initial

calculation of hours reasonably expended at a reasonable hourly rate.'"  *Anderson v. AB*

*Painting and Sandblasting Inc.*, 578 F.3d 542, 544 (7th Cir. 2009) (quoting *Hensley*, 461

U.S. at 434 n.9).

**1.     Hourly rates**

Three law firms were involved in representing plaintiff:  Howard & Howard;

Statman, Harris & Eyrich; and Robert Robertson.  None of the attorneys has an

established hourly rate that he or she charges to paying clients.  Rather, all of them

typically handle cases on a contingent fee basis, as they did in this case.

Plaintiff seeks hourly rates ranging from $242 to $499 for the twelve Howard

attorneys; from $210 to $545 for the seven Statman attorneys; and $499 for Robertson.

Defendants argue that these proposed rates are excessive.  They contend that plaintiff

has not supported a rate of more than $325 for any attorney, and they propose rates of $150 to $325.

A reasonable hourly rate is "one that is derived from the market rate for the services rendered." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) (internal quotation marks omitted). The focus, as defendants argue, is "the prevailing market rate *for lawyers engaged in the type of litigation in which the fee is being sought.*" *Cooper v. Casey*, 97 F.3d 914, 920 (7th Cir. 1996) (emphasis in original). *See also Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999).

If the attorney has an actual billing rate that he or she typically charges and obtains for similar litigation, that is presumptively his hourly rate. *Pickett*, 664 F.3d at 640. In some situations, however, the attorney does not have an established market rate, for example, because he or she typically uses contingent fee arrangements or relies on statutory fee awards. When (as here) that is the case, a court should rely on the "next best evidence" of the attorney's market rate, namely "evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases." *Id.* (internal quotation marks omitted).

"The fee applicant bears the burden of 'produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community.'" *Id.* (quoting *Blum v. Stenson,* 465 U.S. 886, 895 n. 11 (1984)). If the applicant satisfies this burden, then the opposing party has the burden to offer evidence "that sets forth a good reason why a lower rate is essential." *Id.* (internal

4

quotation marks omitted).

Plaintiff derives her proposed rates largely from the so-called "Laffey Matrix." The Laffey Matrix is a framework used by the United States Attorney's Office for the District of Columbia to determine reasonable hourly rates in fee-shifting cases. *See* http://www.justice.gov/usao/dc/divisions/Laffey_Matrix_2003-2013.pdf (last visited Feb. 19, 2013). The Seventh Circuit has not directly addressed the viability of the Laffey Matrix as a measure of reasonable hourly rates. As that court recently noted, however, in a case in which a district court had relied on the Matrix,

> [n]o circuit outside the D.C. Circuit has formally adopted the Laffey Matrix, and few have even commented on it. While some circuits have applied the Laffey Matrix, other circuits have expressed concerns about the Matrix's utility outside its circuit of origin. . . . The district courts [in this circuit] that have considered the Laffey Matrix have viewed it with differing levels of praise and skepticism. . . . The Laffey Matrix is not without its critics. . . . Even the D.C. Circuit has referred to the Matrix as "crude" and has recommended that plaintiffs provide affidavits, surveys, and past fee awards to enable the district court to refine the Matrix for the particular attorney.

*Pickett*, 664 F.3d at 649–50 (internal quotation marks and citations omitted). Given these concerns and the Seventh Circuit's expressed preference for other, more direct measures of reasonable hourly rates, the Court does not find it appropriate to rely on the Laffey Matrix as evidence supporting plaintiff's proposed hourly rates.

Beyond the Laffey Matrix and affidavits by two of the petitioning attorneys, plaintiff has offered only scant support for her claimed hourly rates. She has provided an affidavit from plaintiff's civil rights attorney Jeffrey Granich. Mr. Granich has over twenty years of litigation experience. His affidavit supporting plaintiff's proposed hourly rate is quite conclusory: it says that he is familiar with the hourly rates charged by other Chicago attorneys with similar training and experience and that "[t]o my knowledge, the

rates that Plaintiff seeks . . . are very reasonable rates as compared to other similarly experienced attorneys in Chicago, Illinois for similar services provided by attorneys and paralegals with similar levels of experience and handling matters of the size and complexity of this case." Pl.'s Mot., Ex. 4 ¶ 15. The Court finds that Mr. Granich's affidavit lacks support for his conclusion that the requested rates are reasonable and thus declines to give it any significant weight. *See Gibson v. City of Chicago*, 873 F. Supp. 2d 975, 985 (N.D. Ill. 2012) (reaching a similar conclusion regarding a similar affidavit from Mr. Granich).

Plaintiff has offered little else beyond Mr. Granich's insufficient affidavit. She has provided evidence that in 2007, attorney Frost obtained a fee award at a "blended" rate of $354 per hour in a consumer fraud lawsuit in federal court in New York City. (In that case, Frost sought rates from $350-495 for himself.) That certainly does not support the $450 per hour rate that plaintiff seeks for Frost in this case. Plaintiff has also offered some evidence regarding hourly rates awarded to attorneys for the City of Chicago as part of a sanctions order, but that evidence likewise does not support the much higher rates that plaintiff requests for her attorneys in this case.

Another significant factor is plaintiff's counsels' relative lack of experience litigating cases like this one. A number of the attorneys have a good deal of civil litigation and trial experience, but their experience in litigating civil rights or police misconduct cases was quite limited before their involvement in the present case. As the Court recently concluded in ruling on a fee petition in another police misconduct suit against the City of Chicago, an attorney's "work in non-civil rights litigation translates to something less than the equivalent amount of civil rights litigation experience; his

6

learning curve on such cases likely is steeper than it would be for someone with greater experience handling them." *Jimenez v. City of Chicago*, No. 09 C 8081, 2012 WL 5512266, at *3 (N.D. Ill. Nov. 14, 2012).

In the *Jimenez* case, the Court approved an hourly rate of $495 for Jon Loevy, an attorney whose experience, skill, and record of success in representing plaintiffs in police misconduct cases place him at the apex of attorneys who practice in that field. With due respect to plaintiff's principal counsel in the present case, the Court does not believe that they merit hourly rates at or near the one the Court approved for Mr. Loevy. At a minimum, they have not supported such a contention.

In short, plaintiff has not shown that her attorneys' proposed hourly rates are in line with prevailing rates in the community for attorneys with similar experience performing similar work. She has not carried her burden in the way needed to shift to defendants the burden of showing plaintiff's requested rates are unreasonably high.

Given the paucity of the evidence that plaintiff has offered on this point, the Court has been left largely to its own devices in ascertaining reasonable hourly rates. The Court will use as a guidepost the analysis that it conducted in the *Jimenez* case. In *Jimenez*, the Court approved a rate of $425 per hour for a very skilled attorney who had about twenty-five years of litigation and trial experience, but little of it in civil rights litigation until quite recently. The Court noted in discussing this attorney's appropriate rate that "[d]efendants cite approved rates of $400 per hour, in 2009, 2011, and 2012 for several attorneys with similar levels of litigation experience but more civil rights litigation experience." *Jimenez*, 2012 WL 5512266, at *5. Based on this background, as well as Judge Castillo's approval in *Gibson* of an hourly rate of $395 for two very experienced

civil rights attorneys, the Court finds that the appropriate rate for the attorneys in the present case who have more than twenty years of experience is $400 per hour. For the attorneys who have between fifteen and twenty years of experience, the appropriate rate is $325. *Cf. id.* (concerning an attorney who is a 1995 law school graduate). For the attorneys who have between six and ten years of experience, the appropriate rate is $275. *Cf. id.* at *4 (concerning two attorneys who are 2005 law school graduates). And finally, tor the attorneys with five years of experience or less, the appropriate rate is $200. *Cf. id.* ($200 is halfway between the $225 rate approved in *Jimenez* for two attorneys with 2008-2009 graduation dates and the $175 rate approved for an attorney with a 2011 graduation date).

The Court therefore approves the following hourly rates:

$400: Kell, Peyser, Van Dyke, Shinar, Frost, Statman, Hegge, and Robertson

$325: Lundrigan and Rizzuto

$275: Alam and Fawaz

$200: Carpenter, Stinton, Hahn, Barber, McGrath, and Dickinson

## 2. Attorney time

Defendants' primary objection to plaintiff's statement of attorney time arises from the fact that plaintiff prevailed only on her unlawful detention claim and was awarded a fraction of the damages she originally sought. Defendants also object to certain particular time entries. The Court will deal with the objections in that sequence.

### a. Degree of success

The Supreme Court has made it clear that if "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a

8

whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436. *See also, e.g., Spegon v. Catholic Bishop of Chicago,* 175 F.3d 544, 558 (7th Cir. 1999). Defendants rely on this to argue that the maximum fee award should be no larger than $394,500, and actually should be less than that.

The Court concludes that the requested fee award is unreasonably excessive given plaintiff's partial and limited success.

Plaintiff originally sued the City and twenty-six police officers – essentially every officer who had come into contact with Mr. Wells during his seizure and detention. Specifically, plaintiff sued twenty-two officers on the medical care claim and ten officers on the detention claim. Six of these officers (defendants Deneen, Farrell, Sanders, Musial, Gutierrez, and Block) were named as defendants on both claims. Shortly before trial, the parties stipulated to the dismissal of a number of officers, with an agreement that no costs would be assessed against plaintiff as a result of the dismissal. Plaintiff proceeded to verdict against the City, ten individual defendants on the medical care claim, and six defendants on the detention claim (five of whom were also sued on the medical care claim). As indicated earlier, plaintiff prevailed against four of the six individual defendants whom she sued on the detention claim, but all of the defendants prevailed on the medical care claim.

When a plaintiff presents multiple claims for relief based on a common core of facts or related legal theories, there is no legal bar against awarding attorney's fees for time spent on rejected claims. *See, e.g., Moriarty v. Svec*, 233 F.3d 955, 964 (7th Cir. 2000). If, however, the claims on which plaintiff has prevailed are distinct from those on which she did not prevail, then attorney's fees cannot be awarded on the claims on

which the plaintiff did not prevail. *Id.*

Plaintiff's unlawful detention claim against the individual defendants against whom she prevailed was interrelated with her unlawful detention claim against the City and the other individual defendants, against whom she ultimately did not prevail. For that reason, there is no basis to attempt to disaggregate the fees relating to the various defendants sued on that claim.

The primary issue raised by defendants involves the fact that plaintiff did not prevail on her medical care claim. In her supplemental brief filed after the Court vacated the jury's *Monell* verdict on the detention claim and significantly reduced the damage award, plaintiff argued that the unlawful detention claim and the denial of medical care claim were completely intertwined. Defendants argue that the medical care claim was entirely distinct from the detention claim.

Neither side is correct, in the Court's view. The unlawful detention claim – a claim that plaintiff was held more than forty-eight hours without being taken to court, or less than forty-eight hours for an improper reason – required plaintiff to investigate and prove when Wells was taken into custody; the basis to do so at that time; how long he was held; whether a basis to continue to hold him developed during the detention; and what damages resulted from holding him too long or improperly. The medical care claim involved the nature of Wells' condition during the period that he was in custody; each named defendant's awareness of his condition; what, if anything, they could have done differently to obtain treatment for Wells; and what damages resulted from the absence of prompt treatment.

The Court concludes that the claims were largely distinct. Contrary to

defendants' contention, however, there was some overlap.  Specifically, the evidence relating to Wells' physical and emotional distress while in custody related to both claims, albeit in different ways (on the detention claim, this evidence pertained to damages; on the medical care claim, it largely pertained to liability).  Thus testimony by those who observed Wells while he was in custody at the police station concerning what they observed was relevant on the detention claim and not simply on the medical care claim.  Aside from this, however, the Court sees no real overlap between the detention claims and the medical care claims.

For this reason, plaintiff's failure to prevail on the medical care claim should impact her recoverable fees and expenses, because a good deal of the fees and expenses were incurred only because the medical care claim was part of the case.  This may be illustrated by reference to the depositions taken in the case.  Plaintiff took, by her own count, a total of ninety depositions.  It strains credulity past the breaking point to contend, as plaintiff does, that all ninety of these depositions had a reasonable relationship to the detention claim, as opposed to the factually more complex medical care claim.  Plaintiff has not provided the Court with a coherent list of whose depositions were taken (this arguably could be ferreted out of counsel's time sheets, but it is not the Court's job to do that).  The Court did, however, develop a good degree of familiarity with the evidence and the legal issues based on its consideration of the voluminous summary judgment materials and motions *in limine* and based on having presided over a nine-day jury trial.  Given the Court's understanding of the factual and legal issues, it is plainly apparent that the majority of the depositions concerned, entirely or almost entirely, the medical care claim.

There is more to a lawsuit, of course, than depositions. But the Court's discussion of the ninety depositions provides an illustration of the enormous amount of time and effort that went into attempting to prove the medical care claim, on which the plaintiff did not prevail. The same is no doubt true with regard to the other work that plaintiff's attorneys performed in drafting pleadings, conducting other discovery, addressing summary judgment and motions *in limine*, and preparing for and trying the case. A significant reduction based on plaintiff's limited success is therefore appropriate.

Defendants also point out that plaintiff recovered only a fraction of the damages she sought. To a significant extent, this was a result of the fact that she did not prevail on the medical care claims. As the Court instructed the jury, the requested damages for medical expenses, loss of society, and lost wages were recoverable only on the medical care claims. Thus the jury's failure to award these types of compensatory damages is directly attributable to plaintiff's loss on the medical care claim. For this reason, it would amount to double-counting to make a separate reduction for plaintiff's failure to recover these damages or the punitive damages that she sought against individual defendants named only on the medical care claims.

As for pain and suffering, the jury actually awarded plaintiff a larger sum than her attorneys requested. In closing argument, counsel requested an award of $725,000 for pain and suffering. The jury awarded $1,000,000. The Court, however, ordered a remittitur to $250,000, a little under one-third of the figure that counsel proposed to the jury. That said, the Court does not believe it appropriate to reduce the fee award by any material extent on this basis. The reduced award was still quite significant and

exceeded most, if not all, of the comparable awards the Court cited. In addition, the remittitur was based largely on the proposition that comparable compensatory damage awards did not support a higher award. Information on comparable awards was not available to the jury, and thus it was not dealing with the same information on which the Court based the remittitur.

A modest reduction is appropriate, however, to account for plaintiff's limited success on punitive damages. Plaintiff devoted a portion of her evidence and argument to attempting to persuade the jury that the individual defendants had the heightened mental state needed to support a punitive damage award. She then asked the jury to award punitive damages totaling $1,750,000 against eleven defendants. As indicated earlier, the jury awarded a total of $150,500 against four officers. Again, this likely was a function of the fact that plaintiff did not prevail on the medical care claims. The Court, however, later vacated even the reduced sum that the jury awarded. Plaintiff's failure to recover any punitive damages is a factor to consider in assessing the degree of her success. In the scheme of things, however, it is a relatively small factor as compared with plaintiff's lack of success on the medical care claims.

Finally, defendants make a big issue out of the fact that plaintiff prevailed only against four of the twenty-six defendants she originally sued. When the parties stipulated to dismiss ten defendants before trial, however, the stipulation included an undertaking that no costs would be awarded. The Court declines to take these defendants into account for purposes of the fee petition. In any event, there is no basis to find that the presence of these additional defendants in the case prior to that point had a significant impact on the scope of discovery or the pretrial conduct of the

litigation. With regard to the remaining defendants who prevailed, the list of winners and losers largely tracks the dividing line between the medical care and detention claims. It would amount to double-counting to make a separate reduction for plaintiff's failure to prevail against these defendants.[2]

It remains for the Court to determine how much the plaintiff's fee request should be reduced due to her limited success. It is neither practical nor necessary for the Court or the parties to attempt to plow through all of the time entries to assess, entry-by-entry, which concerned the unlawful detention claim and which concerned the medical care claim. This would be virtually impossible to determine with anything approaching precision. Rather, the Court believes that it is reasonable and appropriate to order an overall percentage reduction of the plaintiff's compensable hours.

As indicated earlier, the Court developed a great deal of familiarity with the claims and the evidence, based on the parties' summary judgment motions, the significant motion *in limine* practice, and the trial. The medical care claim was significantly more complex from a factual standpoint than the unlawful detention claim, both as to liability and damages. The medical care claim also occupied the majority of the trial time. Thus a reduction of the compensable time by one-half would be insufficient to account appropriately for plaintiff's defeat on the medical care claim. The Court finds, instead, that a three-fourths reduction of the otherwise compensable time is appropriate. This is admittedly an estimate, but the Court believes that it represents a reasonable estimate given the complete distinction between the two sets of claims on

---

[2] The Court found earlier that plaintiff's claims against the two individual defendants against whom she did not prevail on the detention claim were completely intertwined with her claims against the four defendants against whom she prevailed, making a fee reduction on that basis inappropriate.

the issue of liability; the existence of some overlap on the issue of damages; the much greater evidentiary complexity of the medical care claim.  In making this reduction, the Court has also taken into account plaintiff's less than total success on compensatory damages and the absence of any punitive damages awards, though that is a far less significant factor for the reasons previously described.  Finally, the Court has taken into account the fact that plaintiff's attorneys handled the case on a contingent fee basis and had to advance significant expenses while facing the risk that plaintiff would lose the case.

### b.    Specific time entries

In addition to their general objection based on plaintiff's limited success, defendants have made a number of specific objections to the attorney time claimed by plaintiff.  The Court addresses those objections as follows.

Number of attorneys.  A total of seventeen attorneys performed work on the case for plaintiff.  This might have been appropriate for the case as a whole (including the medical care claims), but it is unreasonable when one considers only the claims on which plaintiff prevailed.  This point, however, is subsumed in the reduction the Court has made based on plaintiff's limited success.

Work on other matters.  It appears that plaintiff's time entries include work spent on other litigation – specifically, a personal injury suit that plaintiff filed against Mr. Wells' employer and insurance matters relating to that suit – and approximately fifty hours spent in connection with media appearances by the plaintiff.  The Court agrees with defendants that this time is not properly compensable.  *See Webb v. Bd. of Educ. of Dyer Cnty.*, 471 U.S. 234, 242-42 (1985); *Dupuy v. McEwen*, 648 F. Supp. 2d 1007,

15

1022 (N.D. Ill. 2009). The time entries in the blue-highlighted section of Exhibit A to defendants' response brief must be deducted from the compensable time.

Travel by out-of-town attorneys. Defendants object to travel to Chicago by plaintiff's out-of-town attorneys to participate in depositions and for meetings with plaintiff's Chicago-based attorneys. There is no prohibition on recovery of fees by an out-of-town attorney, and an out-of-town attorney necessarily would have to come to Chicago to participate in significant events in the case. The Court is unpersuaded that plaintiff's attorneys traveled to Chicago too frequently that they unreasonably doubled up on depositions. The Court likewise is unpersuaded that it was unreasonable for the out-of-town attorneys to come to Chicago from time to time for strategy sessions and other meetings with the local attorneys, as opposed to conducting only virtual meetings by telephone or e-mail. Face-to-face meetings are necessary and appropriate for attorneys who are working together on a case. The Court rejects defendants' implicit contention that plaintiff's attorneys conducted an unreasonable number of in-person meetings.

Descriptions of work done. Some of the descriptions of work provided by plaintiff's attorneys are somewhat cryptic or vague, but not so much that their reasonableness cannot be assessed adequately. The Court rejects this objection.

Alleged "clerical" work. Defendants contend that plaintiff has inappropriately charged at attorney's rates for what amounts to clerical work. The Court disagrees. The work in question, which largely involved categorizing relevant documents, organizing the voluminous evidence, preparing summaries of the roles and knowledge of witnesses, and the like, was appropriately conducted by attorneys given the

complexity of the case.

Discussions regarding staffing and budgeting.  The Court overrules defendants'
objection to approximately forty hours charged for discussions about case budgeting
and staffing.  This time was appropriately spent by the attorneys in question, given the
complexity of the case.

Focus group.  Plaintiff's attorneys spent about 170 hours in February 2012 on a
"focus group," the rough equivalent of a mock trial.  This was shortly before the actual
trial in the case.  Plaintiff has adequately shown that this was reasonable given the
complexity of the case.  No further reduction is appropriate beyond the limited-success
reduction the Court has already ordered.

Number of attorneys present at trial.  Four attorneys sat at counsel table during
trial.  Plaintiff has charged time for three other attorneys who sat in to observe all or
parts of the trial (Hahn – 109 hours; Fawaz – 28 hours; Frost – 48 hours).  She
contends that these attorneys assisted in preparation of cross-examination and other
trial-related activities.  Having four attorneys in the courtroom was more than sufficient
for this purpose; it is unreasonable to charge for the other attorneys' presence.  Plaintiff
has failed to show that having these attorneys in the courtroom added anything of
substance.  Charging this time is unreasonable.

Time while jury was deliberating.  Defendants contend that plaintiff's attorneys
have charged time for simply waiting for the jury to return a verdict.  Plaintiff responds
that the time in question involved preparation for an attempt to settle the case during
jury deliberations.  The Court is persuaded that this time was reasonably spent.  The
Court notes that the jury was deliberating for nearly three days, and not all of the

attorney time during that interval was charged. This tends to debunk defendant's "waiting for the jury" argument.

The Court notes that the time claimed in all of the entries as to which the Court has rejected defendants' arguments is nonetheless subject to reduction by the overall limited-success percentage the Court has applied.

### c. Summary

Plaintiff has not provided the Court – at least not as far as the Court can determine – a summary chart listing the total number of hours claimed for each attorney who worked on the case. Thus the Court cannot, as a practical matter, calculate on its own the hourly-rate and time reductions identified above. The parties will be required to do a bit more work. The Court directs plaintiff to eliminate the specific time entries that the Court has barred; apply the three-fourths reduction to the remaining time entries of each attorney; and then apply the hourly rates the Court has ordered. Plaintiff is to provide its calculation and supporting detail to defendants by no later than March 1, 2013. The information provided to defendants should include a summary chart listing, for each attorney, the reduced hours and the hourly rate. Defendants are to review the information provided by plaintiff and advise her of any disputes, by no later than March 8, 2013. The parties are to confer regarding any disputes by no later than March 13, 2013 and are to submit a joint status report to the Court by no later than March 15, 2013, providing their respective positions regarding any disputed issues, as well as a summary of the points on which they agree. The Court emphasizes that this process involves only applying the reductions and changes the Court has ordered, not litigation or relitigation of other issues and disputes.

3.      **Plaintiff's expenses**

Defendants have made specific objections to certain of defendants' requested expenses, which the Court addresses in turn.

a.      **Charges subject to percentage reduction due to limited success**

<u>Statman, Harris & Eyrich and Howard & Howard expenses.</u>  Defendants contend that the Statman and Howard firms' requested expenses for copying, delivery, parking, taxi, and other charges are insufficiently explained and documented and cannot be tied to the claims on which plaintiff prevailed.  These expenses also include costs relating to court reporter fees and deposition transcripts.  Defendants note, correctly, that a significant proportion of these expenses necessarily relate to the medical care claims on which plaintiff did not prevail.

The expenses are sufficiently described and documented such that a further reduction on that basis is unwarranted.  That said, there is no practical way for the Court to come anywhere near precision in ascertaining which of these expenses are appropriately attributable to the claims on which plaintiff prevailed.  Nor can plaintiff be expected to have done so, given the facts that the two claims overlapped to some extent and that some expenses (such as travel relating to court appearances, for example) quite simply cannot be allocated.

The Court reduces these expenses by two-thirds to account for the fact that plaintiff did not prevail on the medical care claims, which were significantly more complex factually than the detention claims and thus likely account for a significant majority of the expenses.  The Court does not impose a further reduction based on the less-than-complete damages recovery, because that does not appear to be an

appropriate basis to reduce an otherwise recoverable expense.

Certain of the expenses counsel incurred are not recoverable at all, and others are recoverable only in part. These points are discussed below.

Prism Litigation Technology. The Court overrules defendants' objection to the expense charged for transferring documents relating to the case to a new law firm when one of the attorneys changed firms. This is a legitimate expense, and the alternatives (recreating the documents, or having to get a new attorney up to speed if the case did not move with the attorney) likely would have been more expensive. This expense is, however, subject to the two-thirds reduction just described.

Travel expenses of out-of-town attorneys. The Court overrules defendants' contention that all travel expenses, or all expenses concerning travel to Chicago, should be denied out of hand. The travel expenses relating to the out-of-town attorneys' travel to participate in depositions, trial preparation, and other strategy meetings are properly recoverable, for the reasons described in connection with the attorney's fee award. The Court is persuaded that these expenses were not unreasonably high as a general proposition. These expenses are, however, subject to the previously described two-thirds reduction.

Kell and Lundrigan travel expenses. Attorney Kell, one of the lead trial attorneys, incurred expenses arising from his stay at the University Club in downtown Chicago during the period immediately prior to and during the trial. Defendants make a particularized objection to these charges, contending they are not recoverable at all. The Court disagrees. The charges were not unreasonable for the twenty-one day period during which Kell stayed in Chicago, and his presence at trial was reasonable

given his familiarity and involvement with the case and his leading role in the litigation.

But because the trial and final preparation were rendered more complex by the medical

care claim, on which the plaintiff did not prevail, these charges are reduced by one-half

(the Court estimates that the nine-day trial would have been one-half as long had it

concerned only the wrongful detention claims, not one-third as long).

The Court disallows, however, the travel expenses incurred by attorney

Lundrigan for travel to Chicago for a particular deposition in October 2009. It was not

unreasonable for Lundrigan to travel here for the deposition. The expenses requested,

however, are unreasonable. These charges likely related only to the medical care

claims and thus would be subject to a two-thirds reduction in any event. The Court

disallows them entirely, however, due to the complete failure of plaintiff's attorneys to

exercise billing judgment in deciding which of the expenses to include in their fee

petition.

Alex Losoya paralegal expenses / fees. Plaintiff's fee petition originally included

a double charge for work done on the case by paralegal Alex Losoya, whose services

were provided and billed via an outside vendor called Robert Half Legal Services. The

plaintiff acknowledged this error in her reply brief. The amount that plaintiff or her

attorneys paid for Losoya's services is appropriately recoverable as an expense. The

Court rejects, however, plaintiff's contention that even though she or her attorneys paid

a fee to a Robert Half for Losoya's services, she should be able to recover for Losoya's

work at a higher hourly rate. Plaintiff has offered no authority for the proposition that

they should make a margin of profit on this out of pocket expense. Only the amount

actually paid to Robert Half Legal Services is an appropriately recoverable expense.

21

The charge is subject to the two-thirds reduction previously described.

Computerized legal research.  Defendants object to the request for reimbursement of $75,356 spent on Westlaw research.  The costs of computerized legal research are recoverable as part of an attorney's fee award in a fee-shifting case.  *See, e.g., Tchemkou v. Mukasey*, 517 F.3d 506, 513 (7th Cir. 2008).  Plaintiffs may recover this expense, however, only to the extent it relates to the unlawful detention claims, not the medical care claims.  The expense is not broken down.  The Court will reduce it by two-thirds for the reasons previously described.

Meal expenses.  The charges for meals all appear to the Court to be related to out-of-town travel by the particular lawyers involved.  They are reasonable expenses and properly recoverable, subject to the two-thirds reduction previously described.

**b.     Charges not subject to limited-success reduction**

The following expenses appear to relate largely, or exclusively, to the unlawful detention claim.  They are recoverable in full and are not subject to a limited-success reduction.

Dennis Waller expert fee.  The Court overrules defendants' objection to the expert witness fee for Dennis Waller.  Mr. Waller's proposed testimony concerned the unlawful detention claim, and only that claim.  Though the Court largely barred Mr. Waller's opinions, that does not render his retention or the incurring of this expense unreasonable.  As a general rule, a court does not go through a prevailing party's time and expenses line-by-line to see whether each hour of time and each dollar of expense represented a successful effort in and of itself.  Rather, the relevant inquiry is whether the action was reasonably undertaken or the expense was reasonably incurred in

connection with the claims on which the plaintiff prevailed. *See People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1313 (7th Cir. 1996). ("A court's focus should not be limited to the success/failure of each of the attorney's actions. Rather, it should be upon whether those actions were reasonable.").

O'Hern Traffic Accident Consultants. The amount paid to O'Hern Traffic Accident Consultants appears to the Court to concern the issue of probable cause and thus the unlawful detention claim, on which plaintiff prevailed. This is a recoverable expense.

Trial Graphix. The expense incurred with the Trial Graphix firm for creation of a digital video was reasonably expended and reasonably concerned the unlawful detention claim. This video showed, in detail, Mr. Wells' condition while in custody and therefore was relevant to show his physical and emotional pain and suffering. Though it was also relevant on the medical care claim, the expense reasonably would have been incurred even if only the detention claim had been pursued. The expense is recoverable in full.

### c.  Charges denied altogether

Midwest Legal Nurse Consultants and Joseph Oyama Expert Consulting Services. Any out-of-pocket expenses that plaintiff incurred only to litigate the medical care claim, on which she did not prevail, are not recoverable as part of the fee award or as costs under 28 U.S.C. § 1920. The amounts paid to Midwest Legal Nurse Consultants and Joseph Oyama Expert Consulting Services are not recoverable, because from the materials provided, they appear to relate only to the medical care claim.

Expenses related to other matters. Expenses involving travel to the Lapeer

County Probate Court do not appear to be reasonably related to the present litigation. They are not recoverable.

### d.    Summary

The Court directs plaintiff to eliminate the specific expenses that the Court has barred and apply the reductions the Court has ordered as directed in the body of this decision.  Plaintiff is to provide its calculation and supporting detail to defendants by no later than March 1, 2013.  The information provided to defendants should include a summary chart listing the expenses and any reductions that the Court has ordered. Defendants are to review the information provided by plaintiff and advise her of any disputes, by no later than March 8, 2013.  The parties are to confer regarding any disputes by no later than March 13, 2013 and are to submit a joint status report to the Court by no later than March 15, 2013, providing their respective positions regarding any disputed issues, as well as a summary of the points on which they agree.  The Court again emphasizes that this process involves only applying the reductions and changes the Court has ordered, not litigation or relitigation of other issues and disputes.

## 4.    Petitions for costs pursuant to 28 U.S.C. § 1920

Each side has filed a petition for costs pursuant to 28 U.S.C. § 1920.  Plaintiff has submitted a bill of costs in which she seeks $47,025.46.  On defendants' side, only the seven individual defendants who prevailed at trial have petitioned for costs.  Their bill of costs seeks $74,320.77.

Each side's bill of costs overdoes it by a significant extent, in the sense that each seeks costs not properly recoverable under section 1920 (for example, fees of expert witnesses).  The Court also notes, with regard to the individual defendants' bill of costs,

that it is a virtual certainty that none of the petitioning defendants actually paid or incurred any of the requested costs on his own.  They almost certainly were paid by the City of Chicago, and in the Court's experience the City almost certainly did not have recourse to the individual defendants for reimbursement.  The City, which paid all the costs, has not petitioned for recovery of costs, even though it could have done so within the considerable time allowed by rule after the Court entered the revised judgment on October 1, 2012 that eliminated the *Monell* award against the City.

Plaintiff prevailed on her unlawful detention claims against some defendants. The defendants who have petitioned for costs prevailed on all of the claims plaintiff made against them (some were defendants only on the medical care claim, and some were defendants on both claims).  In short, this was a mixed result.  For this reason, and because it is well-nigh impossible to disaggregate the appropriately taxable costs incurred by each prevailing party, this case represents an appropriate occasion to deny each side's bill of costs filed pursuant to section 1920.  *See generally Gavoni v. Dobbs House, Inc.*, 164 F.3d 1071, 1075 (7th Cir. 1999) (discussing a court's discretion to deny costs in a mixed-result case).  Because the Court is denying both sides' bills of costs, it need not and does not adjudicate each side's objections to particular items within the opposing side's bill of costs.

The determination to deny both sides' bills of costs has no bearing on plaintiff's right to recover under 42 U.S.C. § 1988 the expenses that the Court has awarded in this decision with the reductions previously described.  Those expenses were all described and requested in plaintiff's fee petition and its accompanying materials – a separate filing from plaintiff's bill of costs.  Defendants objected to some of them in their response

to the fee petition, largely on grounds of lack of support, unreasonableness, or excessiveness, or on the ground that they related to the medical care claims, on which plaintiff did not prevail. The Court adjudicated those objections earlier in this decision. Defendants did not contend in their response to the fee petition that any of the expenses that plaintiff sought were not recoverable under section 1988. Defendants have therefore forfeited whatever argument one might make in that regard.[3]

## Conclusion

The Court grants plaintiff's petition for attorney's fees and expenses in part and denies it in part as stated in this decision [docket no. 366]. The Court denies both sides' petitions for costs. The status report ordered by the Court in the body of this decision is to be filed by March 15, 2013. The case is set for a status hearing on March 19, 2013 at 9:30 a.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: February 20, 2013

---

[3] As indicated earlier, it is possible that some of the costs referenced in plaintiff's petition for costs, which the Court has disallowed, are also among the expenses the Court has awarded on plaintiff's fee petition. *See supra* at 2 n.1. If so, the award of these expenses pursuant to the fee petition requires the non-prevailing defendants (whom the City has indemnified) to pay them irrespective of whether they were also covered in plaintiff's bill of costs.